UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
───────────────────────────────────────────────

NAJI SANDERS,

                                    Plaintiff,

v.                                                              9:19-CV-1314
                                                                (BKS/TWD)

CORRECTIONS OFFICER KEVIN ST. MARY,
CORRECTIONS OFFICER TROY MATTHIE,

                                    Defendants.
───────────────────────────────────────────────

APPEARANCES:                                    OF COUNSEL:

NAJI SANDERS
Plaintiff, *pro se*
18-A-0885
Great Meadow Correctional Facility
Box 51
Comstock, New York 12821

HON. LETITIA JAMES                              LAUREN ROSE EVERSLEY, ESQ.
Attorney General for the State of New York      Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## <u>ORDER AND REPORT-RECOMMENDATION</u>

        Naji Sanders ("Plaintiff"), an inmate in the custody of the New York State Department of

Corrections and Community Supervision ("DOCCS"), commenced this *pro se* civil rights action

under 42 U.S.C. § 1983, asserting claims arising out of his incarceration at Upstate Correctional

Facility ("Upstate CF").  (Dkt. No. 11, Plaintiff's second amended complaint.)  Correction

Officers Kevin St. Mary and Troy Mathie (collectively "Defendants") now move for summary

judgment, in lieu of an answer, pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Dkt. No. 25.)  In short, Defendants argue Plaintiff commenced this action before completing the grievance process.  (Dkt. No. 25-1.)  For the reasons set forth below, the Court recommends that Defendants' motion be granted and Plaintiff's case be dismissed without prejudice.

## I.    DISCUSSION

### A.    Background

In his second amended complaint, Plaintiff alleges that, on September 25, 2019, Defendants tightened his handcuffs to a point where he suffered cuts and bruises and they slammed his thumb into a cell's feed slot.  (Dkt. No. 11 at 3.)  The District Court construed Plaintiff's second amended complaint as alleging Eighth Amendment excessive force claims against Defendants.  (Dkt. Nos. 7, 12.)

Defendants now bring a motion for summary judgment in lieu of an answer.  (Dkt. No. 25.)  In their motion, Defendants argue Plaintiff's claims are the proper subject for a grievance under the applicable grievance procedures, but Plaintiff filed this action in federal court before he completed the grievance process.  (Dkt. No. 25-1 at 9-10.)  In declarations filed in connection with their motion, Defendants demonstrated that Plaintiff filed grievances related to the above-mentioned incident on October 7, 2019, the Superintendent denied these grievances on September 13, 2019, and the Central Office Review Committee ("CORC") denied the grievances on January 29, 2020.  (Dkt. No. 25-3 at ¶¶ 16-19; Dkt. No 25-4 at ¶ 16.)  Thus, according to Defendants, because Plaintiff commenced this action on October 11, 2019—before he completed the administrative grievance procedure—the second amended complaint should be dismissed for failure to exhaust.  (Dkt. No. 25-1.)

Plaintiff's response to Defendants' motion for summary judgement does not address the substance of Defendants' arguments regarding exhaustion.  Rather, he asserts in a conclusory fashion that the motion should be dismissed because it is, among other things, "a nefarious dilatory tactic insidiously calculated to eschew any accountability of the crimes committed against this . . . Plaintiff."  (Dkt. No. 36 at 2.)  He further argues that it is illegal to impose a condition precedent—such as exhaustion—on his right to access to the courts.  *Id*. at 4.  Further, Plaintiff appears to challenge the competency of the evidence Defendants provided in their motion.  Specifically, he asserts that, because Donna Wilcox and Rachel Seguin are not parties of this action they cannot be fact witnesses and the Court should disregard their affidavits in support of Defendants' motion for summary judgment.  *Id*. at 3-4.

**B.**    **Standard of Review**

*1.*    ***Plaintiff's Failure to Respond to Defendants' Statement of Material Facts***

While courts are required to give due deference to a plaintiff's *pro se* status, that status "does not relieve [a *pro se*] plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment."  *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003).  Here, Plaintiff failed to challenge the statement of material facts filed by Defendants in the manner required under N.D.N.Y. L.R. 7.1(a)(3).[1, 2]

---

[1]  The Local Rules were amended effective January 1, 2021.  In the amendment, L.R. 7.1 was dissected and various subsections were renumbered and relocated to correspond with the appropriate Federal Rule.  The relevant substance of the rules did not change.  In the currently operative version of the Local Rules, L.R. 56.1 deals with summary judgement motions. However, because these motions were filed in 2020, the Court refers to the Local Rules as they existed at that time.

[2]  Local Rule 7.1(a)(3) requires the opposing party to file a response to the movant's Statement of Material Facts.  Under the rule, the response "shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered

Where, as in this case, a party has failed to respond to the movant's statement of material facts in the manner required under L.R. 7.1(a)(3), the facts in the movant's statement to which the plaintiff has not properly responded will be accepted as true (1) to the extent that they are supported by evidence in the record, and (2) provided that the nonmovant, if proceeding *pro se*, has been specifically advised of the possible consequences of failing to respond to the motion.[3] *See Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).

Accordingly, the facts set forth in Defendants' Statement of Material Facts (Dkt. No. 25-2) that are supported by record evidence and are uncontroverted by nonconclusory allegations in Plaintiff's second amended complaint and verified opposition submissions will be accepted as true. *See McAllister v. Call*, No. 9:10-CV-610 (FJS/CFH), 2014 WL 5475293, at *3 (N.D.N.Y. Oct. 29, 2014) (finding allegations in plaintiff's verified complaint sufficient to controvert facts in statement of material facts on motion for summary judgment); *Douglas v. Perrara*, No. 9:11-CV-1353 (GTS/RFT), 2013 WL 5437617, at *3 (N.D.N.Y. Sept. 27, 2013) ("Because Plaintiff has failed to raise any question of material fact, the Court will accept the facts as set forth in Defendants' Statement of Facts Pursuant to Rule 7.1(a)(3) . . . supplemented by Plaintiff's verified complaint . . . as true."). As to any facts not contained in Defendants' Statement of Material Facts, in light of the procedural posture of this case, the Court is "required to resolve all ambiguities and draw all permissible factual inferences" in favor of Plaintiff. *Terry*, 336 F.3d at 137.

---

paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises." N.Y.N.D. L.R. 7.1(a)(3).

[3] Defendants provided Plaintiff with the requisite notice of the consequences of his failure to respond to the motion. (Dkt. No. 58 at 3.)

As noted above, Plaintiff contends Defendants' statement of material facts should be ignored because he argues Donna Wilcox and Rachel Seguin are incompetent fact witnesses. (Dkt. No. 36.)  Plaintiff is mistaken.  These affidavits are from people who have personal knowledge of DOCCS' Inmate Grievance Program and they set out facts that would be admissible in evidence.  *See* Fed. R. Civ. P. 56(c)(4).  Thus, the Court finds these affidavits are acceptable evidence and can be used to support Defendants' motion for summary judgment.

Moreover, the Second Circuit has ruled that "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules," including local rules relating to requirements regarding the submission of and response to statements of material facts on summary judgment motions, and to "conduct an assiduous review of the record."  *Holtz v. Rockefeller & Co., Inc*., 258 F.3d 62, 73 (2d Cir. 2001) (citation and internal quotation marks omitted).  In deference to Plaintiff's *pro se* status, the Court has reviewed the entire record.

### 2.     Summary Judgment Standard

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, no genuine issue of material fact exists.  *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006).  A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Liberty Lobby*, 477 U.S. at 248.

### C.     Analysis

The Prison Litigation Reform Act of 1995 ("PLRA"), provides, in pertinent part,  "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner

confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is required for "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007); *see also Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (stating that the mandatory language of § 1997e(a) forecloses judicial discretion to craft exceptions to the requirement). To properly exhaust administrative remedies under the PLRA, inmates are required to complete the administrative review process in accordance with the rules applicable to the institution to which they are confined. *Jones*, 549 U.S. at 218 (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates "using all steps that the [government] agency holds out, and doing so properly"). Because non-exhaustion is an affirmative defense, the defendant bears the burden of showing a failure to meet exhaustion requirements. *See Jones*, 549 U.S. at 216.

DOCCS has a well-established three-step administrative review process, Inmate Grievance Program ("IGP"), which oversees the manner in which issues are resolved by affording inmates "an orderly, fair, simple and expeditious method for resolving grievances." 7 N.Y.C.R.R. § 701.1(a). Concerns "about the substance or application of a written or unwritten policy, regulation, procedure or rule of [DOCCS]," as well as complaints of "employee misconduct meant to annoy, intimidate or harm an inmate" may be filed. *Id.* § 701.2(a)-(e).

First, an inmate must file a complaint with the facility's IGP clerk within twenty-one calendar days of the alleged occurrence. *Id.* § 701.5(a). A representative of the facility's inmate grievance resolution committee ("IGRC") has sixteen calendar days from receipt of the

grievance to informally resolve the issue.  *Id*. § 701.5(b)(1).  If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance, *id*. § 701.5(b)(2), and issues a written decision within two working days of the conclusion of the hearing.  *Id*. § 701.5(b)(3).

Second, a grievant may appeal the IGRC decision to the facility's Superintendent within seven calendar days of receipt of the IGRC's written decision.  *Id*. § 701.5(c)(1).  If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the Superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal.  *Id*. § 701.5(c)(3)(ii).

Third, a grievant may appeal to CORC within seven working days of receipt of the Superintendent's written decision.  *Id*. § 701.5(d)(1)(i).  CORC is to render a written decision within thirty calendar days of receipt of the appeal.  *Id*. § 701.5(d)(3)(ii).

The Second Circuit has long recognized this procedure as an "available remedy" for purposes of the PLRA.  *See Hall v. Cty. of Saratoga*, No. 10-CV-1120 (NAM/CFH), 2013 WL 838284, at *1-2 (N.D.N.Y. Mar. 6, 2013).  Generally, if a plaintiff, as here, fails to follow each of the required steps prior to commencing an action, he has failed to exhaust his administrative remedies as required under the PLRA.  *See Ruggiero v. Cty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." (quotation marks and citations omitted)).

Nevertheless, while the PLRA mandates exhaustion of administrative remedies, it also "contains its own, textual exception to mandatory exhaustion."  *Ross*, 136 S. Ct. at 1858.  More specifically, Section 1997e(a) provides only those administrative remedies that "are available"

must first be exhausted.  42 U.S.C. § 1997e(a); *Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion

requirement hinges on the availability of administrative remedies[.]" (quotation marks and

citations omitted)).  In the PLRA context, the Supreme Court has determined "availability"

means "an inmate is required to exhaust those, but only those, grievance procedures that are

capable of use to obtain some relief for the action complained of."  *Ross*, 136 S. Ct. at 1859

(quotation marks and citations omitted).

There are three circumstances in which a court may find a facility's internal

administrative remedies are not available under the PLRA.  *Id*. at 1859-60.  First, "an

administrative procedure is unavailable when (despite what regulations or guidance materials

may promise) it operates as a simple dead end—with officers unable or consistently unwilling to

provide any relief to aggrieved inmates." *Id*. at 1859.  "Next, an administrative scheme might be

so opaque that it becomes, practically speaking, incapable of use." *Id*.  Finally, an administrative

remedy is not "available" when "prison administrators thwart inmates from taking advantage of a

grievance process through machination, misrepresentation, or intimidation." *Id*. at 1860.

The question as to whether the plaintiff has exhausted his administrative remedies is a

question of law.  *See Snider v. Melindez*, 199 F.3d 108, 113-14 (2d Cir. 1999).  Thus, an inmate's

failure to exhaust administrative remedies is properly considered on a motion for summary

judgment in lieu of an answer.  *Crichlow v. Fischer*, No. 6:15-CV-06252 EAW, 2017 WL

920753, at *5 (W.D.N.Y. Mar. 7, 2017) (citing *Crenshaw v. Syed*, 686 F. Supp. 2d 234, 236

(W.D.N.Y. 2010) (granting a motion for summary judgment made in lieu of an answer where

inmate failed to exhaust administrative remedies)).

Here, the record evidence in this case establishes the following timeline:

> *September 25, 2019* – Plaintiff alleges Defendants used excessive force against him during a cell extraction.  (Dkt. No. 11.)
>
> *October 7, 2019* – Plaintiff filed two inmate grievances regarding the September 25, 2019 assault.  (Dkt. No. 25-2 at ¶¶ 15, 16.)
>
> *October 11, 2019* – Plaintiff commenced this action in federal court.  (Dkt. No. 1.)
>
> *November 13, 2019* – the Superintendent found both of Plaintiff's grievances were unsubstantiated.  (Dkt. No. 25-2 at ¶¶ 17, 18.)
>
> *November 27, 2019* – Plaintiff appealed both grievances to CORC. *Id*. at ¶ 19.
>
> *January 29, 2020* – CORC issued a joint determination denying both grievances.  *Id*. at ¶ 20.

Therefore, the undisputed facts demonstrate that Plaintiff commenced this action before he completed the administrative review process.  (Dkt. No. 25-2 at ¶ 21.[4])  When a prisoner fails to properly exhaust his administrative remedies before filing suit, the action must be dismissed. *Burgos v. Craig*, 307 F. App'x 469, 471 (2d Cir. 2008) ("[Exhaustion ] must be completed before suit is filed, and completing the exhaustion requirements only after filing suit is insufficient." (citation omitted)); *Neal v. Goord*, 267 F.3d 116, 121-22 (2d Cir. 2001), *abrogated in part on other grounds by Porter*, 534 U.S. 516.

Dismissal is appropriate even if—as is the case here—the plaintiff's claim has since been exhausted.  *See Mateo v. Alexander*, No. 08–cv-8797(RJH), 2010 WL 431718, at *3 (S.D.N.Y. Feb. 9, 2010); *Mendez v. Artuz*, No. 01-cv-4157(GEL), 2002 WL 313796, at *2 (S.D.N.Y. Feb. 27, 2002); *Bowie v. Woodruff*, No. 9:18-CV-0266 (BKS/ML), 2019 WL 7606078, at *5

---

[4]  Moreover, there is no evidence in the record showing the grievance procedure "operate[d] as a simple dead end" to Plaintiff, nor is there any evidence to establish an issue of fact as to unavailability due to an "opaque" administrative scheme.  *See Ross*, 136 S. Ct. at 1859-60. There also is no evidence prison administrators prevented Plaintiff from using the grievance procedure due to "machination, misrepresentation, or intimidation."  *Id.*

(N.D.N.Y. Sept. 20, 2019), *report and recommendation adopted*, 2019 WL 5445519 (N.D.N.Y. Oct. 23, 2019) ("The fact that Bowie subsequently exhausted his administrative remedies [in the sense that CORC issued a decision on his grievance] is irrelevant as he was required to properly exhaust before he sued"); *Scott v. Uhler*, No. 16-CV-403, 2019 WL 5197139, at *5, (N.D.N.Y. July 31, 2019) ("Receiving a decision from CORC after filing a federal lawsuit does not satisfy the PLRA's requirement that administrative remedies be exhausted before filing suit, and any such action must be dismissed without prejudice").  Furthermore, a post-exhaustion amendment of the complaint cannot cure an exhaustion defect existing at the time the action was commenced.  *Livingston v. Hoffnagle*, No. 9:17-CV-1158 (MAD/DEP), 2019 WL 409366, at *4 (N.D.N.Y. Feb. 1, 2019) (citation omitted).  "Were the rule otherwise, prisoners would have little reason to wait for the administrative process to play itself out before filing suit, which would defeat the purpose of the exhaustion requirement 'to reduce the quantity and improve the quality of prisoner suits [and to afford] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'"  *Animashaun v. Afify*, 470 F. Supp. 3d 294, 297 (W.D.N.Y. 2020) (quoting *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (alterations in original) (other citations omitted)).

    In such a case as this, dismissal is *without prejudice*, and the case may be refiled.  *See Brown v. Napoli*, 687 F. Supp. 2d 295, 298 (W.D.N.Y. 2009); *Chisholm v. New York City Dep't of Correction*, No. 08 Civ. 8795, 2009 WL 2033085, at *3 (S.D.N.Y. July 13, 2009); *Doe v. Goord*, No. 04 CV 0570, 2004 WL 2829876, at *8 (S.D.N.Y. Dec. 10, 2004) ("Dismissal of an action for failure to exhaust administrative remedies ordinarily is without prejudice.").  Such a remedy is appropriate because "[f]ailure to exhaust administrative remedies is often a temporary, curable procedural flaw."  *Acosta v. Corrections Officer Dawkins*, No. 04 Civ. 6678, 2005 WL

1668627, at *4 n.6 (S.D.N.Y. July 14, 2005) (quoting *Berry v. Kerik*, 366 F.3d 85, 87 (2d Cir. 2003)).

In sum, the Court finds Defendants have adequately demonstrated Plaintiff failed to exhaust his administrative remedies before filing suit in federal court, and Plaintiff has not plausibly explained why any exception to exhaustion should apply.  Therefore, the Court recommends that this action be dismissed without prejudice.

## II.    CONCLUSION

After carefully considering the record, the Court finds Plaintiff failed to exhaust his administrative remedies.

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 25) be **GRANTED**; and it is further

**RECOMMENDED** that Plaintiff's second amended complaint (Dkt. No. 11) be **DISMISSED WITHOUT PREJUDICE**; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2008) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[5]  Such objections shall be filed with the Clerk of the

---

[5]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam)); 28 U.S.C.

§ 636(b)(1); Fed. R. Civ. P. 72, 6(a).


Dated:  April 22, 2021
       Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge

KeyCite Yellow Flag - Negative Treatment

Distinguished by   McDonald v. Zerniak,   N.D.N.Y.,   November 4, 2016

2014 WL 5475293
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Charles McALLISTER also known
as Charles McCallister, Plaintiff,
v.
Harold CALL, Vocational Supervisor,
Mohawk Correctional Facility, Defendant.

No. 9:10–CV–610 (FJS/CFH).
|
Signed Oct. 28, 2014.
|
Filed Oct. 29, 2014.

**Attorneys and Law Firms**

Charles McAllister, Westbury, NY, pro se.

Hon. Eric T. Schneiderman, Office of the New York State Attorney General, The Capitol, Keith J. Starlin, AAG, of Counsel, Albany, NY, for Defendant.

**ORDER**

SCULLIN, Senior District Judge.

**\*1** Currently before the Court are Magistrate Judge Hummel's October 9, 2014 Report–Recommendation and Order, *see* Dkt. No. 81, and Plaintiff's objections thereto, *see* Dkt. No. 83.

Plaintiff, a former inmate who was, at all relevant times, in the custody of the New York Department of Corrections and Community Supervision, commenced this action pursuant to 42 U.S.C. § 1983. In his original complaint, Plaintiff asserted claims against Brian Fischer, Lucien J. LeClaire, Patricia LeConey, Carol Woughter, and John and Jane Does. Defendants moved for summary judgment. *See* Dkt. No. 49. By Report–Recommendation and Order dated July 6, 2012, Magistrate Judge Homer recommended that this Court dismiss all claims against the named individuals and direct Plaintiff to join Harold Call as a Defendant. *See* Dkt. No.

55. This Court accepted the Report and Recommendation and Order in its entirety and directed Plaintiff to file an amended complaint to "include only one cause of action a procedural due process claim in connection with his disciplinary hearing and one Defendant hearing officer Call ." *See* Dkt. No. 58 at 4–5.

Plaintiff thereafter filed his amended complaint and requested compensatory and punitive damages. *See* Dkt. No. 64, Amended Complaint at 4. In this amended complaint, Plaintiff alleged that Defendant violated his constitutional rights under the First, Eighth and Fourteenth Amendments. *See* Dkt. No. 64, Amended Complaint at ¶¶ 33, 34, 43.

On May 9, 2014, Defendant filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See* Dkt. No. 74. In a Report–Recommendation and Order dated October 9, 2014, Magistrate Judge Hummel recommended that this Court grant Defendant's motion in part and deny his motion in part. *See* Dkt. No. 81 at 33. Plaintiff filed objections to Magistrate Judge Hummel's recommendations. *See* Dkt. No. 83.

Where a party makes specific objections to portions of a magistrate judge's report and recommendation, the court conducts a *de novo* review of those recommendations. *See Trombley v. Oneill,* No. 8:11–CV–0569, 2011 WL 5881781, *2 (N.D.N.Y. Nov. 23, 2011)* (citing Fed.R.Civ.P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C)). Where a party makes no objections or makes only conclusory or general objections, however, the court reviews the report and recommendation for "clear error" only. *See Salmini v. Astrue,* 3:06–CV–458, 2009 WL 1794741, *1 (N.D.N.Y. June 23, 2009)* (quotation omitted). After conducting the appropriate review, a district court may decide to accept, reject, or modify those recommendations. *See Linares v. Mahunik,* No. 9:05–CV–625, 2009 WL 3165660, *10 (N.D.N.Y. Sept. 29, 2009)* (quoting 28 U.S.C. § 636(b)(1)(C)).

Although Plaintiff's objections are, in most respects, general or conclusory, given his *pro se* status, the Court has conducted a *de novo* review of Magistrate Judge Hummel's Report–Recommendation and Order. Having completed its review, the Court hereby

**\*2** **ORDERS** that Magistrate Judge Hummel's October 9, 2014 Report–Recommendation and Order is **ACCEPTED**

**in its entirety** for the reasons stated therein; and the Court further

**ORDERS** that Defendant's motion for summary judgment is **GRANTED in part** and **DENIED in part;** and the Court further

**ORDERS** that Plaintiff's First Amendment claims, his Eighth Amendment claims, and his challenge to the constitutionality of Directive 4913 are **DISMISSED;** and the Court further

**ORDERS** that, to the extent that Plaintiff has asserted claims against Defendant in his official capacity, those official-capacity claims are **DISMISSED;** and the Court further

**ORDERS** that Defendant's motion for summary judgment is **DENIED** with respect to Plaintiff's Fourteenth Amendment due process claims and with respect to Defendant's qualified immunity defense; and the Court further

**ORDERS** that this matter is referred to Magistrate Judge Hummel for all further pretrial matters; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**REPORT–RECOMMENDATION AND ORDER** [1]

CHRISTIAN F. HUMMEL, United States Magistrate Judge.

Plaintiff *pro se* Charles McAllister ("McAllister"), a former inmate who was, at all relevant times, in the custody of the New York Department of Corrections and Community Supervision ("DOCCS"), [2] brings this action pursuant to 42 U.S.C. § 1983 alleging that defendant Harold Call ("Call"), Vocational Supervisor, Mohawk Correctional Facility ("Mohawk"), violated his constitutional rights under the First, Eighth and Fourteenth Amendments. Am. Compl. (Dkt. No. 64) ¶¶ 33, 34; 4. McAllister initially commenced this civil rights action against defendants Brian Fischer, Lucien J. LeClaire, Patricia LeConey, Carol Woughter, and John and Jane Does. Defendants moved for summary judgment. Dkt. No. 49. By report and recommendation dated July 6, 2012, (1) all claims against identified defendants were dismissed; and (2) defendant was directed to join Call, who was identified in the motion papers as a John

Doe defendant. Dkt. No. 55; Dkt. No. 58. The report and recommendation was accepted in its entirety, and McAllister was directed to file an amended complaint to "include only one cause of action—a procedural due process claim in connection with his disciplinary hearing—and one Defendant—hearing officer Call." Dkt. No. 58 at 4. McAllister thereafter filed his amended complaint wherein he requested punitive and compensatory damages. Am. Compl. at 4. Presently pending is Call's motion for summary judgment on the amended complaint pursuant to Fed.R.Civ.P. 56. Dkt. No. 74. McAllister did not respond. For the following reasons, it is recommended that Call's motion be granted in part and denied in part.

## I. Failure to Respond

The Court notified McAllister of the response deadline and extended the deadline for his opposition papers on two occasions. Dkt. No. 75; Dkt. No. 77; Dkt. No. 80. Call also provided notice of the consequence of failing to respond to the motion for summary judgment in his motion papers. Dkt. No. 74–1. Despite these notices and extensions, McAllister did not respond.

**\*3** Summary judgment should not be entered by default against a *pro se* plaintiff who has not been given any notice that failure to respond will be deemed a default." *Champion v. Artuz,* 76 F.3d 483, 486 (2d Cir.1996). Thus, "[t]he fact that there has been no response to a summary judgment motion does not ... mean that the motion is to be granted automatically." *Id. at* 486. Even in the absence of a response, defendants are entitled to judgment only if the material facts demonstrate their entitlement to judgment as a matter of law. *Id.;* FED. R. CIV. P. 56(c). "A verified complaint is to be treated as an affidavit ... and therefore will be considered in determining whether material issues of fact exist...." *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995) (internal citations omitted); *see also Patterson v. Cnty. of Oneida, N.Y.,* 375 F.3d 206, 219 (2d Cir.2004) (same). The facts set forth in defendant's Rule 7.1 Statement of Material Facts (Dkt. No. 74–2) are accepted as true as to those facts that are not disputed in McAllister's amended complaint. N.D.N.Y.L.R. 7.1(a)(3) ("The Court shall deem admitted any properly supported facts set forth in the Statement of Facts that the opposing party does not specifically controvert.").

## II. Background

The facts are reviewed in the light most favorable to McAllister as the non-moving party. *See* subsection III(A) *infra*. At all relevant times, McAllister was an inmate at Mohawk. Am. Compl. ¶ 3.

On or about July 15, 2009, nonparty Correction Officer Femia, pursuant to authorization from nonparty Captain Dauphin, searched McAllister's personal property while McAllister was confined in a secure housing unit ("SHU"). [3] Dkt. No. 74–3, Exh. A, at 14; Am. Compl. ¶¶ 5–6. Femia confiscated approximately twenty documents from McAllister's locker, including five affidavits that were signed by other inmates. Dkt. No. 74–3, Exh. A, at 14. As a result of the search, Femia issued McAllister a Tier III misbehavior report, alleging violations of prison rules 113.15 [4] (unauthorized exchange) and 180.17 (unauthorized assistance). [5] *Id.;* Am. Compl. ¶ 7.

McAllister was assigned as his inmate assistant nonparty Correction Officer A. Sullivan. Am. Compl. ¶ 7; Dkt. No. 74–3, Exh. A, at 11. McAllister requested five inmate witnesses, documents, prison directives 4933 and 4982, and a facility rule book. Am. Compl. ¶ 8; Dkt. No. 74–3, Exh. A, at 11. He also asked Sullivan for permission to retrieve documents from his personal property. *Id.* The requested witnesses were those inmates whose signatures were affixed to the five confiscated affidavits. Dkt. No. 74–3, Exh. A, at 14. Sullivan retrieved the requested materials, and all inmate witnesses agreed to testify. *Id.* at 11.

On or about July 21, 2009, a Tier III disciplinary hearing was held before Call, who served as the hearing officer. Am. Compl. ¶ 10. McAllister pleaded not guilty to both alleged violations. Dkt. No. 74–3, Exh. A, at 38. McAllister objected to the misbehavior report as violative of prison directive 4932 because the copy he was given (1) provided insufficient notice of the charges against him and (2) differed from the report that Call read into the record. *Id.* at 39–41. McAllister stated that his copy did not list the names of the inmates to whom the confiscated affidavits allegedly belonged. *Id.* Call acknowledged the difference between the reports but concluded that the misbehavior report informed McAllister of the charges against him and the bases for the charges. *Id.* at 39, 41–42. McAllister also argued that his copy of the misbehavior report referred to confiscation of twenty documents from his cell, but did not identify the papers that were taken. *Id.* at 42. He contended that the misbehavior report's general reference to "legal work" was insufficient to provide him with notice of the documents to which the report was referring because he had several volumes of legal work. *Id.* at 42, 59. In response to this objection, Call recited the body of the misbehavior report, which described the confiscated documents as "[a]rticles of paper which appear to be legal work including some signed affidavits" and asked McAllister, "[t]hat didn't ring a bell for you? How much paperwork did you have that fit that description?" *Id.* at 42. Call also expressed his belief that the affidavits qualified as legal work. *Id.* at 45, 57–58.

**\*4** McAllister next argued that he did not provide unauthorized legal assistance to another inmate in violation of rule 180.17 because the inmate affidavits were used as evidence to prove that the Division of Parole had a "practice" of "fail[ing] to respond to appeals over the last four years .... " Dkt. No. 74–3, Exh. A at 45–49, 56. These inmates were aware that their affidavits were created for, and to be used solely in support of, McAllister's case and that they were receiving no legal benefit. *Id.* at 48–49. McAllister further contended that he did not need permission from prison personnel to collect the affidavits. *Id.* at 64.

McAllister also argued that rule 113.15 is ambiguous because it does not list the specific items which, if found in an inmate's possession, would violate the rule. Dkt. No. 74–3, Exh. A, at 54. Finally, to the extent it can be determined from the hearing transcript, McAllister objected to the SHU procedures for handling his personal property. *Id.* at 70.

At the conclusion of the hearing, Call informed McAllister that he would be considering testimony from a confidential witness. Dkt. No. 73–3, Exh. A, at 13, 38, 73. McAllister objected to consideration of confidential testimony without being informed of the contents. *Id.* at 74. Finally, McAllister declined to call the inmates that he had requested as witnesses. *Id.* at 37, 71.

Call found McAllister guilty of violating prison rules 113.15 and 180.17. Dkt. No. 74–3, Exh. A, at 8–9, 76. He imposed a penalty of three months in SHU and three months loss of privileges. *Id.* at 8. Call relied upon the misbehavior report, the confidential testimony, the packet of legal work containing the other inmates' affidavits, and McAllister's testimony and statements. *Id.* at 9.

The disciplinary determination was reversed upon administrative appeal on the ground that the evidence failed to support a finding of guilt. Dkt. No. 74–3, Exh. B, at 79; Exh. C, at 81. In May 2010, McAllister commenced this action pursuant to 42 U.S.C. § 1983.

### III. Discussion [6]

McAllister argues that Call violated his rights under (1) the First Amendment, by (a) retaliating against him by finding him guilty and (b) hindering his access to the courts; (2) the Eighth Amendment, by imposing a three-month SHU assignment, plus ten additional days following reversal of the disciplinary hearing; and (3) the Fourteenth Amendment, because (a) he was given insufficient notice of the charges against him, (b) he was denied advance notice of the use of a confidential witness, (c) he was forced to spend approximately fifty-two days in SHU as a result of the misbehavior report, (d) Call failed to follow certain DOCCS directives and prison regulations, (e) Call demonstrated bias against him during the Tier III hearing and prejudged his guilt, and (f) he was denied equal protection.

#### A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact, it was supported by affidavits or other suitable evidence, and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by providing the court with portions of pleadings, depositions, and affidavits which support the motion. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Facts are material if they may affect the outcome of the case as determined by substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). All ambiguities are resolved and all reasonable inferences drawn in favor of the non-moving party. *Skubel v. Fuoroli,* 113 F.3d 330, 334 (2d Cir.1997).

**\*5** The party opposing the motion must set forth facts showing that there is a genuine issue for trial, and must do more than show that there is some doubt or speculation as to the true nature of the facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

For a court to grant a motion for summary judgment, it must be apparent that no rational finder of fact could find in favor of the non-moving party. *Gallo v. Prudential Residential Servs., Ltd. Partnership,* 22 F.3d 1219, 1223–24 (2d Cir.1994); *Graham v. Lewinski,* 848 F.2d 342, 344 (2d Cir.1988).

Where, as here, a party seeks judgment against a *pro se* litigant, a court must afford the non-movant special solicitude. *See Triestman v. Federal Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006). As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," ... that a pro se litigant's submissions must be construed "liberally," ... and that such submissions must be read to raise the strongest arguments that they "suggest," .... At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, ... or arguments that the submissions themselves do not "suggest," ... that we should not "excuse frivolous or vexatious filings by pro se litigants," ... and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law....

*Id.* (citations and footnote omitted); *see also Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191–92 (2d Cir.2008).

#### B. Eleventh Amendment

Call argues that he is entitled to Eleventh Amendment immunity relating to McAllister's claims for money damages against him in his official capacity. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. AMEND. XI. "[D]espite the limited terms of the Eleventh Amendment, a federal court [cannot] entertain a suit brought by a citizen against his [or her] own State." *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 98 (1984) (citing *Hans v. Louisiana,* 134 U.S. 1, 21 (1890)). Regardless of the nature of the relief sought, in the absence of the State's consent or waiver of immunity, a suit against the State or one of

its agencies or departments is proscribed by the Eleventh Amendment. *Halderman,* 465 U.S. at 100. Section 1983 claims do not abrogate the Eleventh Amendment immunity of the states. *See Quern v. Jordan,* 440 U.S. 332, 340–41 (1979).

A suit against a state official in his or her official capacity is a suit against the entity that employs the official. *Farid v. Smith,* 850 F.2d 917, 921 (2d Cir.1988) (citing *Edelman v. Jordan,* 415 U.S. 651, 663 (1974)). "Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself," rendering the latter suit for money damages barred even though asserted against the individual officer. *Kentucky v. Graham,* 473 U.S. 159, 166 (1985). Here, because McAllister seeks monetary damages against Call for acts occurring within the scope of his duties, the Eleventh Amendment bar applies.

**\*6** Accordingly, it is recommended that Call's motion on this ground be granted.

## C. Personal Involvement

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991)). Thus, supervisory officials may not be held liable merely because they held a position of authority. *Id.; Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996). However, supervisory personnel may be considered personally involved if:

(1) [T]he defendant participated directly in the alleged constitutional violation;

(2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong;

(3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;

(4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or

(5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon,* 58 F.3d at 873 (citing *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)). [7] Assertions of personal involvement that are merely speculative are insufficient to establish a triable issue of fact. *See e.g., Brown v. Artus,* 647 F.Supp.2d 190, 200 (N.D.N.Y.2009).

As to any constitutional claims beyond those surrounding the denial of due process at the Tier III hearing, the undersigned notes that evaluation of such is unnecessary as it is outside of the scope set forth in this Court's prior order. Dkt. No. 58 at 4. However, to the extent that Call acknowledges these claims and provides additional and alternative avenues for dismissal, McAllister fails to sufficiently allege Call's personal involvement in impeding his access to the courts, in violation of the First Amendment. McAllister argues that, as a result of Call's determination that he violated rules 113.15 and 180.17, his legal paperwork was confiscated, which impaired his ability to continue to represent himself in pending state and federal court claims. Am. Compl. ¶¶ 38–40. However, McAllister does not suggest that Call was personally involved in either the search and confiscation of paperwork that led to the filing of the misbehavior report nor the subsequent reduction in his paperwork pursuant to directive 4913. To the contrary, McAllister concedes that the paperwork was reduced pursuant to the directive.

McAllister also fails to sufficiently allege Call's personal involvement in the SHU procedures for storing property or in holding him in SHU for ten additional days following the reversal of the Tier III determination. Call stated that hr had no involvment with the storage of property in SHU. Dkt. No. 74–3, at 5. Call also contended that he "was not responsible for plaintiff's being held in SHU for additional days following the August 26, 2009 reversal of the disciplinary hearing decision of July 22, 2009." *Id.* McAllister does not allege Call's involvement in this delay. McAllister's sole reference to the ten-day delay is his claim that he "was not released from Special Housing until September 4, 2009, approximately 10 days after the reversal" Am. Compl. ¶ 43. This conclusory statement is insufficient to demonstrate Call's personal involvement in an extension of his time in SHU

following the reversal of the Tier III determination. *Brown, 647 F.Supp.2d at 200.*

**\*7** Accordingly, it is recommended that Call's motion be granted insofar as McAllister alleges that Call: denied him access to the courts in violation of the First Amendment, was at all involved with the storage of his property while he was in SHU, and caused him to be held an additional ten days in SHU following administrative reversal of the Tier III determination.

## D. First Amendment

McAllister appears to argue that, in retaliation for his filing of grievances and lawsuits, Call found him guilty of the misconduct in the Tier III hearing and imposed SHU time. He suggests that his transfer to SHU, as a result of the Tier III determination, triggered enforcement of his compliance with directive 4913, which impeded his ability to proceed with active legal matters and resulted in dismissals. Am. Compl. ¶ 41. Thus, McAllister also argues that he was denied access to the courts. Am. Compl. ¶ 38. As a preliminary matter, McAllister's First Amendment retaliation and access claims are beyond the scope of the prior order of this Court directing McAllister to limit his amended complaint "include only one cause of action—a procedural due process claim in connection with his disciplinary hearing." Dkt. No. 58, at 4. Regardless, McAllister fails to plausibly allege either retaliation or denial of access to the courts.

Courts are to "approach [First Amendment] retaliation claims by prisoners with skepticism and particular care." *See e.g., Davis v. Goord,* 320 F.3d 346, 352 (2d Cir.2003) (citing *Dawes v. Walker,* 239 F.3d 489, 491 (2d Cir.2001), overruled on other grounds by *Swierkiewicz v. Sorema, NA,* 534 U.S. 506 (2002)). A retaliation claim under section 1983 may not be conclusory and must have some basis in specific facts that are not inherently implausible on their face. *Ashcroft,* 556 U.S. at 678; *South Cherry St., LLC v. Hennessee Group LLC,* 573 F.3d 98, 110 (2d Cir.2009). To survive a motion to dismiss, a plaintiff must show "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Dawes*

*v. Walker,* 239 F.3d 489, 492 (2d Cir.2001), overruled on other grounds by *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002); *Taylor v. Fischer,* 841 F.Supp.2d 734, 737 (W.D.N.Y.2012). If the plaintiff meets this burden, the defendants must show, by a preponderance of the evidence, that they would have taken the adverse action against the plaintiff "even in the absence of the protected conduct." *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977). "Types of circumstantial evidence that can show a causal connection between the protected conduct and the alleged retaliation include temporal proximity, prior good discipline, finding of not guilty at the disciplinary hearing, and statements by defendants as to their motives." *See Barclay v. New York,* 477 F.Supp.2d 546, 588 (N.D.N.Y.2007).

**\*8** Here, McAllister baldly states that Call's disciplinary determination was imposed in retaliation for his filing of grievances and lawsuits; however, McAllister does not identify these grievances and lawsuits nor does he claim that any of these were lodged against Call. *See generally Ciaprazi v. Goord,* No. 02–CV–915, 2005 WL 3531464, at \*9 (N.D.N.Y. Dec. 22, 2005) (dismissing the plaintiff's claim of retaliation where the plaintiff could "point to no complaints lodged by him against or implicating the conduct of [the] defendant ... who issued the disputed misbehavior report."). McAllister also provides no time frame for the apparent grievance and lawsuits. Thus, it cannot be discerned whether or how these unnamed grievances and lawsuits were a "motivating factor" in Call's Tier III determination. *Doyle,* 429 U.S. at 287 (internal quotation marks and citation omitted). McAllister's unsupported, conclusory claim fails to plausibly demonstrate that Call's determination was a product of retaliatory animus.

Undoubtedly, prisoners have a constitutional right to meaningful access to the courts. *Bounds v. Smith,* 430 U.S. 817, 824 (1977); *Lewis v. Casey,* 518 U.S. 343, 350 (1996) ("The right that *Bounds* acknowledged was the (already well-established) right of access to the courts."). This right is implicated when prison officials "actively interfer[e] with inmates' attempts to prepare legal documents[ ] or file them." *Lewis,* 518 U.S. at 350 (internal citations omitted). To establish a denial of access to the courts claim, a plaintiff must satisfy two prongs. First, a plaintiff must show that

the defendant acted deliberately and maliciously. *Davis v. Goord,* 320 F.3d 346, 351 (2d Cir.2003). Second, the plaintiff must demonstrate that he suffered an actual injury. *Id.; Monsky v. Moraghan,* 123 F.3d 243, 247 (2d Cir.1997) (internal citations, quotation marks, and alterations omitted) (quoting *Lewis,* 518 U.S. at 329) ("In order to establish a violation of access to courts, a plaintiff must demonstrate that a defendant caused actual injury, *i.e.,* took or was responsible for actions that hindered a plaintiff's effort to pursue a legal claim"). Thus, a plaintiff must allege that the defendant was "responsible for actions that hindered his efforts to pursue a legal claim." *Davis,* 320 F.3d at 351 (internal quotation marks omitted).

Here, there is insufficient evidence to give rise to a genuine dispute of fact regarding either element of a denial of court access claim. As noted, McAllister merely states that, as a result of the property reduction pursuant to directive 4913, his "ability to continue litigation in Federal and State court caused adverse decisions by the court and dismissals." Am. Compl. ¶ 41. This claim is insufficient to demonstrate that Call was responsible for actions that hindered his legal claims. Insofar as McAllister's claim could be read to suggest that Call denied him access to the courts by confiscating his legal documents, as noted *supra,* McAllister fails to present any plausible facts to support a finding that Call was involved in the initial search of his property or in the later reduction of his property or that it was maliciously imposed by Call. As noted, the initial cell search which led to the misbehavior report was ordered by Captain Dauphin and executed by Correction Officer Femia. Similarly, McAllister concedes that his property was reduced pursuant to directive 4913. Although McAllister suggests that his transfer to SHU as a result of the Tier III hearing triggered the application of directive 4913, he was transferred to SHU on July 9, six days before the initial cell search occurred. *Id.* ¶ 5. Thus, if McAllister were forced to comply with directive 4913 because of his transfer to SHU, he failed to demonstrate that the compliance arose from the SHU term ordered by Call rather than the unknown incident that resulted in his transfer to SHU on July 9. Further, McAllister failed to establish any actual injury because he did not specify which cases were allegedly dismissed as a result of the property reduction. *See Monsky,* 123 F.3d at 247.

**\*9** Accordingly, it is recommended that Call's motion for summary judgment be granted on this ground.

### E. Eighth Amendment

In his amended complaint, McAllister references the Eighth Amendment. Am. Compl. ¶ 31. However, McAllister's only reference to the Eighth Amendment is his assertion that Call's use of a confidential witness violated his Eighth Amendment right to be free from cruel and unusual punishment. However, in support of this argument, McAllister states only that this right was violated when Call stated, "[s]o, um there is a lot of stuff going on through my paperwork and I want to bring it to your attention before we move on ..." *Id.* ¶ 33; Dkt. No. 74–3, at 73. When read in context, it becomes clear that Call made this statement immediately before informing McAllister of his consideration of confidential information. Dkt. No. 73–3, at 73. Although, in referencing this portion of the hearing transcript McAllister alleges that he was subject to cruel and unusual punishment, it appears that McAllister intended to assert that the use of a confidential witness was a due process violation. Even if McAllister had intended to argue that use of a confidential witness violates the prohibition of cruel and unusual punishment, such a claim would necessarily fail because the Eighth Amendment protects an inmate's right to be free from conditions of confinement that impose an excessive risk to an inmate's health or safety. *Farmer v. Brennan,* 511 U.S. 825, 834 & 837 (1994). As McAllister makes no claim that he faced conditions of confinement imposing a risk to his health or safety and instead focuses his argument on notice of a confidential witness, giving McAllister due solicitude, his claim regarding the use of a confidential witness will be incorporated as part of the due process analysis below.

### F. Fourteenth Amendment

#### 1. Due Process

Well-settled law provides that inmates retain due process rights in prison disciplinary hearings." *Hanrahan v. Doling,* 331 F.3d 93, 97 (2d Cir.2003) (per curiam) (citing cases). However, inmates do not enjoy "the full panoply of rights" accorded to a defendant in a criminal prosecution. *Wolff v. McDonnell,* 418 U.S. 539, 556 (1974). For a plaintiff to state a claim that he was denied due process at a disciplinary hearing, the plaintiff "must establish (1) that he possessed a liberty interest and (2) that the defendant(s)

deprived him of that interest as a result of insufficient process." *Ortiz v. McBride,* 380 F.3d 649, 654 (2d Cir.2004) (per curiam) (quoting *Giano v. Selsky,* 238 F.3d 223, 225 (2d Cir.2001)). To satisfy the first prong, a plaintiff must demonstrate that the deprivation of which he complains is an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484 (1995). "A liberty interest may arise from the Constitution itself, ... or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin,* 545 U.S. 209, 221 (2005) (citations omitted).

### a. Denial of Liberty Interest

**\*10** In assessing whether an inmate plaintiff was denied procedural due process, the court must first decide whether the plaintiff has a protected liberty interest in freedom from SHU confinement. *Bedoya v. Coughlin,* 91 F.3d 349, 351 (2d Cir.1996). If the plaintiff demonstrates the existence of a protected liberty interest, the court is then to determine whether the deprivation of this interest "occurred without due process of law." *Id.* at 351, citing *Kentucky Dept. of Corr. v. Thompson,* 490 U.S. 454, 460–61 (1989). Due process generally requires that a state afford an individual "some kind of hearing" prior to depriving them of a liberty or property interest. *DiBlasio v. Novello,* 344 F.3d 292, 302 (2d Cir.2003). Although not dispositive, duration of disciplinary confinement is a significant factor in determining atypicality. *Colon v. Howard,* 215 F.3d 227, 231 (2d Cir.2000); *Blackshear v. Woodward,* No. 13–CV–1165, 2014 WL 2967752 (N.D.N.Y. July 1, 2014).

McAllister suggests that his confinement in SHU for forty-two to fifty-two days is a sufficient deprivation that requires procedural protections. Freedom from SHU confinement may give rise to due process protections; however, the plaintiff must allege that the deprivation imposed "an atypical and significant hardship." *Sandin,* 515 U.S. at 484; *Gaston v. Coughlin,* 249 F.3d 156, 162 (2d Cir.2001) (concluding that SHU confinement does not give rise to due process protections where inmate failed to demonstrate atypical hardship while confined). Although the Second Circuit has cautioned that "there is no bright-line rule regarding the

length or type of sanction" that meets the *Sandin* standard (*Jenkins v. Haubert,* 179 F.3d 19, 28 (2d Cir.1999)), it has made clear that confinement in SHU for a period of one year constitutes atypical and significant restraint on inmates, deserving due process protections. *See e.g. Sims v. Artuz,* 230 F.3d 14, 23 (2d Cir.2000) (holding confinement in SHU exceeding 305 days was atypical); *Sealey v. Giltner,* 197 F.3d 578, 589 (2d Cir.1999) (concluding confinement for fewer than 101 days in SHU, plus unpleasant but not atypical conditions, insufficient to raise constitutional claim). Although the Second Circuit has generally held that confinement in SHU for 101 or fewer days without additional indicia of atypical conditions generally does not confer a liberty interest (*Smart v. Goord,* 441 F.Supp.2d 631, 641 (2d Cir.2006)), it has "explicitly noted that SHU confinements of fewer than 101 days could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions of *Sealey* or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical." *Palmer v. Richards,* 364 F.3d 60, 65 (2d. Cir.2004) (citing, *inter alia, Ortiz,* 323 F.3d at 195, n. 1).

The undersigned notes that it is unclear what portion of McAllister's relatively brief time in SHU is attributable to the Tier III determination, because it appears that McAllister was already in SHU when the instant disciplinary report was filed. Am. Comp. ¶ 5; Dkt. No. 74–3, Exh. A, at 14. The undersigned also notes that there is no indication that McAllister endured unusual SHU conditions. The only reference McAllister makes to his time in SHU is that, upon his transfer to SHU, several bags of his paperwork were confiscated pursuant to directive 4913. *Id.* ¶ 37. However, review of directive 4913 reveals that the personal and legal property limit set forth in directive 4913 applies to the general prison population and inmates in other forms of segregated confinement. Dkt. No. 49–2, at 5–19. Thus, the fact that McAllister was forced to comply with directive 4913 does not indicate that he was subjected to conditions more severe than the normal SHU conditions or conditions imposed on the general prison population. Dkt. No. 74–3, Exh. A, at 14.

**\*11** Although the record is largely absent of detail of the conditions McAllister faced in SHU, there is also nothing in the record comparing the time McAllister was assigned and spent in disciplinary confinement with the deprivations endured by other prisoners "in the ordinary course of prison

administration," which includes inmates in administrative segregation and the general prison population. *Welch v. Bartlett,* 196 F.3d 389, 394 (2d Cir.1999) (holding that, after *Sandin,* "the relevant comparison concerning duration is between the period of deprivation endured by the plaintiff and periods of comparable deprivation typically endured by other prisoners in the ordinary course of prison administration, including general population prisoners and those in various forms of administrative and protective custody"). Because "[t]he record does not reveal whether it is typical for inmates not being disciplined to spend similar periods of time in similar circumstances," Call's motion for summary judgment should be denied. *Id.* at 394 (citing *Brooks v. DiFasi,* 112 F.3d 46, 49 (2d Cir.1997)).

Accordingly, it is recommended that defendant's motion for summary judgment on this ground be denied.

### b. **Procedural Due Process**

Assuming a liberty interest exists, it must be determined whether McAllister was denied due process at his Tier III hearing. Where disciplinary hearings could result in SHU confinement or loss of good time credit, "[i]nmates are entitled to advance written notice of the charges; a fair and impartial hearing officer; a reasonable opportunity to call witnesses and present documentary evidence; and a written statement of the disposition," including supporting facts and reasons for the action taken." *Luna v. Pico,* 356 F.3d 481, 487 (2d Cir.2004) (citing *Kalwasinski v. Morse,* 201 F.3d 103, 108 (2d Cir.1999)); *see also Wolff,* 418 U.S. at 556; *Sira v. Morton,* 380 F.3d 57, 59 (2d Cir.2004).

### i. **Notice**

McAllister first appears to argue that he was denied procedural due process because the misbehavior report (1) violated unnamed DOCCS rules, regulations, and procedures, and (2) failed to provide him with adequate notice of the charges against him because it did not list the five inmates whose affidavits were confiscated and, thus, impacted his ability to prepare a defense to the charges. Am. Compl. ¶¶ 11–13, 16–17. Although inmates are entitled to advance written notice of the charges, "[t]his is not to suggest that

the Constitution demands notice that painstakingly details all facts relevant to the date, place, and manner of charged inmate misconduct ...." *Sira,* 380 F.3d at 72 (2d Cir.2004) (citing *Wolff,* 418 U.S. at 564). "[T]here must be sufficient factual specificity to permit a reasonable person to understand what conduct is at issue so that he may identify relevant evidence and present a defense." *Id.*

First, to the extent that McAllister's argues that the differing disciplinary reports violated unspecified DOCCS rules, regulations, and procedures (Am.Compl.¶¶ 12–13), this claim must fail. A section 1983 claim is not the "appropriate forum" in which to seek review of a violation of a prison regulation. *Rivera v. Wohlrab,* 232 F.Supp.2d 117, 123 (S.D.N.Y.2002) ("a § 1983 claim brought in federal court is not the appropriate forum to urge violations of prison regulation or state law ... the allegations asserted must constitute violations of constitutional due process standards."). Next, McAllister fails to plausibly allege the existence of a question of fact whether the difference between the misbehavior reports deprived him of the ability to identify relevant evidence so that he could prepare a defense. Although McAllister's copy of the report was missing the names of the inmates whose affidavits were confiscated, it informed McAllister of the date, time, and location of the alleged violations; the rules alleged to have been violated; and a description of the documents that were confiscated. *Johnson v. Goord,* 305 Fed. Appx. 815, 817 (2d Cir.2009) (concluding where the inmate's copy of misbehavior report included details of alleged violation and charges against him, a sentence missing from the inmate's copy of report did not violate the inmate's due process rights). It is clear that the discrepancy between the misbehavior reports did not affect McAllister's ability to prepare and present a defense. Prior to the hearing, McAllister requested as witnesses the five inmates whose affidavits were found during the property search. Indeed, the record demonstrates that McAllister was able to both identify the documents referenced in the misbehavior report and address them at the hearing. Dkt. No. 74–3, Exh. A at 45, 47–48.

**\*12** Thus, because he received sufficient notice of the charges and was able to prepare and present a defense on his behalf, McAllister fails to raise a question of fact as to whether he was denied sufficient notice of the charges against him.

### ii. **Hearing Officer Bias/Pre-determination of Guilt**

McAllister also contends that his procedural due process rights were violated because Call was biased against him and prejudged his guilt. The Fourteenth Amendment guarantees inmates the right to the appointment of an unbiased hearing officer to address a disciplinary charge. *Allen v. Cuomo,* 100 F.3d 253, 259 (2d Cir.1996). An impartial hearing officer "does not prejudge the evidence" and is not to say "how he would assess evidence he has not yet seen." *Patterson v. Coughlin,* 905 F.2d 564, 570 (2d Cir.1990); *see also Francis v. Coughlin,* 891 F.2d 43, 46 (2d Cir.1989) ("it would be improper for prison officials to decide the disposition of a case before it was heard"). However, "[i]t is well recognized that prison disciplinary hearing officers are not held to the same standard of neutrality as adjudicators in other contexts." *Russell v. Selsky,* 35 F.3d 55, 60 (2d Cir.1996). "A hearing officer may satisfy the standard of impartiality if there is 'some evidence in the record' to support the findings of the hearing." *Nelson v. Plumley,* No. 9:12–CV–422, 2014 WL 4659327, at *11 (N.D .N.Y. Sept. 17, 2014) (quoting *Allred v. Knowles,* No. 06–CV–0456, 2010 WL 3911414, at * 5 (W.D.N.Y. Oct. 5, 2010) (quoting *Waldpole v. Hill,* 472 U.S. 445, 455 (1985)). However, "the mere existence of 'some evidence' in the record to support a disciplinary determination does not resolve a prisoner's claim that he was denied due process by the presence of a biased hearing officer." *See Smith v. United States,* No. 09–CV–729, 2012 WL 4491538 at *8 (N.D.N.Y. July 5, 2012).

Prison officials serving as hearing officers "enjoy a rebuttable presumption that they are unbiased." *Allen,* 100 F.3d at 259. "Claims of a hearing officer bias are common in [inmate section] 1983 claims, and where they are based on purely conclusory allegations, they are routinely dismissed." *Washington v. Afify,* 968 F.Supp.2d 532, 541 (W.D.N.Y.2003) (citing cases). "An inmate's own subjective belief that the hearing officer was biased is insufficient to create a genuine issue of material fact." *Johnson v. Fernandez,* No. 09–CV–626 (FJS/ATB), 2011 WL 7629513, at *11 (N.D.N.Y. Mar. 1, 2011) (citing *Francis,* 891 F.2d at 46).

McAllister first argues that Call prejudged his guilt. He supports this contention by pointing to moments during the Tier III hearing where Call expressed his belief that McAllister's possession of affidavits signed by other inmates was sufficient to support a violation of prison rules 113.15 and 180.17. Am. Compl., ¶¶ 13, 15, 23–25, 36. Here, however the challenged affidavits were not evidence that Call prejudged because he had the opportunity to review the affidavits and did so at the hearing. Although McAllister disagreed with Call's opinion that possession of such documents would be a *per se* violation of the rules, Call's assertion of belief in this matter was an opinion he reached following his personal review of this evidence. *See Johnson v. Doling,* No. 05–CV–376, 2007 WL 3046701, at * 10 (N.D.N.Y. Oct. 17, 2007) (holding that where the "[p]laintiff was provided the opportunity to testify, [and] call and question witnesses .... [d]isagreement with rulings made by a hearing officer does not constitute bias"). Thus, it does not appear that Call prejudged this evidence.

**\*13** To support his claim that Call exhibited bias and partiality against him in the Tier III hearing, McAllister points out that, after he objected to the misbehavior report for failing to provide him sufficient notice of the documents confiscated, Call read the portion of the misbehavior report describing the documents as "[a]rticles of paper which appear to be legal work including some signed affidavits," and stated "that didn't ring a bell for you?" *Id.* ¶¶ 19, 32). When read in context, this statement does not establish bias on Call's part, rather it appears to be a genuine question. Though it may be said that Call could have couched this question in a kinder manner, this statement does not demonstrate bias. Moreover, that the Tier III determination was reversed on appeal, without more, is not evidence of bias or other due process violation. *Eng v. Therrien,* No. 04–CV–1146, 2008 WL 141794, at *2 (N.D.N.Y. Jan. 11, 2008).

Thus, McAllister fails to plausibly allege the existence of question of fact whether Call prejudged his guilt or was otherwise biased in the Tier III hearing.

### iii. **Failure to Investigate**

McAllister next suggests that he was denied procedural due process because Call declined to interview the law library officer. Am. Compl. ¶ 29. Call permitted McAllister to present testimony on his behalf and afforded him the opportunity call witnesses. Had McAllister wished to hear testimony from the law library officer, he could have requested the law library officer as a witness. *Wolff,* 418 U.S. at 566

(inmates have a right to call witnesses in their defense at disciplinary hearings). That Call found it unnecessary to independently interview the law library officer—especially where McAllister did not demonstrate that his testimony would be relevant—does not result in a denial of due process because "[t]here is no requirement ... that a hearing officer assigned to preside over a disciplinary hearing conduct an independent investigation; that is simply not the role of a hearing officer." *Robinson v. Brown,* No. 9:11–CV–0758, 2012 WL 6799725, *5 (N.D.N.Y. Nov. 1, 2012).

Accordingly, McAllister fails plausibly raise a due process violation based on Call's alleged failure to investigate.

#### iv. Confidential Witness

To the extent it can be discerned, McAllister contends that he was denied due process because Call relied on confidential witness testimony, yet failed to provide him with advance notice of the confidential witness and refused to inform him of his or her identity or the nature of the testimony. Am. Compl. ¶¶ 30–34. The Second Circuit has held that a hearing officer must perform an independent assessment of a confidential informant's credibility for such testimony to be considered reliable evidence of an inmate's guilt. *Sira,* 380 F.3d at 78 (noting that, "when sound discretion forecloses confrontation and cross-examination, the need for the hearing officer to conduct an independent assessment of informant credibility to ensure fairness to the accused inmate is heightened.").

**\*14** Here, the record provides no indication that Call independently assessed the credibility and reliability of the confidential witness. The confidential witness form merely states that Call "was provided confidential information relating to the misbehavior report ." Dkt. No. 74–3, at 13. Similarly, Call does not provide whether or how he performed an assessment of the witness's credibility. *Id.* at 4. Therefore, there exist questions of fact whether Call deprived McAllister of due process by relying on this testimony without an independent assessment of the witness's credibility.

To the extent that McAllister argues that he was denied due process by Call's decision to refuse to disclose the content of the confidential witness's testimony, the law in this circuit provides that where a prison official decides to keep certain witness testimony confidential, he or she "must offer a reasonable justification for their actions, if not

contemporaneously, then when challenged in a court action." *Sira,* 380 F.3d at 75 (citing *Ponte v. Real,* 471 U.S. 491, 498 (1985)). Although "[c]ourts will not readily second guess the judgment of prison officials with respect to such matters ... the discretion to withhold evidence is not unreviewable...." *Id.* (citations omitted). Here, Call failed to provide his rationale for refraining to share the substance of this testimony, stating merely that McAllister could not be told the substance of the testimony because "it is by definition it is ... confidential." Dkt. No. 74–3, at 74. As Call presented no reason to justify withholding the identity or substance of the confidential witness's testimony, McAllister presents a viable due process claim based on the nondisclosure of this evidence. *Sira,* 380 F.3d at 76.

Accordingly, Call's motion for summary judgment should be denied on this ground.

#### v. Some Evidence

"Once a court has decided that the procedural due process requirements have been met, its function is to determine whether there is some evidence which supports the decision of the [hearing officer]." *Freeman v. Rideout,* 808 F.2d 949, 954 (2d Cir.1986) (citations omitted). In considering whether a disciplinary determination is supported by some evidence of guilt, "the relevant question is whether there is any evidence in the record [before the disciplinary board] that could support the conclusion reached by the disciplinary board." *Superintendent v. Hill,* 472 U.S. 445, 455–56 (1985) (citations omitted); *Sira,* 380 F.3d at 69. The Second Circuit has interpreted the "some evidence" standard to require "reliable evidence" of guilt. *Luna,* 356 F.3d at 488.

In making his determination, Call relied upon McAllister's testimony and statements, testimony of a confidential witness, the misbehavior report, and the legal documents confiscated during the property search. Dkt. No. 74–3, at 4. As noted, based on the record provided, Call did not perform an independent assessment of the witness's credibility. Thus, Call's reliance on confidential testimony would be insufficient to support a finding of guilt. *Taylor v. Rodriguez,* 238 F.3d 188, 194 (2d Cir.2001) (determining that reliance on confidential informant's testimony insufficient to provide

"some evidence" of guilt where there was no independent examination of indicia relevant to informant's credibility). The remaining evidence relied upon—McAllister's testimony, the misbehavior report, and the affidavits—does not constitute some evidence of guilt, as required by the Due Process clause.

**\*15** The affidavits alone do not constitute some evidence of guilt because mere possession of affidavits signed by other inmates would not violate prison rules 113.15 and 180.17 were it true that these documents were McAllister's property and drafted solely for his benefit. Similarly, although a written misbehavior report may serve as some evidence of guilt, such is the case where the misbehavior report charges the plaintiff for behavior that the author of the misbehavior report personally witnessed. *Creech v. Schoellkoph,* 688 F.Supp.2d 205, 214 (W.D.N.Y.2010) (citations omitted) (misbehavior report drafted by officer who personally observed plaintiff possess and transfer pieces of sharpened metal to another inmate constituted some evidence of guilt). In this case, where a determination of guilt would appear to turn on knowledge of the ownership of the documents and an understanding of the circumstances under which the papers were drafted, a misbehavior report which merely states that papers appearing to be legal work signed by other inmates were found in McAllister's property, it does not establish a per se violation of rules 113.15 and 180.17. *See Hayes v. Coughlin,* No. 87 CIV. 7401, 1996 WL 453071, at \*3 (S.D.N.Y. Aug. 12, 1996)* ("if a misbehavior report can serve as 'some evidence' for a hearing decision and thereby insulate a hearing from review, there would be little point in having a hearing"); *see also Williams v. Dubray,* No. 09–CV–1298, 2011 WL 3236681, at \*4 (N.D.N.Y. July 13, 2011) (holding that there were questions of fact whether the determination was based upon some evidence of guilt where the hearing officer relied on misbehavior report that was based on a corrections officer's unsupported accounts, without additional evidence to support its charges). Thus, absent additional evidence that these papers belonged to other inmates or that McAllister drafted the documents for other inmates' use, the fact that the misbehavior report identified these documents as being found in McAllister's secured property does not constitute reliable evidence of guilt.

Finally, McAllister's testimony does not constitute reliable evidence of guilt. In response to the charge of violating rule 113.15, McAllister testified that the affidavits were his property because he drafted them solely as evidence in his personal litigation against the Department of Probation.

Similarly, in defense of the charge for violating rule 180.17, McAllister repeatedly testified that he did not provide legal assistance to the inmates in question because the affidavits were written solely to serve as supporting evidence in his personal action, the inmates were aware that they would receive no legal benefit as a result, and he did not receive any compensation from the inmates. Regardless whether Call considered McAllister's testimony to be credible, without some other reliable evidence, such as, perhaps, a statement from one of the other inmates claiming that he signed the affidavit under the belief that McAllister would provide him with legal assistance, McAllister's testimony denying violations of the charged prison rules would not constitute some evidence of guilt.

**\*16** Accordingly, it is recommended that Call's motion for summary judgment be denied as to McAllister's procedural due process claim.

### c. **Directive 4913**

McAllister further argues that, as a result of the SHU placement, he suffered an unconstitutional deprivation of his legal and personal property because he was required to comply with the limits set forth in directive 4913. This Court has already ruled upon this claim when it was raised at earlier stages. In deciding Call's motion for summary judgment on the McAllister's first complaint, this Court held that the directive did not violate his Fourteenth Amendment rights:

> Directive # 4913 was reasonably related to valid institutional goals given DOCCS' responsibility to provide for the health and safety of its staff and inmates and the alternatives provided to inmates in being able to seek exceptions and choose which four or five draft bags of material would remain with them. Moreover, the rules were neutral and reasonably related to the ultimate goals of the facility, security and safety.

*McAllister v. Fischer,* 2012 WL 7681635, at \*12 (N.D.N.Y. July 6, 2012) (Dkt. No. 55, at 22–23), *Report and Recommendation adopted by* 2013 WL 954961 (N.D.N.Y.

Mar. 12, 2013) (Dkt. No. 58), *appeal dismissed* 2d Cir. 13–111 (Jan. 13.2014). Further, the Court concluded that directive 4913 "did not violate[ ] McAllister's Fourteen Amendment rights" and was "reasonably related to valid institutional goals." Dkt. No. 55, at 23–24; Dkt. No. 58. Thus, any such claim is barred by the law of the case. *Arizona v. California,* 460 U.S. 605, 618 (1983) (citations omitted); *see also United States v. Thorn,* 446 F.3d 378, 383 (2d Cir.2006) (internal quotation marks and citations omitted) ("The law of the case doctrine counsels against revisiting our prior rulings in subsequent stages of the same case absent cogent and compelling reasons ....")); *Arizona,* 460 U.S. at 618 (citations omitted); *Wright v. Cayan,* 817 F.2d 999, 1002 n. 3 (2d Cir.1987) (citations omitted) ("Even when cases are reassigned to a different judge, the law of the case dictates a general practice of refusing to reopen what has been decided.").

Accordingly, it is recommended that defendant's motion for summary judgment be granted on this ground.

### 2. Equal Protection

McAllister's only reference to an equal protection violation in the amended complaint is his conclusory claim that Call's reference to a confidential witness during the Tier III hearing was in violation of his right to equal protection. Am. Compl. ¶ 31. Further, in this Court's previous order, McAllister's equal protection claim was dismissed for failure to demonstrate, among other things, that he was part of a protected class or that he was treated differently from any similarly-situated inmates. Dkt. No. 58, at 4; Dkt. No. 55, at 24–25. Thus, any such claim would also be barred by the law of the case. *Thorn,* 446 F.3d at 383. Regardless, McAllister's equal protection claim must also fail for the reasons discussed *infra.*

**\*17** To establish an equal protection violation, a plaintiff must show that "he was treated differently than others similarly situated as the result of intentional or purposeful discrimination." *Phillips v. Girdich,* 408 F.3d 124, 129 (2d Cir.2005). McAllister has not identified, nor does the record disclose, any basis for a reasonable fact-finder to conclude that he was treated differently from similarly-situated individuals. Rather, plaintiffs only support for his equal protection claim is the following:

Call, throughout the entire disciplinary hearing deprive [sic] plaintiff equal protection when he stated: "This is hearing officer Call, this is 2:21 as I was going through my paperwork I realized something that I wanted to point out to Mr. McAllister."

Defendant Call discriminated against plaintiff when he stated: "I reviewed it this morning the 22nd when it was received again is confidential"

Am. Compl. ¶¶ 31–32. McAllister does not explain how these statements denied him equal protection. McAllister fails to plausibly suggest that he was treated differently from any similarly-situated individuals. Further, even if these statements demonstrate the existence of questions of fact regarding whether McAllister was treated differently from similarly-situated persons, he fails to identify disparity in the conditions "as a result of any purposeful discrimination directed at an identifiable suspect class." *See Dolberry v. Jakob,* No. 11–CV–1018, 2014 WL 1292225, at \*12 (N.D.N.Y. Mar. 28, 2014).

Accordingly, it is recommended that defendant's motion on this ground should be granted.

### G. **Qualified Immunity**

Call contends that, even if McAllister's claims are substantiated, he is entitled to qualified immunity. The doctrine of qualified immunity is an affirmative defense which "shield[s] an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." *Pearson v. Callahan,* 555 U.S. 223, 244 (2009). Even if a disciplinary disposition is not supported by "some evidence," prison officials are entitled to qualified immunity if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Luna,* 356 F.3d at 490 (quoting *Wilson v. Layne,* 526 U.S. 603, 614 (1999)) (internal quotation marks omitted). This assessment is made "in light of the legal rules that were clearly established at the time it was taken." *Wilson,* 526 U.S. at 614; *Kaminsky v. Rosenblum,* 929 F.2d 922, 925 (2d Cir.1991). To determine whether a state official is entitled to qualified immunity for acts taken during the course of his or her employment, a reviewing court is to determine: "(1) whether plaintiff has

shown facts making out violation of a constitutional right; (2) if so, whether that right was clearly established; and (3) even if the right was clearly established, whether it was objectively reasonable for the [official] to believe the conduct at issue was lawful." *Phillips v. Wright,* 553 Fed. Appx. 16, 17 (2d Cir.2014) (citing *Gonzalez v. City of Schenectady,* 728 F.3d 149, 154 (2d Cir.2013)).

**\*18** First, as discussed, McAllister presented a viable due process claim that the determination was not based on some evidence of guilt because Call (1) relied on confidential witness testimony without making an independent assessment of the witness's credibility and (2) did not otherwise have sufficient reliable evidence to support his finding of guilt. McAllister has also raised issues of fact whether the remaining evidence relied upon—the misbehavior report, McAllister's testimony and statements, and the confiscated legal papers—provided reliable evidence of guilt.

Addressing the second prong of the analysis, there is a clearly-established right to procedural due process protections, including the right to have a disciplinary determination be based on some evidence of guilt. There is also a clearly-established right to an independent assessment of confidential witnesses performed where a hearing officer relies on the witness's testimony (*Vasquez v. Coughlin,* 726 F.Supp. 466, 472 (S.D.N.Y.1989) (right clearly established by 1986); see also *Sira,* 380 F.3d at 80). Further, although there is no bright-line for what suffices as "some evidence" in every prison disciplinary proceeding (*Woodard v. Shanley,* 505 Fed. Appdx. 55, 57 (2d Cir.2012)), there were questions of fact surrounding the allegedly reliable evidence demonstrating that McAllister was in possession of other inmates' legal documents or that he provided them with unauthorized legal assistance. *Cf. Turner v. Silver,* 104 F.3d 354, at *3 (2d Cir.1996) (some evidence to support determination that the defendant violated rule against unauthorized legal assistance where documentary evidence indicated the plaintiff received payment from other inmates, author of misbehavior report testified regarding an interview with informant who implicated defendant, prison official testified that inmate told her he had been charged for law library services and inmate testified the same). Call both failed to perform an independent assessment of the confidential witness's credibility and provided no explanation for why both the identity of the witness and the substance of his or her testimony could not

be disclosed to McAllister. *Sira,* 380 F.3d at 75 (citing *Ponte,* 471 U.S. at 498).

Thus, given the state of the law regarding the rights to which an inmate is entitled in his disciplinary hearing, it was not objectively reasonable for Call to have believed that (1) he need not perform an independent assessment of the witness credibility or (2) the misbehavior report, confiscated affidavits, and McAllister's consistent testimony and statements, without more, sufficiently supported a determination that McAllister violated rules 113.15 and 180.17.

Accordingly, defendant's motion for summary judgment should be denied on this ground.

### IV. **Conclusion**

For the reasons stated above, it is hereby **RECOMMENDED** that defendant's motion for summary judgment (Dkt. No. 74) be

**\*19** 1. **GRANTED** insofar as:

   a. dismissing plaintiff's First Amendment claims;

   b. dismissing plaintiff's Eighth Amendment claims;

   c. dismissing plaintiff's challenge to the constitutionality of Directive 4913;

   d. defendant's Eleventh Amendment immunity defense;

2. **DENIED** as to:

   a. plaintiff's Fourteenth Amendment procedural due process claims;

   b. defendant's qualified immunity defense.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the ... recommendation." N.Y.N.D.L.R. 72 .1(c) (citing 28 U.S.C. § 636(b)(1)(B)-(C)).

**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE**

**REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Sec'v of HHS,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e).

Dated: October 9, 2014.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 5475293

## Footnotes

1    This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

2    McAllister is no longer incarcerated and is currently under the supervision of DOCCS.

3    SHUs exist in all maximum and certain medium security facilities. The units "consist of single-occupancy cells grouped so as to provide separation from the general population ...." N .Y. COMP.CODES R. & REGS. tit 7, § 300.2(b) (1999). Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required. *Id.* at pt. 301.

4    Rule 113.15 provides that "[a]n inmate shall not purchase, sell, loan, give or exchange a personally owned article without authorization." 7 NYCRR 270.2.

5    Rule 180.17 provides that "[a]n inmate may not provide legal assistance to another inmate without prior approval of the superintendent or designee. An inmate shall not receive any form of compensation for providing legal assistance." 7 NYCRR 270.2.

6    All unpublished decisions referenced herein are appended to this report and recommendation.

7    Various courts in the Second Circuit have postulated how, if at all, the Iqbal decision affected the five Colon factors which were traditionally used to determine personal involvement. *Pearce v. Estate of Longo,* 766 F.Supp.2d 367, 376 (N.D.N.Y.2011), *rev'd in part on other grounds sub nom., Pearce v. Labella,* 473 F. App'x 16 (2d Cir.2012) (recognizing that several district courts in the Second Circuit have debated Iqbal's impact on the five Colon factors); *Kleehammer v. Monroe Cnty.,* 743 F.Supp.2d 175 (W.D.N .Y.2010) (holding that "[o]nly the first and part of the third Colon categories pass Iqbal's muster ...."); *D'Olimpio v. Crisafi,* 718 F.Supp.2d 340, 347 (S.D.N.Y.2010) (disagreeing that Iqbal eliminated Colon's personal involvement standard).

**End of Document**                                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 5437617
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

David DOUGLAS, Sr., Plaintiff,

v.

PERRARA, Corr. Officer, Great Meadow
C.F.; Lawrence, Corr. Officer, Great
Meadow C.F.; Whittier, Corr. Officer, Great
Meadow C.F.; Mulligan, Corr. Officer,
Great Meadow C.F.; Deluca, Corr. Sergeant,
Great Meadow C.F.; and Russel, Deputy
Superintendent, Great Meadow C.F, Defendants.

No. 9:11–CV–1353 (GTS/RFT).
|
Sept. 27, 2013.

**Attorneys and Law Firms**

David Douglas, Sr., Liverpool, NY, pro se.

Hon. Eric T. Schneiderman, Attorney General for the State of New York, Colleen D. Galligan, Esq., Assistant Attorney General, of Counsel, Albany, NY, for Defendants.

***DECISION and ORDER***

GLENN T. SUDDABY, District Judge.

**\*1** Currently before the Court, in this *pro se* civil rights action filed by David Douglas, Sr., ("Plaintiff") against the six above-captioned New York State correctional employees, are the following: (1) Defendants' motion for partial summary judgment (requesting the dismissal of Plaintiff's claims against Defendant Russell, and his claims against the remaining Defendants in their official capacities); and (2) United States Magistrate Judge Randolph F. Treece's Report– Recommendation recommending that Defendants' motion be granted. (Dkt.Nos.70, 80.) Neither party filed an objection to the Report–Recommendation, and the deadline by which to do so has expired. (*See generally* Docket Sheet.) After carefully reviewing the relevant filings in this action, the Court can find no clear error in the Report–Recommendation: Magistrate Judge Treece employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. As a result, the Court accepts and adopts the Report–Recommendation for the reasons stated therein. (Dkt. No. 80.)

**ACCORDINGLY,** it is

**ORDERED** that Magistrate Judge Treece's Report– Recommendation (Dkt. No. 80) is ***ACCEPTED*** and ***ADOPTED*** in its entirety; and it is further

**ORDERED** that Defendants' motion for partial summary judgment (Dkt. No. 70) is ***GRANTED;*** and it is further

**ORDERED** that the following claims are ***DISMISSED*** from this action: (a) all claims asserted against Defendant Russell, and (b) all claims asserted against Defendants in their official capacities only. The Clerk is directed to terminate Defendant Russell from this action; and it is further

**ORDERED** that the following claims ***REMAIN PENDING*** in this action: (a) Plaintiff's claim that Defendants Whittier, Mulligan, Perrara and/or Lawrence subjected him to inadequate prison conditions by depriving him of meals for approximately five consecutive days in December 2009, in violation of the Eighth Amendment; (b) Plaintiff's claim that Defendants Whittier, Mulligan, Perrara and Lawrence used excessive force against him, and that Defendant Deluca failed to protect him from the use of that excessive force, in violation of the Eighth Amendment and New York State common law; and (c) Plaintiff's claim that Defendant Deluca was deliberately indifferent to Plaintiff's serious medical needs (following the assaults) in violation of the Eighth Amendment; and it is further

**ORDERED** that Pro Bono Counsel be appointed for the Plaintiff for purposes of trial only; any appeal shall remain the responsibility of the plaintiff alone unless a motion for appointment of counsel for an appeal is granted; and it is further

**ORDERED** that upon assignment of Pro Bono Counsel, a final pretrial conference with counsel will be scheduled in this action before the undersigned, at which time the Court will schedule a jury trial for Plaintiff's remaining claims as set forth above against Defendants Whittier, Mulligan, Perrara, Lawrence and DeLuca. Counsel are directed to appear at the final pretrial conference with settlement authority from the parties.

*Case 9:19-cv-01314-BKS-TWD Document 44 Filed 04/22/21 Page 29 of 93*

*REPORT–RECOMMENDATION and ORDER*

RANDOLPH F. TREECE, United States Magistrate Judge.

**\*2** *Pro se* Plaintiff David Douglas brought a civil rights Complaint, pursuant to 42 U.S.C. § 1983, asserting that Defendants violated his constitutional rights while he was in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") and housed in the Great Meadow Correctional Facility. Specifically, Plaintiff alleges that in early December 2009, he wrote a letter to Defendant Eileen Russell [1] complaining that he had been denied meals for several days. *See* Dkt. No. 1, Compl. at ¶¶ 8, 64, & 66. Plaintiff further alleges that the remaining Defendants violated his constitutional rights when they used excessive force against him on several occasions and denied him medical care in order to treat the injuries he sustained therewith. *See generally id.* And, according to Plaintiff, Defendant Russell's failure to take disciplinary action against these individuals and curtail their "known pattern of physical abuse of inmates" renders her liable for violating his constitutional rights. *Id.* at ¶ 66.

Presently pending is Defendants' Motion for Partial Summary Judgment whereby they seek dismissal of Defendant Russell from this action as well as dismissal of all claims against the remaining Defendants in their official capacities. Dkt. No. 70. A response to that Motion was due on February 22, 2013. To date, the Court has not received a response from Plaintiff.

## I. DISCUSSION

### A. Standard of Review

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I. C. v. Giammettei,* 34 F.3d 51, 54 (2d Cir.1994) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.,* 964 F.2d 149, 154 (2d Cir.1992).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin,* 344 F.3d 282, 287 (2d Cir.2003) ( "Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525–26 (2d Cir.1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard ... they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin,* 344 F.3d at 289 (citing *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983) and *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995)).

**\*3** When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.,* 164 F.3d 736, 742 (2d Cir.1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship,* 22 F.3d 1219, 1224 (2d Cir.1994). Furthermore, where a party is proceeding *pro se,* the court must "read [his or her] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994), accord, *Soto v. Walker,* 44 F.3d 169, 173 (2d Cir.1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991). Summary judgment

is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

Pursuant to the Local Rules of Practice for the Northern District of New York, "[w]here a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers ... shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown." N.D.N.Y.L.R. 7.1(b)(3). "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically."

*Champion v. Artuz,* 76 F.3d 483, 486 (2d Cir.1996). Even in the absence of a response, Defendants are entitled to summary judgment only if the material facts demonstrate their entitlement to judgment as a matter of law. *Id.;* FED. R. CIV. P. 56(c). Because Plaintiff has failed to raise any question of material fact, the Court will accept the facts as set forth in Defendants' Statement Pursuant to Rule 7.1(a)(3) (Dkt. No. 70–2), supplemented by Plaintiffs' verified Complaint (Dkt. No. 1), as true. *See Lopez v. Reynolds,* 998 F.Supp. 252, 256 (W.D.N.Y.1997).

### B. Personal Involvement

As noted above, Plaintiff brings this civil rights action for alleged violations of his constitutional rights during his incarceration in December 2009 at Great Meadow Correctional Facility. Plaintiff claims that in early December 2009, he was subjected to threats and harassment by other inmates and correctional officers. Compl. at ¶ 1. Plaintiff alleges that beginning on December 11, 2009, he was denied several meals for several consecutive days by unnamed individuals, prompting him to file grievances and write two letters to Defendant Russell. *Id.* at ¶¶ 2–8.[2] Thereafter, on December 16, 2009, Plaintiff's meals were delivered to him and, on the following date, he was moved to protective custody. *Id.* at ¶¶ 9–10. The remainder of Plaintiff's Complaint describes a series of events wherein the remaining Defendants are accused of using excessive physical force against him and denying him medical attention.

**\*4** With regard to the pending, unopposed Motion, the Court notes that there is a paucity of factual allegations

contained in the Complaint concerning Defendant Russell. In fact, the only factual allegation that this Court can point to is that Plaintiff wrote two letters to Defendant Russell complaining about being denied meals. Defendant Russell is not named nor referenced throughout the remainder of the Complaint. Nevertheless, in the section of the Complaint where Plaintiff lists his causes of action, he seemingly seeks to hold Defendant Russell liable for her alleged failure to intervene and take disciplinary action against the Defendants in order to curb their known pattern of physical abuse against inmates. *Id.* at ¶¶ 64 & 66.

According to Defendants' uncontroverted submissions, Defendant Eileen Russell is employed by DOCCS and worked at Great Meadow in 2006 as the Assistant Deputy Superintendent for Special Housing assigned to the Behavioral Health Unit. Dkt. No. 70–3, Eileen Russell Decl., dated Feb. 4, 2013, at ¶¶ 1, 3, & 4. During her tenure in that position, Plaintiff neither worked nor was housed as a patient in the Behavioral Health Unit. Russell Decl. at ¶ 11. Russell did not have any responsibilities related to delivery of meals to inmates nor does she have any recollection speaking with Plaintiff or seeing any correspondence from him. *Id.* at ¶ 13. Furthermore, at no time was she made aware of any assault against Plaintiff by any DOCCS employee. *Id.* at ¶ 15.

The Second Circuit has held that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under *§ 1983.*" *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citations omitted). Moreover, "the doctrine of *respondeat superior* cannot be applied to *section 1983* actions to satisfy the prerequisite of personal involvement." *Kinch v. Artuz,* 1997 WL 576038, at *2 (S.D.N.Y. Sept. 15, 1997) (citing *Colon v. Coughlin,* 58 F.3d 865, 874 (2d Cir.1995) & *Wright v. Smith,* 21 F.3d at 501) (further citations omitted)). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." *Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009).

It appears that Plaintiff seeks to hold Defendant Russell liable due to her employment as a supervisor at Great Meadow. The Second Circuit has stated that a supervisory defendant may have been personally involved in a constitutional deprivation within the meaning of *§ 1983* if she: (1) directly participated in the alleged infraction; (2) after learning of the

violation, failed to remedy the wrong; (3) created a policy or custom under which unconstitutional practices occurred or allowed such policy or custom to continue; (4) was grossly negligent in managing subordinates who caused the unlawful condition or event; or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.[3] *Colon v. Coughlin,* 58 F.3d at 873 (citations omitted); *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986) (citations omitted).

**\*5** Here, the evidence shows that Defendant Russell did not directly participate in any constitutional wrongdoing, she was not aware that Plaintiff had been experiencing any problems with other inmates and staff, in her assignment to the Behavioral Health Unit she did not come into contact with the Plaintiff, and she was not responsible for creating policies or customs nor for rectifying any of the alleged constitutional infirmities Plaintiff is alleged to have been subjected to. Because Plaintiff failed to respond to Defendants' Motion, he has not created any material issue of fact regarding Russell's non-involvement in any constitutional wrongdoing. Thus, based upon the record before the Court, we find that Defendant Russell was not personally involved in any wrongdoing and should be **dismissed** from this action. *See Wright v. Smith,* 21 F.3d at 501 (defendant may not be held liable simply because he holds a high position of authority).

### C. Eleventh Amendment

By their Motion, Defendants seek dismissal of claims brought against them in their official capacities. Dkt. No. 70. In making this request, the Defendants note that during the pendency of this action, Plaintiff was released from DOCCS's custody, thereby rendering moot any request he has made for injunctive relief. Dkt. No. 70–4, Defs.' Mem. of Law, at pp. 7–8. After reviewing the Complaint, the Court notes that Plaintiff primarily seeks monetary compensation for both compensatory and punitive damages. *See* Compl. at Relief Requested. In addition, he seeks a declaratory judgment that his rights have been violated, but does not seek other injunctive relief. *Id.*

The Eleventh Amendment states, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens

or Subjects of any Foreign State." U.S. CONST. amend. XI. Although by its terms, the amendment bars suit by citizens of one state against another state, the Supreme Court has held that such amendment similarly bars suits against a state by its own citizens. *Hans v. Louisiana,* 134 U.S. 1 (1890). "The Eleventh Amendment thus 'affirm[s] that the fundamental principle of sovereign immunity limits the grant of judicial authority in Art. III.' " *Richardson v. New York State Dep't of Corr. Servs.,* 180 F.3d 426, 447–48 (2d Cir.1999) (citing *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 98 (1984)). Thus, sovereign immunity provided for in the Eleventh Amendment prohibits suits against the state, including a state agency in federal court. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. at 98–101; *Severino v. Negron,* 996 F.2d 1439, 1441 (2d Cir.1993); *Daisernia v. State of New York,* 582 F.Supp. 792, 796 (N.D.N.Y.1984). To the extent a state official is sued for damages in his or her official capacity, "such a suit is deemed to be a suit against the state, and the official is entitled to invoke the eleventh amendment immunity belonging to the state." *Rourke v. New York State Dep't. of Corr. Servs.,* 915 F.Supp. 525, 539 (N.D.N.Y.1995) (citing *Berman Enters., Inc. v. Jorling,* 3 F.3d 602, 606 (2d Cir.), *cert. denied,* 510 U.S. 1073 (1994); *Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir.1993)); *see also Mathie v. Fries,* 121 F.3d 808, 818 (2d Cir.1997) ("A claim against a government officer in his official capacity is, and should be treated as, a claim against the entity that employs the officer ....").

**\*6** However, whether state officials sued in their official capacities are entitled to Eleventh Amendment immunity depends also upon the relief sought in the complaint. The Second Circuit has held that in accordance with *Ex parte Young,* 209 U.S. 123 (1908), "acts of state officials that violate federal constitutional rights are deemed not to be acts of the state and may be subject of injunctive or declaratory relief in federal court." *Berman Enters., Inc. v. Jorling,* 3 F.3d at 606 (citations omitted); *see also Rourke v. New York State Dep't of Corr. Servs.,* 915 F.Supp. at 540. While much of the relief sought herein is compensatory and punitive monetary relief, to the extent Plaintiff seeks some form of declaratory relief, such claims against the Defendants in their official capacities could go forward insofar as the Plaintiff seeks prospective relief. However, in light of his release from DOCCS's custody, the Court finds that any request for

prospective injunctive relief is moot and the claims against the remaining Defendants in their official capacities should be **dismissed.** *Khalil v. Laird,* 353 F. App'x 620 (2d Cir.2009) (citing *Muhammad v. City of New York Dep't of Corr.,* 126 F.3d 119, 123 (2d Cir.1997)).

## II. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED,** that Defendants' Motion for Partial Summary Judgment (Dkt. No. 70) be **GRANTED** and all claims against Defendant Russell be **DISMISSED** and claims against the remaining Defendants in their official capacities be **DISMISSED;** and it is further

**RECOMMENDED,** that if the above recommendations are accepted, this case be set down for a final pre-trial conference with the parties to assess whether this matter is trial ready; and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Report–Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.* *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs .,* 892 F.2d 15 (2d Cir.1989)); *see also* 28 U.S.C. § 636(b) (1); FED. R. CIV. P. 72 & 6(a).

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 5437617

## Footnotes

1  Although Plaintiff spells this Defendant's name as "Russel," it is clear from Defendants' submissions that the correct spelling of this individual's name is "Russell" and the Court will refer to her accordingly. Compl. at ¶ 8; Dkt. Nos. 10 & 70–3.

2  Plaintiff alleges that in addition to filing several grievances he submitted sick call requests and sent letters to the Inspector General, all explaining how his Eighth Amendment rights were being violated. Compl. at ¶¶ 5–8.

3  The Second Circuit has yet to address the impact of *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), upon the categories of supervisory liability under *Colon v. Coughlin,* 58 F.3d 865 (2d Cir.1995). *See* *Grullon v. City of NewHaven,* 720 F.3d 133 (2d Cir.2013) (noting that the Court's decision in *Iqbal* "may have heightened the requirements for showing a supervisor's personal involvement," but declining to resolve the issue). Lower courts have struggled with this issue, specifically whether *Iqbal* effectively calls into question certain prongs of the *Colon* five-part test for supervisory liability. *See, e.g.,* *Sash v. United States,* 674 F.Supp.2d 531, 543 (S.D.N.Y.2009). While some courts have taken the position that only the first and third of the five *Colon* categories remain viable and can support a finding of supervisory liability, *see, e.g., Bellamy v. Mount Vernon Hosp.,* 2009 WL1835939, at *6 (S.D.N.Y. June 26, 2009), *aff'd,* 387 F. App'x 55 (2d Cir.2010), others disagree and conclude that whether any of the five categories apply in any particular cases depends upon the particular violations alleged and the supervisor's participatory role, *see, e.g.,* *D'Olimpio v. Crisafi,* 718 F.Supp.2d 340, 347 (S.D.N.Y.2010). Nevertheless, this Court, until instructed to the contrary, continues to apply the entirety of the five-factor *Colon* test.

WESTLAW    © 2021 Thomson Reuters. No claim to original U.S. Government Works.                    5

2013 WL 838284
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

William HALL, Plaintiff,

v.

COUNTY OF SARATOGA, John Doe, Individually
and in his capacity as an Employee of the County
of Saratoga, New York, Sheriff's Department
and the Saratoga County Sheriff, Lt. Corbet,
Jane Doe, the persons intended being all Civilian
personnel as employees or under Contract as
independent medical personnel, Defendants.

No. 1:10–CV–1120 (NAM/CFH).
|
March 6, 2013.

**Attorneys and Law Firms**

Grasso, Rodriguez & Grasso, Nicholas J. Grasso, Esq., of
Counsel, Schenectady, NY, for Plaintiff.

Bailey Kelleher & Johnson, P.C., Nannette R. Kelleher, Esq.,
of Counsel, Albany, NY, for Defendants.

MEMORANDUM–DECISION and ORDER

NORMAN A. MORDUE, District Judge.

I. INTRODUCTION

**\*1** This action arises under the auspices of 42 U.S.C.
§ 1983. Plaintiff asserts that while he was an inmate at the
Saratoga County Correctional Facility ("SCCF"), defendants
denied him adequate medical care, committed a battery upon
him and are liable in negligence for personal injuries he
sustained while in their custody. Defendants have moved for
summary judgment dismissing the complaint. Plaintiff has not
submitted papers in opposition to this motion.[1]

II. DISCUSSION

A. *Standard of Review*
Summary judgment is appropriate when there is no genuine
issue with regard to any material fact, and the moving party

is entitled to judgment as a matter of law. *See Celotex
Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Stated otherwise,
summary judgment is appropriate "[w]here the record taken
as a whole could not lead a rational trier of fact to find for
the non-moving party [.]" *Matsushita Elec. Indus. Co. v.
Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). When deciding
a summary judgment motion, the Court must "resolve all
ambiguities and draw all factual inferences in favor of the
party opposing the motion." *McPherson v. Coombe,* 174
F.3d 276, 280 (2d Cir.1999).

When, as here, a summary judgment motion is unopposed,
"[t]he fact that there has been no [such] response ... does
not ... [by itself] mean that the motion is to be granted
automatically." *Champion v. Artuz,* 76 F.3d 483, 486
(2d Cir.1996); *see also Vt. Teddy Bear Co. v. 1–800
Beargram Co., Inc.,* 373 F.3d 241, 244 (2d Cir.2004). Instead,
a court must (1) determine what material facts, if any, are
disputed in the record presented on the motion; and (2)
assure itself that, based on those undisputed material facts,
the law indeed warrants judgment for the moving party. *See
Champion,* 76 F.3d at 486. The motion may fail if the
movant's submission fails to establish that no material issue
of fact remains for trial, *Amaker v. Foley,* 274 F.3d 677, 681
(2d Cir.2001), or if the "undisputed facts fail to show that the
moving party is entitled to judgment as a matter of law," *Vt.
Teddy Bear,* 373 F .3d at 244 (internal citation and quotation
marks omitted).

B. *Exhaustion of Administrative Remedies*
The Prisoner Litigation Reform Act of 1995 ("PLRA"),
mandates exhaustion by prisoners of all administrative
remedies before bringing an action regarding prison
conditions of confinement. *See* 42 U.S.C. § 1997e(a).
Specifically, the PLRA provides that "[n]o action shall be
brought with respect to prison conditions under section
1983 of this title, or any other Federal law, by a prisoner
confined in any jail, prison, or other correctional facility until
such administrative remedies as are available are exhausted."
*Id.* The Supreme Court has held that the PLRA's "exhaustion
requirement applies to all inmate suits about prison life,
whether they involve general circumstances or particular
episodes, and whether they allege excessive force or some
other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002).

**\*2** " 'Conditions of confinement' is not a term of art; it has a plain meaning." *Jenkins v. Haubert,* 179 F.3d 19, 28 (2d Cir.1999). "It quite simply encompasses all conditions under which a prisoner is confined for his term of imprisonment." *Id.* These include terms of disciplinary or administrative segregation such as keeplock or solitary confinement, as well as more general conditions affecting a prisoner's quality of life such as ... the deprivation of exercise, medical care, adequate food and shelter, and other conditions that, if improperly imposed, could violate the Constitution. *Id.* (citing *Figueroa v. Rivera,* 147 F.3d 77, 82 (1st Cir.1998); *Channer v. Mitchell,* 43 F.3d 786, 788 (2d Cir.1994)) (*per curiam* ). In short, any deprivation that does not affect the fact or duration of a prisoner's overall confinement is necessarily a condition of that confinement.

In *Hemphill v. New York,* 380 F.3d 680 (2d Cir.2004), the Second Circuit "read together," *Macias v. Zenk,* 495 F.3d 37, 41 (2d Cir.2007), a number of decisions and consolidated cases and formulated a three-part test for examining the scope of the PLRA's exhaustion requirement:

> Depending on the inmate's explanation for the alleged failure to exhaust, the court must ask whether administrative remedies were in fact available to the prisoner. The court should also inquire as to whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense. If the court finds that administrative remedies were available to the plaintiff, and that the defendants are not estopped and have not forfeited their non-exhaustion defense, but that the plaintiff nevertheless did not exhaust available remedies, the court should consider whether special circumstances have been plausibly

alleged that justify the prisoner's failure to comply with administrative procedural requirements.

*Hemphill,* 380 F.3d at 686.

New York State law provides a three tier inmate grievance procedure applicable to plaintiff's claims. *See,* N.Y. Correct. Law § 139; N.Y. Comp.Codes R. & Regs. tit. 7, § 701.1 *et seq.* (2003). Courts in the this Circuit have long recognized this procedure as an "available" remedy for purposes of the PLRA. *See Mingues v. Nelson,* No. 96–CV–5396, 2004 WL 324898, at \*4 (S .D.N.Y. Feb. 20, 2004) (citing *Mojias v. Johnson,* 351 F.3d 606 (2d Cir.2003) and *Snider v. Melindez,* 199 F.3d 108, 112–13 (2d Cir.1999)). Richard Emery, the Chief Administrator with the rank of Colonel for SCCF submitted an affidavit wherein he averred that the facility maintained an inmate grievance program established by the New York State Department of Corrections and Community Supervision ("DOCCS") pursuant to the above-referenced law and regulations. Further, Emery stated that the grievance program is enumerated in the policies and procedures of SCCF and is distributed to each inmate in an Inmate Handbook. Review of the complaint and the entire record for that matter reveals no suggestion that plaintiff filed or attempted to pursue a grievance of his claims administratively at SCCF prior to filing the instant action.

**\*3** Regarding part two of the *Hemphill* analysis, plaintiff does not allege in the complaint or anywhere in the record that defendants inhibited his ability to utilize the grievance program which was indisputably available to him at SCCF. Finally, review of the record does not reveal any "special circumstances" which would justify plaintiff's failure to comply with administrative requirements prior to filing the present federal claim. *See* *Hemphill,* 380 F.3d at 686. Thus, the Court finds there is no genuine issue of material fact concerning plaintiff's failure to have exhausted administrative remedies prior to commencing his § 1983 claims against defendants. Based thereupon, these federal claims are subject to dismissal on procedural grounds.

C. *Plaintiff's Claims Under* 42 U.S.C. § 1983

1. Inadequate Medical Treatment

Even if the Court ignored plaintiff's procedural failings, his § 1983 claims fare no better on their merits. According to the complaint and his response to interrogatories filed in this matter, plaintiff claims that defendants violated the Eighth Amendment when failed to provide adequate medical care to him while he was an inmate at SCCF by: 1) failing to comply with care and treatment consistent with the diagnosis of renal failure; 2) failing to address the plugging of an A.V. fistula in his left arm in a timely fashion despite his complaints about it, putting a shunt in his neck; 3) not allowing him to shower or bathe for eight days which led to a septic infection; and 4) failing to follow a special diet of low calcium, phosphorous and potassium which was recommended by plaintiff's physician, Dr. Daoui and the Rubin Dialysis Center.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments" on those convicted of crimes, which includes punishments that "involve the unnecessary and wanton infliction of pain." Gregg v. Georgia, 428 U.S. 153, 173 (1976) (citations omitted). The Eighth Amendment also applies to prison officials when they provide medical care to inmates. See Estelle v. Gamble, 429 U.S. 97, 103 (1976). To establish an unconstitutional denial of medical care, a prisoner must prove "deliberate indifference to [his] serious medical needs." Id. at 104.

The deliberate indifference standard embodies both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Wilson v. Seiter, 501 U.S. 294, 298 (1991). See Nance v. Kelly, 912 F.2d 605, 607 (2d Cir.1990) (Pratt, J., dissenting) (standard contemplates "a condition of urgency, one that may produce death, degeneration, or extreme pain") (citations omitted). Second, the charged official must act with a sufficiently culpable state of mind. See Wilson, 501 U.S. at 298. Deliberate indifference requires more than negligence, but less than conduct undertaken for the very purpose of causing harm. See Farmer v. Brennan, 511 U.S. 825, 835 (1994). More specifically, a prison official does not act in a deliberately indifferent manner unless that official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

**\*4** "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle v. Gamble, 429 U.S. 97, 106 (1976). Nevertheless, a pattern of omissions may permit the inference of deliberate unconcern for the prisoner, and gross negligence by prison employees creates a strong presumption of deliberate indifference. Doe v. New York City Department of Soc. Servs., 649 F.2d 134, 143–44, 145 (2d Cir.1981), cert. denied, 464 U.S. 864 (1983); Langley v. Coughlin, 715 F.Supp. 522, 537 (S.D.N.Y.1989). Furthermore, a health provider cannot claim to have exercised his or her "best judgment" where that judgment is based on a cursory examination or inadequate diagnostic procedures. Williams v. United States, 747 F.Supp. 967, 1009 (S .D.N.Y.1990). Finally, prison officials cannot defend practices that fall below the norm of what is generally accepted in the medical community merely on the ground that such practices are common throughout the correctional system. See Todaro v. Ward, 565 F.2d 48, 53 (2d Cir.1977).

Stephen Strader, the Medical Director at SCCF, who oversees all medical personnel at SCCF and participates in the care and treatment of all inmates at the facility, submitted an affidavit detailing the medical care provided to plaintiff during the relevant time period. According to Dr. Strader, plaintiff entered the facility on December 1, 2008, on a driving while intoxicated charge. Thus, he was automatically subject to monitoring for ETOH withdrawal. An Inmate Physical Assessment Form completed at the time of his arrival indicated that plaintiff was being treated for Stage IV Renal Disease. Dr. Strader explained that chronic renal disease is the gradual loss of kidney function which can occur over months or years. According to Dr. Strader, Stage IV is considered the most severe stage of the disease; it is usually irreversible and will often progress to complete kidney failure. At that point, Dr. Strader explained, the kidneys can no longer adequately filter waste and excess fluids from the body and dangerous levels of fluids, electrolytes and wastes can accumulate. Dr. Strader stated that the only option available to patients at this stage of kidney disease is dialysis or renal transplant.

Dr. Strader noted that when an inmate enters SCCF with a chronic disease such as plaintiff's, the facility obtains the inmate's medical records when possible and facilitates continuing treatment by local specialists in accordance with security policies. According to Dr. Strader, inmates are transferred to all outside medical provider appointments by the Saratoga County Sheriff's Department road patrol unless emergency ambulatory services are required. Dr. Strader

averred that review of plaintiff's medical records confirmed the diagnosis of Stage IV chronic kideny disease or renal failure and a medical evaluation by plaintiff's nephrologist prior to his incarceration evidenced worsening renal failure. Dr. Strader noted that when plaintiff entered SCCF, he had an A.V. fistula already in place. Dr. Strader explained that an A.V. fistula is essentially an artificial vein that connects directly to an artery. Dr. Strader stated that A.V. fistulas are commonly created surgically to be used for dialysis treatments. According to Dr. Strader, plaintiff's A.V. fistula was inserted in 2007 due to his progressing kidney disease and anticipation that dialysis would be necessary in the future.

**\*5** Within the first few days of plaintiff's incarceration, SCCF contacted plaintiff's nephrologist, Dr. Daoui to determine when he would have to be seen and what treatment was necessary. According to Dr. Strader, Dr. Daoui advised that plaintiff would need monthly blood work to monitor his kidney function and electrolyte levels. Dr. Daoui asked that the results of the bloodwork be faxed to his office for review. Plaintiff saw Dr. Daoui for evaluation on January 9, 2009. Dr. Strader averred that in the course of his duties as the facility physician, he reviewed Dr. Daoui's notes and recommendations following each visit. Dr. Strader also stated that while it was his practice to defer to specialist recommendations, he maintained final authority over the medical treatment provided to inmates. Dr. Strader stated that his review of the notes from plaintiff's follow-up evaluation with Dr. Daoui on March 9, 2009, revealed worsening kidney function in the months prior to plaintiff's incarceration and Dr. Daoui's observation that plaintiff would likely soon need dialysis.

On May 11, 2009, Dr. Strader averred that Dr. Daoui recommended that plaintiff adhere to a low potassium diet. Dr. Strader understood this recommendation to require that plaintiff avoid eating excess potassium. According to Dr. Strader, limiting one's potassium intake is necessary in advanced stages of kidney disease. This is because when one's kidney's are failing, it leads to the inability to maintain a normal potassium level as the kidneys begin to lose the ability to remove potassium from the blood. Dr. Strader stated that it was likely that the base diet provided to plaintiff at SCCF already contained lower levels of potassium than he would be ingesting outside the facility. Notably, Dr. Strader opined that "when a renal patient is placed on a low potassium diet, it is because his kidneys have already failed thereby leading to the inability to maintain normal potassium levels. A high potassium diet will not cause kidney failure." Nevertheless,

as Dr. Daoui did not prescribe a specific level of potassium intake for plaintiff, SCCF medical staff advised the kitchen staff to restrict plaintiff's meals so they did not include overly high levels of potassium. Dr. Strader stated that SCCF also continued monitoring plaintiff's metabolic blood panel and electrolytes to gauge whether his kidney functions were worsening and unable to maintain normal potassium levels.

Dr. Strader also stated that in his May 9, 2009, office note, Dr. Daoui recommended that plaintiff start hemodialysis. Indeed, the Court notes that in the May 9, 2009, note, Dr. Dauoi changed plaintiff's diagnosis to " 'CKD' [or chronic kidney disease] stage 5." However, on May 17, 2009, days before plaintiff's dialysis was to start, he complained that the fistula in his left arm had stopped working. Dr. Strader averred that while he was not a nephrologist, he had a medical understanding of how fistulas are used, complications that can arise with a fistula, and what procedures may be needed to correct those complications. According to Dr. Strader, one complication that can arise is that a fistula can clot or clog which prevents fluid from passing through it. Dr. Strader's review of plaintiff's medical records revealed that a clot or clog in plaintiff's A.V. fistula had occurred at least one time before he entered SCCF. Dr. Strader stated that a clogged or clotted fistula is not a life threatening condition and it is unlikely to cause any pain to a patient. When it occurs, Dr. Strader stated that a nephologist will examine the fistula to determine if a surgical revision will need to be performed. If the patient is on dialysis, Dr. Strader stated that a temporary catheter is placed to allow continuing dialysis pending repair of the fistula.

**\*6** When plaintiff complained that his fistula had stopped working, a nurse at SCCF contacted Dr. Daoui to see how he would like to proceed as plaintiff was scheduled to begin dialysis. Dr. Daoui recommended that a temporary catheter be placed to allow dialysis to proceed while the fistula was repaired. Dr. Strader said that he then scheduled a fistulogram, a procedure used to determine whether any fluid can pass through a fistula, for the beginning of June. On May 21, 2009, Dr. Strader stated that plaintiff underwent a procedure at Saratoga Hospital for the insertion of a temporary right internal jugular tunnel hemodialysis catheter. Following this procedure, Dr. Strader averred that Dr. Dempsey at Saratoga Hospital contacted SCCF and expressed concern regarding plaintiff being returned to the general inmate population with the catheter in place. Dr. Dempsey recommended that plaintiff be taken out of the general population to reduce the risk that the catheter would be pulled out which could cause plaintiff

to bleed to death before medical help could arrive. Though plaintiff strenuously objected to the restriction, Dr. Strader stated that plaintiff was separated from the general population and placed on medical watch unit.

Dr. Strader stated that following the catheter insertion on May 21, 2009, showering restrictions were placed on plaintiff because it was deemed medically necessary to keep the catheter site dry. On May 28, 2009, SCCF medical staff were advised by plaintiff's specialists at the Rubin Dialysis Center that he could resume showering and the restriction was lifted. Plaintiff began his dialysis treatments on May 29, 2009, and received a total of 17 dialysis treatments between then and the time of his release from the facility in July 2009.

Dr. Strader opined to a reasonable degree of medical certainty that the treatment plaintiff received at SCCF did not hasten his kidney disease and did not cause his fistula to become clotted. Rather, according to Dr. Strader, the care and treatment provided to plaintiff at SCCF was in compliance with all accepted standards of care and in compliance with the recommendations of plaintiff's own specialists. Overall, Dr. Strader said that plaintiff's blood pressure and weight were monitored weekly and at times daily during his six month incarceration and blood work was performed once to twice monthly to monitor his kidney function and electrolyte levels. Plaintiff's medical records confirm Dr. Strader's statement that plaintiff was evaluated three times by his nephrologist and was in daily contact with the medical staff at SCCF. Dr. Strader averred:

> His medications were constantly monitored, he was placed on a restricted diet [ ], and relocated to a medical unit to ensure his safety. [Plaintiff's] records evidenced that his kidney was [sic] worsening with each visit to his nephrologist before he entered SCCF. [Plaintiff] received the same care for his renal disease while at SCCF that he would have received had he not been incarcerated. I can affirm to a reasonable medical certainty that it was not [plaintiff's] incarceration which resulted in his requiring dialysis, but the natural progression of his disease.

a. Treatment of Plaintiff's Fistula

**\*7** Turning to plaintiff's claims of inadequate medical care, plaintiff alleges that defendants "fail[ed] to address the plugging of the A.V. fistula in his left arm in a timely fashion." Plaintiff testified at a 50–h hearing and at his deposition in connection with this matter that defendants waited five to six weeks to treat the clogged fistula. Notably, plaintiff did not allege or testify that the clogged fistula caused him extreme pain and there is no medical evidence in the record which indicate that the failure to treat plaintiff's condition immediately as he requested would or could have resulted in "death, degeneration or extreme pain." Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir.1994) (quoting Nance, 912 F.2d at 607). Based thereupon, defendants are correct when they argue that there is no evidence to support plaintiff's claim that failure to act immediately to remedy his clogged fistula, in and of itself, was a deprivation "sufficiently serious" to warrant review under the Eighth Amendment. Wilson v. Seiter, 501 U.S. at 298.

Nevertheless, even if a clogged fistula is a serious medical condition under the standard described in Nance, supra, the record here reveals that defendants' treatment of the problem was reasonable and in accordance with the directives of Dr. Daoui. Plaintiff alleges that SCCF's actions in evaluating the clogged fistula took too long and caused him to have a catheter inserted. However, it was Dr. Daoui who recommended insertion of the catheter to ensure plaintiff's dialysis treatments could start as scheduled. Plaintiff believes that he should have had the fistula repaired immediately instead of having to undergo placement of the catheter. However, it is well settled that "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim." Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F.Supp.2d 303, 312 (S.D.N.Y.2001). "These issues implicate medical judgments and, at worst, negligence amounting to medical malpractice, but not the Eighth Amendment." Id. (citing Estelle v. Gamble, 429 U.S. at 107

b. Inadequate Diet

The intentional failure to provide an inmate with a medically prescribed diet for a prolonged period of time can state

a viable Eighth Amendment claim. *Abdush—Shahid v. Coughlin,* 933 F.Supp. 168, 180 (N.D.N.Y.1996) (citing *Robles v. Coughlin,* 725 F.2d 12, 15 (2d Cir.1983) (Eighth Amendment's prohibition against cruel and unusual punishment requires serving inmates nutritionally adequate food prepared and served under conditions that do not present imminent danger to health and well-being of inmates who consume it)). However, the "objective component" of an Eighth Amendment claim requires a plaintiff to show evidence of some adverse health impact caused by the discontinuance of or failure to provide the prescribed diet. *Davidson v. Desai,* 817 F.Supp.2d 166, 190 (W.D.N.Y.2011).

**\*8** Plaintiff asserts that defendants failed to follow the special diet of low calcium, phosphorous and potassium recommended by his doctor and the specialists at the Rubin Dialysis Center. However, there is no evidence in the record that Dr. Daoui ever ordered that plaintiff's intake of calcium and phosphorous be limited. Indeed, the only restriction Dr. Daoui placed on plaintiff's diet was "low potassium." The record shows that once, Dr. Daoui placed this restriction on plaintiff's diet, the facility kitchen was made aware of the restriction and plaintiff's diet was altered. Although plaintiff asserts that his diet was not properly altered, defendants are correct when they contend that plaintiff's blood levels were continuously monitored and Dr. Daoui made no changes based on his subsequent review of plaintiff's laboratory results. Thus, there is no evidence that plaintiff received an inadequate diet while incarcerated at SCCF. Moreover, there is no objective evidence that the alleged inadequacy of his diet caused any worsening of his health or renal condition. As referenced above, Dr. Strader opined that high levels of potassium do not cause kidney failure. Rather, Dr. Strader noted that plaintiff's inability to maintain normal potassium levels was due to the natural progression of his kidney disease.

### c. Showering Restriction

Plaintiff asserts that he was not allowed to shower for several days after placement of the catheter for dialysis and that this caused a "septic infection." Regardless of whether restriction of shower privileges for the time period in question rises to level of denial of a serious medical need, there is no evidence in the record that plaintiff ever developed any type of septic infection while incarcerated at SCCF. Indeed, while plaintiff testified at his 50–H hearing that he got a septic infection at the site of the catheter placement and was "in the hospital for four days," the Court finds no record of such a hospital visit or infection his medical records. Moreover, the showering

restriction was implemented at the instruction of plaintiff's specialists at the Rubin Dialysis Center who ordered that the catheter site be kept dry. On the day that medical personnel at SCCF were advised by the Rubin Dialysis Center that plaintiff could resume showering, the restriction was lifted.

### d. Overall Treatment of Plaintiff's Renal Disease

Plaintiff contends that the care he received at SCCF resulted in his requiring dialysis and was not in his "best interest." However, as referenced above, plaintiff entered the facility with Stage IV renal disease and his medical records demonstrate that his condition was worsening in the months just prior to his incarceration. Plaintiff arrived at SCCF with an A.V. fistula because his physician anticipated that he would soon require dialysis. Within three months of entering the facility, Dr. Daoui noted that plaintiff's bloodwork warranted a change in his diet and the initiation of hemodialysis. The record fully supports defendants' contention that it was the natural progression of plaintiff's disease, not the care or treatment he received at SCCF, which led to his requiring dialysis. There is nothing in the record which suggests that plaintiff's care and treatment at SCCF was not in accordance with generally accepted medical principles and the advice and recommendation of his own specialists.

**\*9** Consequently, there are no material questions of fact concerning plaintiff's claims of inadequate medical treatment under the Eighth Amendment and these claims must be dismissed.

### 2. Excessive Force

Defendants contend that while plaintiff's complaint did allege a claim for deliberate indifference to his medical needs, he did not assert a claim under 42 U.S.C. § 1983 for excessive force. Defendants argue that even if his complaint was deemed to include a claim of excessive force under § 1983, it would still fail. "The test of whether use of force in prison constitutes excessive force contrary to the Eighth Amendment is whether the force was used in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Scott v.Coughlin,* 344 F.3d 282, 291 (2d Cir.2003) (citing *Hudson v. McMillian,* 503 U.S. 1, 7 (1992)). "The absence of serious injury is ... relevant to the Eighth Amendment inquiry, but does not end it." *Id.* (quoting *Hudson,* 503 U.S. at 7.)

In this case, plaintiff's complaint alleges simply that defendant Corbett struck him in the face with a dish, milk and other objects. The complaint does not assert that plaintiff suffered any injury as a result of this incident. In his response to interrogatories, plaintiff asserts further that on May 11, 2009, "Lt. Corbett committed an assault on [him] by intentionally smashing a plate of food against the edge of a table and hitting [plaintiff] in the face with it and then throwing a glass of milk in his face causing [plaintiff] reasonable apprehension of the immediate harmful and offensive contact, which was the food and milk hitting [his] face." However, in the Court's record, plaintiff's interrogatory responses are not complete and it is unclear whether they are signed or sworn to by plaintiff. At his 50–H hearing, plaintiff testified that he was "not real happy that Lieutenant Corbett threw that plate of food in my face and a glass of milk." Following this answer, there is only one additional page of testimony provided by defendant in which plaintiff testified further concerning the incident:

> I wasn't real happy about the shunt being put in my neck, and I told them that they lied to me and I wasn't pleased with it, and I told him, and I said, Give me a phone. I'll call my lawyer and I'll have this thing out of my neck tomorrow, and he smashed a plate of food into my face and threw a glass of milk at me and said, Do you know how much money they've spent on you upstairs over that? And I said, I don't care.

When plaintiff was asked what he meant when he said that Corbett "smashed a plate of food into [his] face," he said "The plate was sitting on the table, and we were arguing back and forth across the table, and he smashed it on the edge and it flipped up in my face."

In an affidavit submitted in connection with defendants' motion, Lt. Corbett averred:

> [Plaintiff] had recently returned from Saratoga Hospital, where he had a catheter inserted in his neck.... [Corbett] was advised by the on-duty nurse, R.N. Bilka, that [plaintiff]

became angry upon learning that he was to be separated from general population.... As [plaintiff] was extremely agitated about this move, [Corbett] was asked to speak with him to attempt to calm him down.

**\*10** Corbett further stated that when he entered plaintiff's cell, he was "quite angry." "[Plaintiff] claimed that the hospital had lied to him by telling him that he could remain in general population. [Plaintiff]'s anger continued to escalate and he began yelling and threatened to remove the catheter himself."

> There was a metal table in the room that held [plaintiff]'s plate of food with a glass of milk. I sat across the table from [plaintiff] and reminded him that he was being separated from general population for his own safety. [Plaintiff's] temper was further escalated and I went to leave the holding cell to afford him the opportunity to calm down. When I rose from the table, my hand accidently knocked into [plaintiff]'s glass of milk, spilling milk on both [plaintiff] and me. I had [plaintiff] moved to another holding cell so that the cell could be cleaned while he had a chance to calm down.

> ...

> I understand that [plaintiff] has now alleged that I assaulted him by throwing the glass of milk at him during this incident. At no point, did I intentionally cause milk to spill on [plaintiff.] Had I acted in an aggressive manner towards [plaintiff] during that incident and physically assaulted him, the matter would have been reviewed by SCCF administration. Further, at no point did [plaintiff] complain of our interaction during his incarceration....

The force plaintiff describes herein not sufficiently serious or harmful to reach constitutional dimensions. *See* Romano *v. Howarth,* 998 F.2d 101, 105 (2d Cir.1993). Plaintiff does not maintain that he experienced any pain or injury as a result of the milk or food being allegedly thrown in his face, even assuming the incident occurred as he states. Moreover, plaintiff does not allege facts that show that Lt. Corbett used force "maliciously and sadistically to cause harm," rather than "in a good-faith effort to maintain or restore discipline" or calm him down and prevent him from removing his

catheter." *Hudson,* 503 U.S. at 7. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973). Indeed, not even "every **malevolent** touch by a prison guard gives rise to a federal cause of action." *Hudson,* 503 U.S. at 9. (emphasis added). Plaintiff has therefore not stated facts that meet either the objective or subjective component of the test used to determine whether Lt. Corbett's alleged excessive physical force constituted cruel and unusual punishment.

### D. Qualified Immunity

Even if the above were not true, Lt. Corbett and the other individually named defendant are also protected against plaintiff's various § 1983 claims by qualified immunity. As noted recently in the Supreme Court case of *Pearson v. Callahan,* 555 U.S.223, 129 S.Ct. 808, 815 (2009):

> The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Groh v. Ramirez,* 540 U.S. 551, 567 (2004) (KENNEDY, J., dissenting) (citing *Butz v. Economou,* 438 U.S. 478, 507 (1978) (noting that qualified immunity covers "mere mistakes in judgment, whether the mistake is one of fact or one of law")).

**\*11** For example, excessive force claims are properly analyzed under the Fourth Amendment's "objective reasonableness standard," because of the uncertainty and rapidity inherent in police work. *Graham v. O'Connor,* 490 U.S. 386, 396 (1989). Indeed, *Graham* sets forth a list of factors relevant to the merits of the constitutional excessive force claim which include analysis of the crime at issue, the threat posed by a suspect and any attempt by the suspect

to evade or resist arrest. *See id.* If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed. *See id.* "[T]he concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct." *Saucier v. Katz,* 533 U.S. 194, 205 (2001), overruled on other grounds, *Pearson, supra:*

> It is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances. If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense.

*Id.* Indeed:

> [O]fficers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of probable cause or exigent circumstances, for example, and in those situations courts will not hold that they have violated the Constitution. Yet, even if a court were to hold that the officer violated the Fourth Amendment by conducting an unreasonable, warrantless search, *Anderson [v. Creighton,* 483 U.S. 635 (1987) ] still operates to grant officers immunity for reasonable mistakes as to the legality of their actions.

*Id.* at 206 (emphasis added).

In the circumstances presented to defendant Corbett who was asked to attempt to calm plaintiff who was threatening to pull out his catheter which medical personnel said could cause him to bleed to death, he was justified in using a degree of force to prevent plaintiff from harming himself. However, Lt. Corbett averred that no such force was necessary and that the spilled milk was simply an accident. While plaintiff's 50–H testimony indicated that defendant Corbett intentionally spilled milk and food on him, the Court's conclusion that no cause of action lies here is confirmed by the "uncontested fact that the force was not so excessive that [plaintiff] suffered hurt or injury." *See* 🚩 *Saucier, supra,* 533 U.S. at 208.

At the very least, defendants Buttofocco and Smith have established that reasonably competent police officers could disagree on the question of excessive force in this case. Based thereupon, the motion by defendants to dismiss plaintiff's claim of excessive force on the alternative ground of qualified immunity must be granted.

### E. State Law Claims

#### 1. Battery

**\*12** Defendants assert that plaintiff's cause of action for battery is barred by the statute of limitations. The normal statute of limitations for battery is one year. *See* 📘 N.Y. C.P.L.R. § 215(3). However, in this case, the defendant is a municipal subdivision and the one-year period is extended per General Municipal Law by 90 days. *See* N.Y. Gen. Municipal Law 50–i. Thus, plaintiff was required to file his complaint within one year and ninety days from the date the alleged battery occurred. Here, plaintiff testified at his 50–H hearing that the battery occurred on the "day that [he] got the shunt put in [his] neck," which his medical records establish was May 21, 2009. Plaintiff testified that the incident with Lt. Corbett happened "as soon as he returned from the hospital," for the outpatient procedure. Plaintiff filed his Summons and Complaint in New York Supreme Court for Saratoga County on August 26, 2010. Accordingly, plaintiff's complaint was filed one year and 96 days after the alleged battery occurred. As such, the Court agrees his action for battery is time-barred as a matter of law and must be dismissed.

#### 2. Negligence

Plaintiff claims that defendants were negligent in failing to address his medical needs at SCCF in three ways: first, that they ignored refused to follow the dietary restrictions set

by his nephrologist, Dr. Daoui; second, that they failed to timely address his A.V. fistula; and third, that they refused to allow him to shower following his catheter surgery which resulted in a septic infection. Fatal to plaintiff's claims is the absence of any expert medical evidence submitted in support of thereof. "Whether the claim is grounded in negligence or medical malpractice, '[w]here medical issues are not within the ordinary experience and knowledge of lay persons, expert medical testimony is a required element of a *prima facie case'* " *Myers v. State of New York,* 46 A.D.3d 1030, 1031 (3d Dep't 2007) (citing *Tatta v. State of New York,* 19 A.D.3d 817, 818 (3d Dep't 2005), *lv. denied* 5 N.Y.3d 712 (2005) quoting *Wells v. State of New York,* 228 A.D.2d 581, 582 (2d Dep't 1996), *lv denied* 88 N.Y.2d 814 (1996); *see Trottie v. State of New York,* 39 A.D.3d 1094, 1095 (3d Dep't 2007)). In *Myers,* the claimant inmate contended that medical personnel at the Sullivan Correctional Facility erred in the treatment of his knee injury by delaying necessary surgery. 46 A.D.3d at 1030. Specifically, the claimant alleged that he was required to undergo physical therapy, which he contended worsened his condition, instead of knee surgery, despite the medical personnel's knowledge that he had a foreign object lodged in his knee. *See id.* Following a trial, at which claimant was his only witness, the Court of Claims, in a written decision, dismissed the claim. *See id.* at 1030–31.

Plaintiff's claims of medical negligence are likewise subject to dismissal. Setting aside the proof offered by SCCF that its treatment of plaintiff was entirely reasonable and within the standards of care established by his own specialists, plaintiff has offered no expert medical evidence demonstrating that SCCF deviated from accepted standards of medical care and treatment in this case. Based thereupon, his claims of negligence or malpractice must be dismissed.

### III. CONCLUSION
**\*13** Based on the foregoing, it is therefore

ORDERED that defendants' motion for summary judgment (Dkt.# 24) is hereby GRANTED and it is further

ORDERED that the complaint is dismissed in its entirety.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 838284

## Footnotes

1    The Court's Docket indicates that defense counsel initially served plaintiff's counsel, Mr. Grasso, with the present motion papers via the Court's mandated electronic filing system ("CM/ECF") system, unaware that he is exempt from use of the ECF system as he has been in practice for over fifty years. Mr. Grasso contacted the Court on September 12, 2012, requesting an extension due to his exemption and the fact that he had just received notice that a dispositive motion had been filed. Though defendants opposed his request, the Court granted Mr. Grasso's request for a thirty day extension to prepare responsive papers. Mr. Grasso did not file his response papers as ordered by October 12, 2012. On October 19, 2012, this Court received additional correspondence from defense counsel requesting that no further extensions be granted to Mr. Grasso and that the pending motion for summary judgment be granted in its entirety. Mr. Grasso did not respond to this correspondence. The Court granted the former request and denied the latter pending review of the motion on its merits. The Court has had no further communication with Mr. Grasso.

**End of Document**                                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:19-cv-01314-BKS-TWD   Document 44   Filed 04/22/21   Page 43 of 93

Crichlow v. Fischer, Not Reported in Fed. Supp. (2017)

KeyCite Yellow Flag - Negative Treatment

Clarified on Denial of Reconsideration by   Crichlow v. Fischer,   W.D.N.Y.,
March 26, 2018

2017 WL 920753
Only the Westlaw citation is currently available.
United States District Court, W.D. New York.

Kevin Damion CRICHLOW, Plaintiff,

v.

Brian FISCHER et al., Defendants.

6:15-CV-06252 EAW
|
Signed March 7, 2017

**Attorneys and Law Firms**

Kevin Damion Crichlow, Romulus, NY, pro se.

Hillel David Deutsch, NYS Attorney General's Office
Department of Law, Rochester, NY, for Defendants.

**DECISION AND ORDER**

ELIZABETH A. WOLFORD, United States District Judge

**INTRODUCTION**

*1 Plaintiff Kevin Damion Crichlow ("Plaintiff") filed this
action pursuant to   42 U.S.C. § 1983 in the Southern
District of New York on October 16, 2012. (Dkt. 2). Plaintiff
filed an amended complaint seeking relief against 136
Defendants on June 17, 2013. (Dkt. 12). The action was
transferred to this Court on April 28, 2015. (Dkt. 168). The
action was then severed by this Court on February 10, 2017.
(Dkt. 223). Following severance, 35 Defendants (together
"Defendants") remain. (See id. at 5-6).

Presently before the Court are: Defendants' motion for
summary judgment (Dkt. 177); Plaintiff's motion for
discovery (Dkt. 182); Plaintiff's motion to appoint counsel
(Dkt. 182); Plaintiff's motion for a stay (Dkt. 182); Plaintiff's
motion for a medical exam (Dkt. 187); Plaintiff's motion for
reconsideration (Dkt. 192); Plaintiff's motion to amend (Dkt.
192); Plaintiff's motion for a hearing (Dkt. 192); Defendants'

motion for sanctions (Dkt. 195); and Plaintiff's motion for
sanctions (Dkt. 198).

For the reasons stated below, Defendants' motion for
summary judgment is granted in part and denied in part;
Plaintiff's motion for discovery is denied without prejudice;
Plaintiff's motion to appoint counsel is denied without
prejudice; Plaintiff's motion for a stay is denied without
prejudice; Plaintiff's motion for a medical exam is denied;
Plaintiff's motion for reconsideration is denied; Plaintiff's
motion to amend is denied as moot; Plaintiff's motion for a
hearing is denied; Defendants' motion for sanctions is denied
without prejudice; and Plaintiff's motion for sanctions is
denied.

**I. Plaintiff's Allegations**

Plaintiff's amended complaint spans 142 pages. (See Dkt.
12). Following severance of the action into three separate
parts, this Court retained Plaintiff's claims in which he asserts
violations of his constitutional rights by Defendants relating
to Plaintiff's incarceration at the Wende Correctional Facility
("Wende") and treatment at Wyoming Community Hospital.
(See Dkt. 223).

Plaintiff alleges actions occurring at Wende beginning on or
about September 27, 2008—the date Plaintiff was transferred
to Wende—through his transfer to Eastern Correctional
Facility on November 16, 2010. (See Dkt. 12 at 14-36; Dkt.
12-1 at 1-12).

Plaintiff alleges inadequate or nonexistent medical care
throughout his incarceration at Wende, in violation of the
Eighth Amendment. Plaintiff argues that he was not provided
mental health treatment as required (Dkt. 12 at 19), and that
he was "unreasonably exposed to infectious disease" (id. at
25, 36; Dkt. 188 at 35-36, 38-39). Plaintiff alleges deficient
dental care from "2008 into 2013 at 3 [New York Department
of Corrections and Community Supervision] prisons." (Dkt.
12 at 36). He contends he was not provided care for "alot of
pain hip, jaw, hand, tooth's also need replacement of four's
lost teeths & restoration of function and 'oral surgery &
periodontics.' " (Id. at 31; see, e.g., Dkt. 12-1 at 1). Plaintiff
further alleges that he was denied dental care at Wende on
June 30, 2008, to fix a "broken jaw." (Dkt. 12 at 36). As
to his medical care, Plaintiff states that Defendant George
Boucher, M.D., was grossly negligent in misdiagnosing an
injury to Plaintiff's hand, which led to Plaintiff's receiving
the "wrong surgery" on January 13, 2010. (Dkt. 12-1 at 2).
Plaintiff complains that he was denied treatment for "injuries

hip, back, shoulder, head" for "about 68 months." (*Id.* at 3). Plaintiff also asserts that he was subjected to a risk of disease due to asbestos in Wende. (Dkt. 12 at 21-24, 31; Dkt. 188 at 35).

**\*2** Plaintiff also charges he was deprived of adequate nutrition and hygiene while incarcerated at Wende. Plaintiff claims that from April to September 2009, Defendants C.O. Bartels and C.O. Kevin Barlow "routinely deprived [Plaintiff] ... meaningful opportunities for yard, food, shower, exercise, adequately nutrition." (Dkt. 12 at 25). He makes similar claims against Defendants C.O. Richard Brooks ("Brooks") (*id.* at 32), and C.O. Alicia Humig ("Humig") (*id.* at 26). Plaintiff complains that he was "taken off" of a mandatory religious diet for months because he was not allowed to go to the mess hall. (*Id.* at 32). Plaintiff also alleges that because he is H.I.V. positive, a nutritious diet is critical to his health, and he was deprived of such a diet. (Dkt. 12-1 at 1, 3). Plaintiff asserts that on November 11, 2009, Humig and Defendant Sergeant Paul Olszewski ("Olszewski") refused to let him out of his cell, and placed him in keeplock for about six weeks. (Dkt. 12 at 32). Plaintiff further alleges that he was refused basic laundry services from 2008 through November 1, 2009. (*Id.* at 27).

Plaintiff complains that Defendant T.M.C. Christopher Zaluski ("Zaluski") and others failed to provide reasonable accommodations for Plaintiff's hearing disability. (Dkt. 12 at 14-16; Dkt. 12-1 at 1). Plaintiff alleges that he was in New York Department of Corrections and Community Supervision ("DOCCS") custody for six months before receiving hearing aids. (Dkt. 12 at 30; Dkt. 12-1 at 1). He also claims that he was denied equal access to opportunities and recreation in Wende because of his hearing disability, and that the failure to accommodate his hearing disability was retaliation for his standing up for himself and other disabled inmates. (Dkt. 12 at 33-35; Dkt. 12-1 at 11-12).

Plaintiff claims he was harassed and verbally abused while at Wende. He alleges numerous instances of sexual harassment by Defendant C.O. Attea, and states that he reported such harassment to others, including the superintendent of Wende. (*Id.* at 17-18, 19, 31). Plaintiff claims that on June 18, 2010, Brooks verbally abused and threatened Plaintiff. (Dkt. 12-1 at 8-9). Plaintiff asserts C.O. Corey Petties verbally abused and threatened Plaintiff on July 12, 2010. (*Id.* at 9-10). Plaintiff alleges that DOCCS has a "common practice to encourage and further its employee's, and officers

discrimination and harassment and assault and [deprivation] of proper nutrition." (Dkt. 12 at 20).

Plaintiff also raises Fourteenth Amendment due process claims. Plaintiff complains of unspecified disciplinary proceedings that led a total of 180 days of disciplinary confinement between 2008 and 2010. (*Id.* at 29). Plaintiff claims his due process rights were violated because of the handling of "over 150" grievances filed through November 16, 2010, by Defendants Director Karen Bellamy ("Bellamy") and Sergeant William Scott ("Scott"). (*Id.* at 27-30). Plaintiff asserts that he was retaliated against for filing grievances and that no investigations were conducted into his claims. (*Id.* at 28). Plaintiff states that he filed over 300 grievances. (Dkt. 209-3 at 8; *see, e.g.,* Dkt. 211 at 1).

He also alleges that on July 4, 2010, C.O. Hojsan destroyed Plaintiff's legal documents in the Wende law library, thereby depriving Plaintiff of an opportunity to be heard by the courts. (Dkt. 12-1 at 10-11). Hojsan also allegedly denied Plaintiff access to the law library. (*Id.* at 11).

Plaintiff complains that a fire broke out in his cell block on April 12, 2010, and that the correctional officers in the area, including Olszewski, failed to respond to calls for help. (*Id.* at 6-7). Plaintiff claims that he was denied "fresh-air" and was thereafter denied medical care. (*Id.* at 7).

Plaintiff further contends that on some unspecified date Zaluski instructed others not to let Plaintiff out of his cell, in retaliation for Plaintiff's filing of grievances against Zaluski. (Dkt. 12 at 30).

Plaintiff complains that Defendant Brian Fischer ("Fischer") —the commissioner of DOCCS during Plaintiff's incarceration at Wende—knew of constitutional violations against Plaintiff and failed to take action. (Dkt. 12-1 at 4-5). Plaintiff states that he personally sent "several letters" detailing inadequate health care and assault. (*Id.* at 4). Plaintiff also contends that Defendants "disregarded conditions posing an excessive risk to [his] health and safety ...," and that prison staff was inadequately trained. (*Id.*).

## II. Defendant's Motion for Summary Judgment

### A. Standard of Review

**\*3** Federal Rule of Civil Procedure 56 provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. *See Scott v. Harris,* 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986)). The standard for granting summary judgment is the same whether the motion is made in lieu of an answer or after discovery has occurred. *See Anderson v. Rochester-Genesee Reg'l Transp. Auth.,* 337 F.3d 201, 206 (2d Cir. 2003).

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*" *Caldarola v. Calabrese,* 298 F.3d 156, 160 (2d Cir. 2002) (emphasis in original) (quoting *Matsushita Elec.,* 475 U.S. at 586-87). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment...." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) (emphasis in original).

"[A] party may file a motion for summary judgment at any time until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b). But, summary judgment is generally not appropriate until after some discovery has occurred. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) (stating that summary judgment is appropriate on the proper showing "after adequate time for discovery"); *see, e.g., Hellstrom v. U.S. Dep't of Veterans Affairs,* 201 F.3d 94, 97 (2d Cir. 2000) ("[S]ummary judgment should only be granted if *after discovery,* the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof." (emphasis original) (internal quotation marks and citations omitted)). "Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Hellstrom,* 201 F.3d at 97; *see also Trebor Sportswear Co. v. The Ltd. Stores, Inc.,* 865 F.2d 506, 511 (2d Cir. 1989) ("The nonmoving party should not be

'railroaded' into his offer of proof in opposition to summary judgment." (citing *Celotex,* 477 U.S. at 326)).

## B. Statute of Limitations

Defendants argue that some of Plaintiff's claims are time-barred by the statute of limitations. (Dkt. 177-5 at 3). "In [§] 1983 actions, the applicable limitations period is found in the 'general or residual state statute of limitations for personal injury actions....' " *Pearl v. City of Long Beach,* 296 F.3d 76, 79 (2d Cir. 2002) (quoting *Owens v. Okure,* 488 U.S. 235, 249-50 (1989)). A § 1983 action filed in New York is subject to a three-year statute of limitations. *Hogan v. Fischer,* 738 F.3d 509, 517 (2d Cir. 2013).

Here, Plaintiff filed this action October 16, 2012. (Dkt. 1). Therefore, any claim arising before October 16, 2009, is barred by the statute of limitations. Plaintiff points to the "continuing violation doctrine" to save his otherwise time-barred claims. (Dkt. 209-3 at 21-22).

> [The continuing violation doctrine] applies to claims composed of a series of separate acts that collectively constitute one unlawful practice. The continuing violation doctrine thus applies not to discrete unlawful acts, even where those discrete acts are part of a serial violation, but to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment. Accordingly, where the continuing violation doctrine applies, the limitations period begins to run when the defendant has engaged in enough activity to make out an actionable claim. A claim will be timely, however, only if the plaintiff alleges some non-time-barred acts contributing to the alleged violation.

**\*4** *Gonzalez v. Hasty,* 802 F.3d 212, 220 (2d Cir. 2015). Although the continuing violation doctrine generally applies to claims "composed of a series of separate acts that

Case 9:19-cv-01314-BKS-TWD   Document 44   Filed 04/22/21   Page 46 of 93

Crichlow v. Fischer, Not Reported in Fed. Supp. (2017)

collectively constitute one unlawful practice," *id.* at 220, a plaintiff "must allege both the existence of an ongoing policy of discrimination and some non-time-barred acts taken in furtherance of that policy." *Fahs Constr. Grp., Inc. v. Gray,* 725 F.3d 289, 292 (2d Cir. 2013) (quoting *Harris v. City of N.Y.,* 186 F.3d 243, 250 (2d Cir. 1999)); *see, e.g., Shomo v. City of N.Y,* 579 F.3d 176, 182 (2d Cir. 2009).

Here, Plaintiff alleges four patterns of conduct which occurred both before and after October 16, 2009: (1) denial of adequate medical and dental treatment; (2) denial of adequate nutrition and hygiene; (3) discrimination and failure to accommodate based on Plaintiff's disability; and (4) denial of due process rights.

The continuing violation doctrine applies to Eighth Amendment claims for deliberate indifference to medical needs. *See Shomo,* 579 F.3d at 182 ("[T]he continuing violation doctrine can apply when a prisoner challenges a series of acts that together comprise an Eighth Amendment claim of deliberate indifference to serious medical needs."). Plaintiff raises a number claims that he was denied adequate medical and dental treatment, which, taken together, could comprise an Eighth Amendment claim for deliberate indifference to serious medical needs. Plaintiff also complains of ongoing deprivations of adequate food and access to showers and laundry. Prison officials' Eighth Amendment obligations require that they "ensure that inmates receive adequate food, shelter, and medical care...." *Farmer v. Brennan,* 511 U.S. 825, 833 (1994).

Defendants argue that Plaintiff failed to allege the existence of a policy of deliberate indifference. (Dkt. 196-2 at 10). The Court disagrees. Plaintiff's amended complaint includes allegations that senior prison officials, including Fischer, knew of ongoing violations related to Plaintiff's inadequate health care but failed to take action. Plaintiff claims he sent letters to Fischer to point out the inadequacies of his health care at Wende. Plaintiff also attaches a reply letter from Bellamy in which Bellamy states that she is responding to Plaintiff's letters on behalf of "governor Cuomo and Commissioner Fischer." (Dkt. 209-4 at 2). Plaintiff also asserts that the practices complained of "are widespread, longstanding, and deeply embedded in the culture of all [DOCCS] agenc[ies], constitut[ing] unwritten [DOCCS] policies & customs." (Dkt. 12-1 at 5).

Similarly, the amended complaint can be read as alleging a continuing violation as to Defendants' indifference to Plaintiff's nutrition and hygiene needs. Plaintiff alleges that he was routinely deprived of meaningful opportunities to shower and exercise, and was not provided adequate nutrition. (Dkt. 12 at 25; *see, e.g., id.* at 26). Plaintiff states that while he was in keeplock, corrections officers were told not to feed him. (*Id.* at 26). He also claims that he was only allowed to shower six times in a nine-month period, and that "his clothing and linen's [sic] were never laundered." (*Id.* at 27).

Plaintiff's allegations are sufficient to establish a plausible claim of "an ongoing policy of deliberate indifference and acts taken in accordance with that policy." *See Taylor v. Goord,* Civil Action. No. 9:09-CV-1036 (FJS/DEP), 2010 WL 3825661, at *7 (N.D.N.Y. Sept. 2, 2010), *report and recommendation adopted by* No. 9:09-CV-1036 (FJS/DEP), 2010 WL 3825656 (N.D.N.Y. Sept. 24, 2010). *Cf. Bussey v. Fischer,* Civil Action No. 9:10-CV-1021 (NAM/DEP), 2011 WL 4862478, at *5 (N.D.N.Y. Aug. 1, 2011) (finding a plaintiff failed to allege an ongoing policy of deliberate indifference sufficient to show a continuing violation where the alleged unwritten policy was inconsistent with written policies and requirements), *report and recommendation adopted by* No. 9:10-CV-1021 (NAM/DEP), 2011 WL 4499324 (N.D.N.Y. Sept. 27, 2011). Thus, particularly at this stage of the proceedings, Plaintiff's pre-October 16, 2009, claims as to inadequate medical and dental treatment, as well as inadequate food and hygiene, survive Defendants' statute of limitations defense.

**\*5** Similarly, Plaintiff alleges ongoing discrimination because of his hearing disability in violation of the Eighth and Fourteenth Amendments, as well as the "Rehabilitation Act" and the Americans with Disabilities Act. [1] (Dkt. 12-1 at 1). Plaintiff alleges a pattern of discriminatory conduct, arguing that DOCCS and individual Defendants at Wende failed to accommodate his hearing disability. The last complained-of act of discrimination at Wende occurred on August 18, 2010, well within the three-year statute of limitations. Plaintiff alleges that prison staff at Wende continuously failed to provide him reasonable accommodations, such as providing working hearing aids. Plaintiff also states that other disabled prisoners were not provided reasonable accommodations. Such *pro se* allegations are sufficient, at this stage, to state the existence of an ongoing policy of disability discrimination against Plaintiff.

Case 9:19-cv-01314-BKS-TWD Document 44 Filed 04/22/21 Page 47 of 93

Crichlow v. Fischer, Not Reported in Fed. Supp. (2017)

Plaintiff also claims due process violations related to the
processing of his grievances and disciplinary hearings. In this
context, the continuing violation doctrine does not apply to
Plaintiff's Fourteenth Amendment due process claims because
"[e]ach decision made without due process is a discrete
violation, and the statute of limitations begins to run from the
date that the plaintiff was denied the full and fair hearing he
was entitled to." *Bunting v. Fischer*, 14-CV-0578-RJA-MJR,
2016 WL 4939389, at *3 (W.D.N.Y. Aug. 4, 2016) (citing
*Gonzalez,* 802 F.3d at 223), *report and recommendation
adopted by* 14-CV-578A, 2016 WL 4804099 (W.D.N.Y.
Sept. 14, 2016). Thus, all of Plaintiff's claimed due process
violations which occurred before October, 16, 2009, are
subject to the statute of limitations and must be dismissed.

In sum, at this stage in the proceedings, Plaintiff's claims
of deliberate indifference to medical care, inadequate
food and hygiene, and the failure to provide reasonable
accommodations for his hearing disability all survive
Defendants' statute of limitations challenge. Plaintiff's due
process claims which are based on the processing of his
grievances and which arose before October 16, 2009, are time
barred and must be dismissed.

### C. Failure to Exhaust Administrative Remedies

Next, Defendants argue that many of Plaintiff's claims
must be dismissed for failure to exhaust administrative
remedies. (Dkt. 177-5 at 4-6.) An inmate's failure to exhaust
administrative remedies is properly considered on a motion
for summary judgment made in lieu of an answer. *See
Crenshaw v. Syed,* 686 F. Supp. 2d 234, 236 (W.D.N.Y. 2010)
(granting a summary judgment motion made in lieu of answer
where inmate failed to exhaust administrative remedies).
Pursuant to 42 U.S.C. § 1997e, "[n]o action shall be
brought with respect to prison conditions under [ § 1983],
or any other Federal law, by a prisoner confined in any jail,
prison, or other correctional facility until such administrative
remedies as are available are exhausted." 42 U.S.C. §
1997e(a).

To satisfy that requirement, prisoners
in New York must ordinarily follow
a three-step [DOCCS] grievance
process. The first step in that
process is the filing of a
grievance with the Inmate Grievance

Resolution Committee. Next, the
inmate may appeal an adverse
decision to the prison superintendent.
Finally, the inmate may appeal
the superintendent's decision to the
Central Office Review Committee
("CORC"). In general, it is only upon
completion of all three levels of review
that a prisoner may seek relief in
federal court under § 1983.

*Crenshaw,* 686 F. Supp. 2d at 236 (citations omitted).
"Exhaustion is mandatory—unexhausted claims may not
be pursued in federal court." *Amador v. Andrews,* 655
F.3d 89, 96 (2d Cir. 2011). "[D]efendants bear the burden
of proof and prisoner plaintiffs need not plead exhaustion
with particularity." *McCoy v. Goord,* 255 F. Supp. 2d
233, 248 (S.D.N.Y. 2003). Pursuant to the Second Circuit's
decision in *Hemphill v. New York,* 380 F.3d 680 (2d Cir.
2004), a failure to exhaust administrative remedies may be
excused where: "(1) the administrative remedies were not
in fact available; [or] (2) prison officials have forfeited,
or are estopped from raising, the affirmative defense of
non-exhaustion; or (3) 'special circumstances justify the
prisoner's failure to comply with administrative procedural
requirements.' " *Dabney v. Pegano,* 604 Fed.Appx. 1, 3
(2d Cir. 2015) (quoting *Hemphill,* 380 F.3d at 686).
However, the third prong of *Hemphill,* relating to "special
circumstances" was abrogated by the Supreme Court's
decision in *Ross v. Blake,* 136 S. Ct. 1850 (2016).
*Williams v. Corr. Officer Priatno,* 829 F.3d 118, 123 (2d
Cir. 2016). The inquiry which used to be under the third prong
of *Hemphill,* is now considered "entirely within the context
of whether administrative remedies were actually available to
the aggrieved inmate." *Id.*

**\*6** Here, Plaintiff claims he filed over 300 grievances,
and seems to suggest that this is sufficient to exhaust his
administrative remedies. (*See* Dkt. 209-3 at 8; *see, e.g.,*
Dkt. 211 at 1). Plaintiff misunderstands the exhaustion
requirement. The filing of a grievance is but the first step
in exhausting administrative remedies. To exhaust DOCCS
administrative remedies, a prisoner must appeal to CORC.
Plaintiff's filing of 300 grievances, even if true, is insufficient
to exhaust his remedies under § 1997e.

Case 9:19-cv-01314-BKS-TWD    Document 44    Filed 04/22/21    Page 48 of 93

Crichlow v. Fischer, Not Reported in Fed. Supp. (2017)

In response to Defendants' assertion that Plaintiff failed to exhaust his administrative remedies for most of his claims, Plaintiff claims that DOCCS lost or destroyed his grievances. (Dkt. 209-3 at 19 (claiming that DOCCS destroyed meritorious grievances); Dkt. 211 at 1 (same)). "Plaintiff's wholly conclusory and unsupported allegations that grievances are tampered with at [Wende] do not create a material issue of fact in this case." *See Mims v. Yehl*, Nos. 13-CV-6405-FPG, 14-CV-6304-FPG, 14-CV-6305-FPG, 2014 WL 4715883, at *4 (W.D.N.Y. Sept. 22, 2014).

However, Defendants' submissions show that Plaintiff has satisfied the exhaustion requirement for some potential claims. Defendants' sworn declaration from Jeffery Hale—the Assistant Director of the DOCCS Inmate Grievance Program—states that Plaintiff exhausted 25 grievances between the beginning of his incarceration in 2008 and the filing of this action in October 2012. (Dkt. 177-3 at 2). Of those 25 exhausted grievances, 23 relate to Plaintiff's incarceration at Wende. (*See id.* at 5-6). Defendants provide only a printout listing the titles and grievance numbers of the 23 exhausted grievances that arose at Wende (*see id.*); they did not submit any paperwork relating to the grievances themselves or the final resolution of any exhausted grievance. (*See* Dkt. 177).

Plaintiff clearly exhausted some potential claims which could be raised in federal court pursuant to § 1997e. However, the Court cannot determine whether the claims Plaintiff raises in this action are those which have been exhausted because neither party submitted sufficient information which would allow the Court to make such a determination. It is possible that none of Plaintiff's exhausted grievances relate to the named Defendants in this action; it is equally possible that all 23 exhausted grievances relate to actions taken by the named Defendants. Since Defendants seek summary judgment on this basis, it is their burden to establish the lack of any issue of material fact on the exhaustion argument. They have failed to meet this burden. Thus, Defendants' motion based upon Plaintiff's alleged failure to exhaust is denied.

## D. Plaintiff's Due Process Claims

Regardless of whether grievances were exhausted or whether the claims were timely asserted, Plaintiff's due process claims relating to disciplinary confinement and grievance processing fail as a matter of law and summary judgment is appropriate.

## 1. SHU Confinement

Plaintiff alleges due process claims related to disciplinary proceedings which led to disciplinary confinement. (Dkt. 12 at 29). "[A] prisoner asserting a § 1983 claim for denial of due process at a disciplinary hearing must first identify a liberty interest protected by the Due Process Clause of which he was deprived, and then show that he was deprived of that interest without due process of law." *Aguirre v. Kendra*, 123 F. Supp. 3d 419, 422 (W.D.N.Y. 2015). "Prison discipline implicates a liberty interest when it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). Where a prisoner alleges that he was confined to the Special Housing Unit ("SHU") as the result of a disciplinary hearing, the court considers how long the confinement lasted, along with "the conditions of the prisoner's segregated confinement relative to the conditions of the general prison population," in determining whether a liberty interest is implicated. *Vasquez v. Coughlin*, 2 F. Supp. 2d 255, 259 (N.D.N.Y. 1998). "Both the conditions and their duration must be considered, since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical." *Sealey v. Giltner*, 197 F.3d 578, 586 (2d Cir. 1999) (internal citation omitted).

**\*7** There is no "bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights." *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004). However, the Second Circuit has held that confinement for fewer than 101 days under "normal" SHU conditions does not amount to an atypical and significant hardship and thus does not implicate a liberty interest under the Due Process Clause. *Ortiz*, 380 F.3d at 654-55; *see also Tafari v. McCarthy*, 714 F. Supp. 2d 317, 375 (N.D.N.Y. 2010) (stating that SHU confinements of up to 90 days "fall within the 'short range' of disciplinary confinement and thus implicate a liberty interest only if 'the conditions were more severe than the normal SHU conditions.' " (quoting *Palmer*, 364 F.3d at 65)).

Here, Defendants argue that none of Plaintiff's disciplinary confinements violated Plaintiff's due process rights. (Dkt.

Crichlow v. Fischer, Not Reported in Fed. Supp. (2017)

Case 9:19-cv-01314-BKS-TWD   Document 44   Filed 04/22/21   Page 49 of 93

177-5 at 6-7). Defendants submitted Plaintiff's prison disciplinary record. (*See* Dkt. 177-4). The records show Plaintiff was subjected to only one non-time-barred SHU confinement at Wende. (*See id.* at 8). That SHU confinement was for 30 days. (*Id.*). Plaintiff does not argue that the conditions of his confinement were in any way abnormal or atypical. Because Plaintiff's disciplinary confinement fell within the "short" range and did not involve any abnormalities, it did not implicate any liberty interest sufficient to raise a due process violation. Plaintiff's due process claims as to disciplinary confinement at Wende fail as a matter of law.

### 2. Grievance Processing

Plaintiff also raises due process complaints about the handling of his grievances. (*See* Dkt. 12 at 27-30; Dkt. 209-2 at 21). It is well-established that inmates do not have a protected liberty interest in the processing of their prison grievances. *See Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003). "[Although] there is a First Amendment right of meaningful access to the courts and a right to petition the government for redress, inmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under § 1983." *Cancel v. Goord*, No. 00 CIV 2042 LMM, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001) (internal citations omitted).

Plaintiff has no liberty interest in the prison grievance program. Even if Defendants violated their own procedures in processing Plaintiff's grievances, Plaintiff cannot find relief under § 1983. A prisoner may raise due process claims related to disciplinary hearings. *Montalvo v. Lamy*, 139 F. Supp. 3d 597, 608 (W.D.N.Y. 2015); *Richard v. Fischer*, 38 F. Supp. 3d 340, 358-59 (W.D.N.Y. 2014). However, Plaintiff's allegations here relate only to allegedly faulty grievance processing; Plaintiff makes no allegations of due process violations related to disciplinary hearings. Therefore, these claims fail as a matter of law.

Plaintiff's only claim against Defendants Bellamy and Scott are the due process claims related to the grievance process. Because Plaintiff's claims fail, Defendants Bellamy and Scott must be dismissed from the action.

### E. Retaliation

Finally, Plaintiff alleges that he was retaliated against because he filed grievances. (Dkt. 12 at 28).

> A prisoner has a substantive due process right not to be subjected to false misconduct charges as retaliation for his exercise of a constitutional right such as petitioning the government for redress of grievances. Retaliating against inmates for filing grievances by filing false disciplinary reports violates the First Amendment. In fact, our Circuit has held that the filing of a false disciplinary report is a serious enough action that temporal proximity between an inmate grievance and the filing of a report is enough to state a retaliation claim. Accordingly, a plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action.

**\*8** *Richard v. Fischer*, 38 F. Supp. 3d 340, 358 (W.D.N.Y. 2014) (internal quotation marks and citations omitted). Here, Plaintiff asserts that because of his filing of numerous grievances, unspecified Defendants retaliated by filing false misbehavior reports. (*See* Dkt. 12 at 28). Defendants have not raised any argument related to Plaintiff's retaliation claim. (*See* Dkt. 177-5). Therefore, the Court will not dismiss the retaliation claim.

### F. Summary

For the foregoing reasons, Defendants' motion for summary judgment is granted with respect to Plaintiff's alleged due process claims, but is denied as to Plaintiff's Eighth Amendment claims related to the alleged denial of adequate medical treatment and adequate food and nutrition, and it is also denied with respect to Plaintiff's claims alleging retaliation and the failure to provide reasonable accommodations for Plaintiff's disability.

### III. Plaintiff's Motion for Discovery

Plaintiff moves this Court to open discovery. (Dkt. 182). Plaintiff states that he is "asking for interrogatory answers

and other evidence [to] show that the material facts are in dispute." (*Id.* at 2). Plaintiff also states that discovery will allow him to show that he filed "over 300 grievances." (*Id.*).

The Court construes Plaintiff's motion as one under Fed. R. Civ. P. 56(d). In opposing a summary judgment motion, if a nonmovant "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d).

> A party seeking to delay resolution of a summary judgment motion on grounds that he has been deprived of certain discovery materials "must show that the material sought is germane to the defense, and that it is neither cumulative nor speculative, and a bare assertion that the evidence supporting a plaintiff's allegation is in the hands of the defendant is insufficient."

*Alphonse Hotel Corp. v. Tran,* 828 F.3d 146, 151 (2d Cir. 2016) (quoting *Paddington Partners v. Bouchard,* 34 F.3d 1132, 1138 (2d Cir. 1994)).

Here, Plaintiff has not submitted any sworn affidavit or declaration requesting particular information, nor has he described how the material requested is germane to his defense related to the due process claims (the only claims on which the Court has granted summary judgment). As discussed above, the due process claims are barred as a matter of law, and Plaintiff has not made a showing that discovery would alter that conclusion. Therefore, the motion for discovery is denied without prejudice to Plaintiff seeking discovery with respect to the claims that remain.

## IV. Plaintiff's Motion to Appoint Counsel

As part of Plaintiff's motion for discovery, he also moves this Court to appoint counsel "to assist [Plaintiff] in preparing his case...." (Dkt. 182 at 5). Under 28 U.S.C. § 1915(e), the Court may appoint counsel to assist indigent litigants, *see, e.g., Sears, Roebuck & Co. v. Charles Sears Real Estate, Inc.,* 865 F.2d 22, 23-24 (2d Cir. 1988), and the assignment of *pro bono* counsel in civil cases is within the trial court's discretion. *In re Martin-Trigona,* 737 F.2d 1254, 1260 (2d Cir. 1984). The court must evaluate "the merits of [the] plaintiff's case, the plaintiff's ability to pay for private counsel, his efforts to obtain a lawyer, the availability of counsel, and

the plaintiff's ability to gather the facts and deal with the issues if unassisted by counsel." *Cooper v. A. Sargenti Co., Inc.,* 877 F.2d 170, 172 (2d Cir. 1989). Particular attention must be paid to the merits of the plaintiff's claim. *Id.* ("Even where the claim is not frivolous, counsel is often unwarranted where the indigent's chances of success are extremely slim." (quoting *Hodge v. Police Officers,* 802 F.2d 58, 60 (2d Cir. 1986))). Additionally, for prison inmates, the court must also give weight to the plaintiff's lack of practical access to attorneys. *Id.* at 173-74.

**\*9** Plaintiff was in prison when he filed the complaint, and remains in custody. (*See* Dkt. 1; Dkt. 4). Plaintiff has already been granted *in forma pauperis* status in this case. (Dkt. 5). In his *in forma pauperis* motion, Plaintiff stated that he was incarcerated, had not worked in the past 12 months, and did not have any cash or other assets. (Dkt. 4 at 1-2). A prison official certified that Plaintiff's average account balance for the previous six months was $1.07. (*Id.* at 3). Plaintiff has conclusively shown that he is indigent, and has met the threshold test for appointing counsel.

However, the *Cooper* factors all weigh against appointing counsel at this time. Plaintiff's motion papers provide no information suggesting that he attempted to obtain counsel to assist in his case. (*See* Dkt. 182 at 5). As the Second Circuit has noted, "[t]he vast majority of litigation on behalf of personal claimants is financed initially by lawyers who accept the representation for a contingent fee in the expectation of being rewarded by a share of the winnings." *Cooper,* 877 F.2d at 173. In the absence of an affirmative statement by Plaintiff otherwise, the Court assumes that he has not sought an attorney to represent him. This weighs against the appointment of counsel.

The Court also finds that the Plaintiff has failed to show anything more than a remote possibility of success on the merits. Plaintiff's ultimate success on the merits faces significant hurdles, including Defendants' defense that Plaintiff failed to exhaust his administrative remedies. This too weighs heavily against the appointment of counsel.

Balancing the factors set forth in *Cooper,* the Court finds that appointing counsel is inappropriate at this time, and Plaintiff's motion is denied without prejudice.

## V. Plaintiff's Motion for a Stay

Case 9:19-cv-01314-BKS-TWD   Document 44   Filed 04/22/21   Page 51 of 93

Crichlow v. Fischer, Not Reported in Fed. Supp. (2017)

Plaintiff moves this Court to stay the action while he undergoes surgery on his wrist, arm, and back. (Dkt. 182 at 6). Plaintiff does not disclose the date of the surgery, or any further information which would allow the Court to evaluate the necessity of such a stay. (*See id.*). Plaintiff has not sufficiently shown a need for a stay in the litigation. Therefore, the motion is denied without prejudice.

## VI. Plaintiff's Motion for a Medical Exam

Plaintiff asks this Court, pursuant to Fed. R. Civ. P. 35, to order a medical examination so that he can access medical care for currently occurring medical issues. (Dkt. 187). Rule 35 permits a court to order "a party whose ... condition ... is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner. The court has the same authority to order a party to produce for examination a person who is in its custody...." Fed. R. Civ. P. 35. "In order to obtain a medical examination under Rule 35, the moving party must establish 'good cause....' " *Kelly v. Times/review Newspapers Corp.,* CV 14-2995 (JMA) (SIL), 2016 WL 2901744, at *1 (E.D.N.Y. May 18, 2016). " 'Rule 35 does not, however, authorize a party to file a motion for his own physical examination.' Neither may a plaintiff invoke Rule 35 in order to receive medical care." *Rodriguez v. Conway,* No. 10-CV-6243L, 2011 WL 4829725, at *3 (W.D.N.Y. Sept. 6, 2011) (citations omitted), *affirmed in relevant part by* No. 10-CV-6243L, 2011 WL 4829869 (W.D.N.Y. Oct. 12, 2011).

Here, Plaintiff's current medical condition is not "in controversy." Plaintiff has already submitted records regarding his medical and dental maladies for the time period at issue in this action. (*See* Dkt. 209-5 at 1-27). Defendants have in no way challenged the substance of Plaintiff's claimed medical needs during his incarceration at Wende from 2008 to 2010. Further, Plaintiff cannot use Rule 35 to receive medical care. Therefore, Plaintiff's motion is denied.

## VII. Plaintiff's Motion for Reconsideration

**\*10** Plaintiff titles his motion at Dkt. 192 as a "motion for reconsideration," however, he does not point to any order or decision of the Court for which he seeks reconsideration. Although the Court has the inherent power to reconsider and modify interlocutory orders prior to the entry of judgment, *see* Fed. R. Civ. P. 54(b) ("[A]ny order or other ... that adjudicates fewer than all the claims ... does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."); *Williams v. Cty. of Nassau,*

779 F. Supp. 2d 276, 280 & n.2 (E.D.N.Y. 2011) ("A district court retains absolute authority to reconsider or otherwise affect its interlocutory orders any time prior to appeal."), *aff'd*, 581 Fed.Appx. 56 (2d Cir. 2014), Plaintiff has not provided sufficient information to allow the Court to decide his motion. Therefore, Plaintiff's motion is denied.

## VIII. Plaintiff's Motion to Amend

Plaintiff also filed a motion which, in essence, asks the Court to allow Plaintiff to amend his response to Defendants' motion for summary judgment. (Dkt. 192). The Court granted such relief already (Dkt. 208), and Plaintiff already filed amended response papers (Dkt. 209; Dkt. 211). Therefore, Plaintiff's motion is denied as moot because he has already received the requested relief.

## IX. Plaintiff's Motion for a Hearing

Plaintiff further asks the Court to hold a hearing "to cover several issue[s] that Plaintiff [does not] fully[ ] understand." (Dkt. 192 at 3). Plaintiff also seeks scheduling conferences or orders pursuant to Fed. R. Civ. P. 16(b) and 26(f). The Court finds that neither a hearing nor a scheduling order is necessary at this time. If Plaintiff has legal questions, he may retain an attorney or do further legal research to answer those questions. It is not the Court's role to answer such questions. Thus, Plaintiff's motion is denied. Once an answer is filed, the case will proceed to discovery.

## X. Defendant's Motion for Sanctions

Defendants move this Court to impose sanctions on Plaintiff pursuant to Fed. R. Civ. P. 11. (Dkt. 195). Defendants argue that, as part of his response to the motion for summary judgment, Plaintiff filed a grievance exhausted by another inmate, claiming the grievance as one Plaintiff had himself exhausted. (Dkt. 195-2 at 1-2 (citing Dkt. 188-8 at 2)). Plaintiff allegedly did so in an attempt to show that the Jeffery Hale declaration was knowingly false and that Defendants had destroyed Plaintiff's grievances. (*Id.* (citing Dkt. 188 at 12)).

A party or counsel for a party is required by the Federal Rules of Civil Procedure to certify that, to the best of their knowledge, the factual contentions made have evidentiary support. Fed. R. Civ. P. 11(b)(3). Rule 11 allows the court to "impose an appropriate sanction on any attorney, law firm, or party that violated [Rule 11(b)] or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). "Sanctions may be—

but need not be—imposed when court filings are used for an 'improper purpose,' or when claims are not supported by existing law, lack evidentiary support, or are otherwise frivolous." *Ipcon Collections LLC v. Costco Wholesale Corp.,* 698 F.3d 58, 63 (2d Cir. 2012) (citation omitted). "Further, even when a district court finds a violation of Rule 11, 'the decision whether to impose a sanction is committed to the district court's discretion.' " *Id.* (quoting *Perez v. Posse Comitatus,* 373 F.3d 321, 325 (2d Cir. 2004)).

Defendants argue that "the only appropriate sanction in this matter is dismissal." (Dkt. 195-2 at 3). The Court disagrees. The grievance at issue relates to a complaint which arose during 2012 and 2013. (Dkt. 188-8 at 2). Even if Plaintiff was the grievant, the grievance itself would be irrelevant to this Court's inquiry into Plaintiff's incarceration conditions from 2008 until 2010. Indeed, the grievance at issue was not taken into account during the Court's review of the motion for summary judgment because it is irrelevant to the time frame at issue. Further, although the filing of false documents in bad faith to a court can, in egregious cases, result in dismissal, *see* Ceglia v. Zuckerberg, No. 10-CV-00569A(F), 2013 WL 1208558 (W.D.N.Y. 2013), *report and recommendation adopted by* 2014 WL 1224574 (W.D.N.Y. 2014), *aff'd,* 600 Fed.Appx. 34 (2d Cir. 2015), such an extreme sanction is not warranted at this time. However, **Plaintiff is hereby warned that any future violation of Rule 11 may result in dismissal of the action or other appropriate sanctions.**

**\*11**  Defendants' motion is denied without prejudice.

## XI. Plaintiff's Motion for Sanctions

Finally, Plaintiff asks this Court to impose sanctions on Defendants for making materially misleading and false statements to the Court in its response in opposition (Dkt. 174) to Plaintiff's letter motion (Dkt. 172). (Dkt. 198). The Court denied Plaintiff's motion as unrelated to the claims at issue in this action. (Dkt. 176).

Read generously, Plaintiff argues that Defendants' counsel failed to acknowledge in his response that one of the individuals named in the letter motion was also a named Defendant in this action. (*See* Dkt. 198 at 1-2). Such a misstatement is immaterial and does not warrant sanctions.

As Plaintiff failed to assert any material violation of Rule 11, sanctions are inappropriate, and Plaintiff's motion is denied.

## CONCLUSION

For the foregoing reasons, the Court

GRANTS IN PART AND DENIES IN PART Defendants' motion for summary judgment (Dkt. 177);

INSTRUCTS the Clerk of Court to terminate Defendants Bellamy and Scott from this action;

DIRECTS Defendants to answer the complaint within 30 days of the filing of this Decision and Order;

DENIES Plaintiff's motion for discovery (Dkt. 182) without prejudice;

DENIES Plaintiff's motion to appoint counsel (Dkt. 182) without prejudice;

DENIES Plaintiff's motion for a stay (Dkt. 182) without prejudice;

DENIES Plaintiff's motion for a medical exam (Dkt. 187);

DENIES Plaintiff's motion for reconsideration (Dkt. 192);

DENIES Plaintiff's motion to amend (Dkt. 192) as moot;

DENIES Plaintiff's motion for a hearing (Dkt. 192);

DENIES Defendants' motion for sanctions (Dkt. 195) without prejudice; and

DENIES Plaintiff's motion for sanctions (Dkt. 198).

SO ORDERED.

## All Citations

Not Reported in Fed. Supp., 2017 WL 920753

Crichlow v. Fischer, Not Reported in Fed. Supp. (2017)

Case 9:19-cv-01314-BKS-TWD   Document 44   Filed 04/22/21   Page 53 of 93

## Footnotes

1   Defendants have not made any statute-of-limitations arguments regarding Plaintiff's claims under the Rehabilitation Act or the Americans with Disabilities Act. (*See* Dkt. 177-5 at 3). Thus, the Court only addresses Defendants' statute-of-limitation argument as it relates to Plaintiff's constitutional claims of discrimination under § 1983.

**End of Document**                                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

307 Fed.Appx. 469
This case was not selected for
publication in the Federal Reporter.
United States Court of Appeals,
Second Circuit.

Franklyn BURGOS, Plaintiff–Appellant,

v.

T.S. CRAIG, Warden, FCI Raybrook; D. Marini,
Clinical Director; Liberty, Defendants–Appellees.

No. 06–5505–pr.
|
Dec. 15, 2008.

**Synopsis**
**Background:** Prisoner brought action against prison
officials, alleging that they were deliberately indifferent to
his medical needs. The United States District Court for the
Northern District of New York, Strom, J., entered summary
judgment in defendants' favor, and prisoner appealed.

**Holding:** The Court of Appeals held that prisoner required
to exhaust administrative remedies as prerequisite to filing
action.

Affirmed.

**Procedural Posture(s):** On Appeal; Motion for Summary
Judgment.

West Headnotes (1)

[1]    **Prisons**  ⚷  Particular Cases

Prisoner was required to exhaust administrative
remedies as prerequisite to filing action
against prison officials for alleged deliberate
indifference to prisoner's medical needs. Prison
Litigation Reform Act of 1995, § 101(a), 🚩 42
U.S.C.A. § 1997e(a).

45 Cases that cite this headnote

*470  UPON DUE CONSIDERATION of this appeal from a
judgment of the United States District Court for the Northern
District of New York, it is hereby ORDERED, ADJUDGED,
AND DECREED, that the judgment is AFFIRMED.

**Attorneys and Law Firms**

Franklin Burgos, White Deer, PA, pro se.

Paula Ryan Conan, for Glenn T. Suddaby, U.S. Attorney
for the Northern District of New York, Syracuse, N.Y., for
Respondent.

PRESENT:  Hon.  JOSEPH  M.  McLAUGHLIN,  Hon.
DEBRA A. LIVINGSTON, Circuit Judges, and Hon. JOHN
G. KOELTL, * District Judge.

*SUMMARY ORDER*

**1  Plaintiff–Appellant appeals from a judgment of the
District Court (Strom, J.) granting Defendants–Appellees'
motion for summary judgment on Plaintiff–Appellant's claim
that Defendants were deliberately indifferent to Plaintiff's
medical needs during his incarceration. Plaintiff sought $1
million in damages and immediate medical attention. We
assume the parties' familiarity with the facts, procedural
history, and scope of issues presented on appeal.

The district court's grant of summary judgment is reviewed
de novo, construing the evidence in the light most favorable
to the nonmoving party. *See Jaramillo v. Weyerhaeuser Co.,*
536 F.3d 140, 145 (2d Cir.2008). "However, reliance upon
conclusory statements or mere allegations is not sufficient
to defeat a summary judgment motion." *Davis v. New
York,* 316 F.3d 93, 100 (2d Cir.2002). A district court's ruling
on whether a plaintiff has exhausted administrative remedies
under the Prison Litigation Reform Act, 18 U.S.C. § 3626,
28 U.S.C. § 1932, is also reviewed de novo. *See Ortiz v.
McBride,* 380 F.3d 649, 653 (2d Cir.2004).

Under the Prison Litigation Reform Act, "[n]o action shall
be brought with respect to prison conditions under section
1983 of this title, or any other Federal law, by a prisoner
confined in any jail, prison, or other correctional facility until
such administrative remedies as are available are exhausted."
🚩 42 U.S.C. § 1997e(a). The exhaustion requirement extends
to federal prisoners asserting actions under *Bivens v. Six*

*Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). *See* Porter v. Nussle, 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). It must be completed before suit is filed, and completing the exhaustion requirements only after filing suit is insufficient. *See* Neal v. Goord, 267 F.3d 116, 121–22 (2d Cir.2001), *abrogated in part on other grounds by* Porter, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12. "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." **\*471** Porter, 534 U.S. at 532, 122 S.Ct. 983. Federal prisoners have twenty days after an incident to request an administrative remedy, 28 C.F.R. § 542.14(a), and twenty days to appeal an unfavorable decision to the regional director, with an additional appeal to general counsel, *id.* § 542.15(a). Extensions of these time limits are sometimes available. *See id.* §§ 542.14(a), 542.15(a).

In this case, Plaintiff–Appellant effectively concedes that he sued just a few days after requesting administrative remedies, and before there was any decision on his administrative request. Assuming arguendo that Plaintiff–Appellant subsequently exhausted his administrative remedies, that is not enough to save his suit, because he is required to have properly exhausted before he sues. The inmate's request for a continuance was based on a statute that has been amended in relevant part and is no longer effective.

**\*\*2** We have considered the Plaintiff–Appellant's remaining arguments and find them to be without merit.

For the foregoing reasons, the judgment of the District Court is AFFIRMED.

**All Citations**

307 Fed.Appx. 469, 2008 WL 5210890

## Footnotes

\*    The Honorable John G. Koeltl, District Judge for the Southern District of New York, sitting by designation.

**End of Document**                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 431718
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
S.D. New York.

Cesar MATEO, Plaintiff,

v.

T. ALEXANDER, Correction Sergeant, and
J. Erns, Correction Officer, Defendants.

No. 08 Civ. 8797(RJH)(DCF).
|
Feb. 9, 2010.

### MEMORANDUM OPINION AND ORDER

RICHARD J. HOLWELL, District Judge.

*\*1* This is one of several actions Cesar Mateo ("Mateo"), a prisoner currently incarcerated at the Great Meadow Correctional Facility ("Great Meadow"), has brought *pro se* against various prison officials under 41 U.S.C. § 1983 ("Section 1983"). In this case, Mateo is suing two employees of the New York State Department of Correctional Facilities ("DOCS"): Corrections Sergeant Tracy Alexander ("Alexander") and Corrections Officer Jeffrey Erns ("Erns"). Both defendants worked at the Green Haven Correctional Facility ("Green Haven") while Mateo was incarcerated there from 2003 to 2008. Mateo raises claims of harassment and retaliation against Erns and supervisory liability against Alexander. Defendants have moved to dismiss the complaint in its entirety. For the reasons that follow, the Court grants defendants' motion.

### BACKGROUND

For purposes of this motion, the following facts are taken as true.

Mateo first filed this lawsuit in the Northern District of New York, on August 18, 2008.[1] (*Mateo v. Ficsher,* No. 08-0881(NAM) (N.D.N.Y. filed Aug. 18, 2008), Compl.) Because the complaint's allegations involved incidents at Green Haven, which is in this district, the case was transferred here. (*Mateo v. Ficsher,* No. 08-0881(NAM) (N.D.N.Y. filed Aug. 18, 2008), Order dated Aug. 26, 2008.)

Mateo's claims stem from three incidents that allegedly occurred in 2008. In the first, on June 16, 2008, defendant Erns "approached" Mateo, "looked at [his] property," and said Mateo had "too much 'shit.' " (Compl.¶ 9.) Erns then searched Mateo's property, without his permission and in violation of "established procedure." (*Id.*) Erns also leveled a few unfriendly words at Mateo, like "shut that fuck up or I will write you a ticket for interfering with the search," and "Jackass." (*Id.*) Mateo filed a grievance that day, but it "was not processed"; he filed a second grievance a few days later, which he says was processed but never investigated. (*Id.* ¶ 10.)

The second incident occurred on June 21, 2008, when Erns made Mateo "wait a long period of time" to use a toilet. (*Id.* ¶ 11.) Mateo heard Erns tell co-workers that Mateo "is the inmate who wrote the grievance against me," implying that Erns' actions were retaliatory. (*Id.*) Mateo later filed a grievance, which was "processed and denied." (*Id.* ¶ 12.)

Finally, on August 10, 2008, Erns made Mateo wait "a long period" of time to enter his assigned cell and to use a toilet. (*Id.* ¶ 13.) Mateo was eventually forced to ask Erns for a "plastic bag and toilet tissue to defecate" because Erns would not allow him access to a toilet; he does not say whether or how Erns responded. (*Id.*) According to the complaint, defendant Alexander witnessed the situation and failed to stop it. (*Id.*) The same day Mateo filed a grievance against Erns and Alexander, and on August 11, 2008, he was transferred to a new cell block. (*Id.* ¶ 15.)

### DISCUSSION

### I. Converting Defendants' Motion

*\*2* On a motion to dismiss, the Court accepts the complaint's allegations as true and draws all reasonable inferences in the plaintiff's favor. *In re DDAVP Direct Purchaser Antitrust Litigation,* 585 F.3d 677, 692 (2d Cir.2009). Where a motion is premised on the plaintiff's failure to exhaust his administrative remedies, the question is whether nonexhaustion is clear from the face of the complaint. *See Jones v. Bock,* 549 U.S. 199, 216 (2007) (exhaustion is an affirmative defense, so inmates need not specially plead or demonstrate it in their complaints). If nonexhaustion

is clear, a motion to dismiss should be granted. *Shaw v. City of New York,* No. 08-3997, 2009 WL 1110789, at *3 (S.D.N.Y. Apr. 21, 2009) (quoting *McCoy v. Goord,* 255 F.Supp.2d 233, 251 (S.D.N.Y.2003)). If it is not, the court may convert the defendant's motion to one for summary judgment "limited to the narrow issue of exhaustion and the relatively straightforward questions about the plaintiff's efforts to exhaust, whether remedies were available, or whether exhaustion might be, in very limited circumstances, excused." *McCoy,* 255 F.Supp.2d at 251; *see* Fed.R.Civ.P. 12(b).

If the court chooses to convert the motion, it must "afford all parties the opportunity to present supporting material." *Friedl v. City of New York,* 210 F.3d 79, 83 (2d Cir.2000) (internal quotation marks omitted). Still, the court need not give formal notice of its intention if "the parties were ... apprised of the likelihood of conversion by less formal or direct means and, in fact, had a sufficient opportunity to present the materials relevant to a summary judgment motion." 5C Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1366 (3d ed.2004); *see In re G. & A. Books, Inc.,* 770 F.2d 288, 295 (2d Cir.1985) ("The essential inquiry is whether the [nonmovant] should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings.").

Here, the defendants claim that Mateo did not exhaust his remedies in time. Mateo does not exactly disagree, but he does say the defendants have manipulated the grievance process. In a wealth of caution, the Court will assume that nonexhaustion is not plain from the face of the complaint, and it will treat defendants' motion as one for summary judgment limited to the exhaustion issue. Formal notice to the parties is unnecessary here: defendants attached as exhibits to their motion the records they have of Mateo's grievances. They also notified Mateo that the Court might choose to treat the motion as one for summary judgment, and that to oppose it, Mateo would need to submit evidence, such as affidavits. All parties were on notice of the possibility of conversion.

## II. Exhaustion

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, requires that prisoners exhaust all available administrative remedies before pursuing a lawsuit in federal court. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *Porter v. Nussle,* 534 U.S. 516, 532 (2002) (exhaustion is required for "all inmate suits about prison life"); *Booth v. Churner,* 532 U.S. 731, 734 (2001) (exhaustion required before filing a Section 1983 claim for monetary damages even though monetary damages are unavailable as an administrative remedy). A prisoner properly exhausts a claim by complying with state grievance procedures. [2] *Jones v. Bock,* 549 U.S. 199, 218 (2007). Merely "[a]lert[ing] the prison officials as to the nature of the wrong for which redress is sought does not constitute proper exhaustion." *Macias v. Zenk,* 495 F.3d 37, 44 (2d Cir.2007) (internal quotation marks and citation omitted). Nor does an "untimely or procedurally defective" administrative grievance. *Woodford v. Ngo,* 548 U.S. 81, 83-84 (2006).

**\*3** When a prisoner does not properly exhaust his administrative remedies before filing suit, the action *must* be dismissed. *Burgos v. Craig,* No. 06-5505, 307 Fed. Appx. 469, 470 (2d Cir.2008) ("[Exhaustion] must be completed before suit is filed, and completing the exhaustion requirements only after filing suit is insufficient."); *see Neal v. Goord,* 267 F.3d 116, 121-22 (2d Cir.2001), *abrogated in part on other grounds by Porter v. Nussle,* 534 U.S. 516 (2002). Of course, if a claim has since been exhausted, it might seem more efficient simply to proceed with the lawsuit rather than dismiss it only to see it immediately re-filed. But as Judge Lynch has noted,

> the Court of Appeals has ruled that from the broader perspective of Congress and appellate judges, the greater good forbids allowing a case to proceed where administrative remedies have been exhausted while the complaint is pending, and requires in such a case dismissal of the complaint, to be re-filed, if the plaintiff wishes, with the addition of paragraphs explaining how

administrative remedies have been exhausted.

*Mendez v. Artuz,* No. 01-4157, 2002 WL 313796, at *2 (S.D.N.Y. Feb. 27, 2002) (Lynch, J.). This Court might question the wisdom of such a rule, but the rule is clear.

The defendants contend that all of Mateo's claims were only exhausted *after* he filed his complaint. The Court agrees. Mateo claims that he filed a grievance the day of the June 16, 2008 incident that was never processed, and another grievance on June 18 that was never investigated; that he filed a grievance the day of the June 21 incident that was processed and denied; and that he filed a grievance the day of the August 10 incident. (Compl.¶¶ 10, 12, 15.) But he does not say that he exhausted all available administrative remedies prior to August 13, 2008. In fact, Mateo does not even say whether he appealed the grievances that were processed and denied (the defendants' evidence shows that he did).

The documents defendants have submitted include copies of grievances Mateo filed in connection with the three incidents, as well as decisions CORC rendered on them all. (*See* Decl. of Karen Bellamy, Exs. A, B, C.) The evidence demonstrates that each grievance was processed: each is stamped "Received" and "Green Haven Correction Facility Inmate Grievance Program." (*See id.*) Not only were the grievances processed; they were also appealed, and CORC rendered decisions on them. On November 26, 2008, CORC issued a decision on Mateo's June 19 grievance; on August 27, 2008, it issued a decision on Mateo's July 2 grievance; and on October 1, 2008, it issued a decision on Mateo's August 11 grievance. (*Id.*) All of CORC's decisions, it goes without saying, postdated the filing of this complaint.

There are two final issues to address. Generously construed, Mateo's affidavit opposing dismissal suggests that his claims

should be excepted from the usual exhaustion requirement-first, because he wrote letters to the DOCS Assistant Commissioner and the Inspector General's Office, and second, because the Green Haven staff manipulated the grievance process. Neither argument is persuasive. As for the first, courts have said that informal letters of complaint are no substitute for proper exhaustion in accordance with state grievance procedures. *Harrison v. Goord,* No. 07-1806, 2009 WL 1605770, at *8 (S.D.N.Y. June 9, 2009) (letters to prison superintendent and DOCS Commissioner did not satisfy exhaustion requirement); *Conner v. Hurley,* No. 00-8354, 2004 WL 885828, at *2 (S.D.N.Y. Apr. 26, 2004) (same). As for the second, Mateo has not raised a material issue of fact that the process has been manipulated in any way. A complaint's allegations "must be enough to raise a right of relief above the speculative level," *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), and state a "plausible claim for relief." *LaFaro v. New York Cardiothoracic Group, PLLC,* 570 F.3d 471, 476 (2d Cir.2009). A wholly unsupported claim that the process is manipulated is not plausible, especially where, as here, defendants have supplied evidence to the contrary-copies of processed grievances and CORC decisions. The problem for Mateo is not that the grievance process was unavailable to him; it is that he did not wait to file a lawsuit until the process had run its course. [3]

## CONCLUSION

**\*4** For the reasons given, the defendants' motion to dismiss is granted without prejudice.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 431718

## Footnotes

1    The docket sheet indicates that Mateo filed his complaint on August 18, 2008. In the Second Circuit, "for statute of limitations purposes, a pro se prisoner's complaint is deemed filed on the date that the prisoner 'turn[s] his complaint over to prison officials' for transmittal to the court, not when the court actually receives

it." *Abbas v. Dixon,* 480 F.3d 636, 638 n. 1 (2d Cir.2007) (quoting *Dory v. Ryan,* 999 F.2d 679, 682 (2d Cir.1993), *modified on other grounds,* 25 F.3d 81 (2d Cir.1994)). District courts have applied that rule in assessing whether claims have been exhausted prior to bringing suit. *See Dimodica v. U.S. Dep't of Justice,* No. 05-2165, 2006 WL 89947, at *3 (S.D.N.Y. Jan. 11, 2006) (Lynch, J.). Thus the Court deems Mateo's complaint filed when he turned it over to prison officials, which occurred on either August 12, when he signed it, or August 13, when it was postmarked.

2    New York provides a three-tiered grievance procedure for inmates: first, the prisoner files a grievance with the Inmate Grievance Resolution Committee ("IGRC"). 7 N.Y. Comp.Codes R. & Regs. § 701.5(a)(2) (2009). Second, the prisoner may appeal an adverse IGRC decision to the facility superintendent, and third, the prisoner may appeal an adverse decision by the superintendent to the Central Office Review Committee ("CORC"). *Id.* §§ 701.5(b)-(d). An expedited procedure exists for grievances that allege harassment by prison staff: the grievance is sent directly to the superintendent, and, if the grievance "is a bona fide harassment issue, the superintendent must initiate or request an investigation and render a decision, after which the prisoner could then appeal to the CORC." *Id.* § 701.8(c)-(d); *see Espinal v. Goord,* 558 F .3d 119, 125 (2d Cir.2009) (internal citation omitted). In the absence of any decision, the prisoner can appeal directly to CORC within twenty-five days. *Id.* § 701.8(g).

3    The Second Circuit has devised three exceptions to the exhaustion requirement, although it is not clear whether the exceptions survived *Woodford v. Ngo,* 548 U.S. 81 (2006), which read the PLRA to require "proper exhaustion." *See Chavis v. Goord,* 333 Fed. Appx. 641, 642-43 (2d Cir.2009). In any case, none apply here. The exceptions are where "(1) administrative remedies are not available to the prisoner; (2) defendants have either waived the defense of failure to exhaust or acted in such as way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement." *Ruggiero v. Cty. of Orange,* 467 F .3d 170, 175 (2d Cir.2006). Remedies *were* available to Mateo-he utilized them, just not in time. And Mateo has not pointed to any fact that would estop defendants from raising the defense here or that would justify his failure to exhaust.

---

**End of Document**                              © 2021 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW**   © 2021 Thomson Reuters. No claim to original U.S. Government Works.   4

2002 WL 313796
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Hilden MENDEZ, Plaintiff,

v.

C. ARTUZ, Superintendent of Green Haven
Correctional Facility, et al., Defendants.

No. 01 CIV. 4157(GEL).
|
Feb. 27, 2002.

OPINION AND ORDER

LYNCH, District J.

**\*1** In this action pursuant to 42 U.S.C. § 1983, Hilden Mendez, a New York State prisoner, sues several correctional officers he claims used unnecessary and excessive force against him, or failed to intervene to protect him during the beating, as well as higher-level prison supervisors whose personal involvement in the incident in question is obscure or non-existent. Defendants move to dismiss on the ground that Mendez has failed to exhaust his administrative remedies within the New York State Department of Correctional Services ("DOCS"). Mendez argues that the exhaustion requirement does not apply to this case, and that if it does, he has satisfied it.

I

42 U.S.C. § 1997e(a) provides that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

This is a sensible requirement. Prisoners often resort to federal court to challenge prison rules, practices and regulations. But state prison systems typically provide grievance procedures that offer a forum for prisoner complaints about conditions of confinement. Requiring prisoners to resort first to such procedures has several advantages: If the prison authorities respond favorably to the complaint, the prisoner receives prompt relief, the parties and the courts are spared the burden of litigation, and the strains on federalism of federal court intrusion into state prison administration are avoided. Moreover, federal constitutional constraints on the policy choices of state prison administrators are quite limited, and prisoners may well obtain relief that would be unavailable in federal court by persuading wardens of the merits of their proposals. If the prison authorities reject the grievance, the state's official position on the prisoner's complaint will often be authoritatively clarified by the administrative proceeding.

It may seem strange to apply this provision to the present lawsuit. Mendez does not question any policy, procedure or regulation of DOCS that affects his or other prisoners' daily life in confinement, nor does he claim that being beaten by guards is a routine or condoned part of regular prison life. In normal English usage, the claim that a guard on a single occasion used excessive force—in violation not only of constitutional commands but of DOCS' own regulations —is not a complaint about "prison conditions" but about a particular isolated incident.

Considerations such as these prompted the Court of Appeals for this Circuit to hold that the exhaustion requirement of § 1997e(a) does not apply to excessive force suits. *Nussle v. Willette,* 224 F.3d 95, 106 (2d Cir.2000). The Supreme Court, however, has taken a different view, reversing *Nussle* and holding that the requirement does indeed apply to suits such as this. *Porter v. Nussle,* No. 00–853, 2002 WL 261683 at \*10 (Feb. 26, 2002). It is not for this Court to judge the persuasiveness of the Supreme Court's reasoning, but only to follow what the Supreme Court says is the command of the statute. This lawsuit, therefore, can only proceed after Mendez has exhausted any available administrative remedies.

II

**\*2** Mendez claims, however, that he has satisfied this requirement, pointing out that he filed a grievance through the appropriate channels, and appealed the adverse finding.

But the exhaustion requirement is not satisfied until the administrative process has reached a final result. The documents Mendez submits demonstrate that he has filed an appeal, and that through "administrative oversight" the appeal was not initially processed. (P. Mem.Ex. E.) The documents go on to state that the appeal has now been "forwarded to Central Office Review Committee (CORC)" for "final disposition" and is "pending review by CORC." (P. Mem.Ex. D, E.) Thus, as far as the record before this Court shows, at the time the complaint was filed, administrative review had not been completed, and the requirements of 🚩 § 1997e(a) had not yet been met.

Of course, in the time that this matter has been pending, administrative remedies might well have been finally exhausted. In that event, it might seem efficient simply to find out what had happened to plaintiff's appeal, and proceed accordingly. However, the Court of Appeals has ruled that from the broader perspective of Congress and appellate judges, the greater good forbids allowing a case to proceed where administrative remedies have been exhausted while the complaint is pending, and requires in such a case dismissal

of the complaint, to be re-filed, if the plaintiff wishes, with the addition of paragraphs explaining how administrative remedies have been exhausted. 🚩 *Neal v. Goord,* 267 F.3d 116, 123 (2d Cir.2001).

Thus, the complaint must be dismissed. When these hurdles have all been cleared, and the administrative remedies duly exhausted, assuming that the *plaintiff* is not by then exhausted, he will most likely re-file essentially the same lawsuit. If it is meritorious, much time will have been wasted; if it is meritless, no court time will be saved, as the Court will still be faced with the same case to adjudicate. And the interests of efficient judicial administration will thus presumably have been served.

Accordingly, the complaint is dismissed.

SO ORDERED:

**All Citations**

Not Reported in F.Supp.2d, 2002 WL 313796

---

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

 © 2021 Thomson Reuters. No claim to original U.S. Government Works.

2019 WL 7606078
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Edmund BOWIE, Plaintiff,
v.
Sergeant Gary WOODRUFF and Correctional
Officer Kyle Brooks, Defendants.

9:18-CV-0266 (BKS/ML)
|
Signed 09/20/2019

**Attorneys and Law Firms**

EDMUND BOWIE, 14-B-0838, Plaintiff, pro se, Auburn Correctional Facility, P.O. Box 618, Auburn, NY 13021.

HON. LETITIA JAMES, Attorney General for the State of New York, MATTHEW P. REED, ESQ., Assistant Attorney General, Attorney for Defendants, The Capitol, Albany, New York 12224-0341.

**REPORT-RECOMMENDATION AND ORDER** [1]

MIROSLAV LOVRIC, United States Magistrate Judge

**\*1** Plaintiff *pro se* Edmund Bowie ("Bowie" or "Plaintiff"), an inmate who was, at all relevant times, in the custody of the New York Department of Corrections and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983 against Defendants Sergeant Gary Woodruff ("Sgt. Woodruff") and Correctional Officer Kyle Brooks ("C.O. Brooks") for violations of his rights under the Eighth Amendment. Dkt. No. 1 ("Compl."). Presently before the Court is Defendants' motion for summary judgment and dismissal of Bowie's complaint pursuant to Rule 56(a) of the Federal Rules of Civil Procedure. Dkt. No. 29. Bowie did not oppose the motion. For the following reasons, it is recommended that Defendants' motion for summary judgment be granted.

# I. BACKGROUND

## A. Plaintiff's Failure to Respond

Before discussing the background of this case, the Court addresses Bowie's failure to respond or oppose the motion. The Second Circuit requires that a pro se litigant defending against a summary judgment motion be notified as to the nature and consequences of summary judgment. *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620–21 (2d Cir. 1999); *see also* Local Rule 56.2 (Notice to Pro Se Litigants of the Consequences of Failing to Respond to a Summary Judgment Motion). Here, Bowie was notified of the consequences of failing to respond to a summary judgment motion by Defendants and the Court. Dkt. No. 29 at 3; Dkt. No. 30. Given this notice, Bowie was adequately apprised of the pendency of Defendants' motion and the consequences of failing to respond. On May 21, 2019, Bowie filed a Notice of Change of Address and requested an extension of time to file his response to the motion. Dkt. Nos. 31 and 32. The Court granted the extension and directed Bowie to provide a response on or before June 21, 2019. Dkt. No. 33. Despite the extension, Bowie has not submitted opposition to Defendants' motion for summary judgment.

"The fact that there has been no response to a summary judgment motion does not ... mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). The Court has broad discretion to decide whether to overlook the parties' failures and perform an independent review of the record. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001); *see also Jackson v. Fed. Exp.*, 766 F.3d 189, 194 (2d Cir. 2014) (noting that "the court may rely on other evidence in the record even if uncited" in determining the undisputed material facts). If the district court chooses to conduct such an independent review of the record, any verified complaint filed by the plaintiff should be treated as an affidavit in opposing a motion for summary judgment. *Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004).

Here, because the Complaint is verified, [2] the Court will accept the pleading as an affidavit to the extent that the statements are based on Bowie's personal knowledge or are supported by the record. See *Berry v. Marchinkowski*, 137 F.Supp.3d 495, 530 (S.D.N.Y. 2005) (collecting cases to support the proposition that a court may consider unsworn assertions on a motion for summary judgment where they are based on the plaintiff's personal knowledge and in light of special solicitude).

**\*2** Due to Bowie's pro se status, the Court has opted to review the entire summary judgment record to ascertain the undisputed material facts. Consequently, the facts set forth in Defendants' Rule 7.1 Statement of Material Facts [3] are accepted as true as to those facts that are not disputed by the facts set forth in the Complaint. N.D.N.Y. L.R. 7.1(a)(3) ("The Court shall deem admitted any properly supported facts set forth in the Statement of Facts that the opposing party does not specifically controvert.") (emphasis omitted).

### B. Facts [4]

At the time of the incidents described in the Complaint, Bowie was an inmate in the custody of DOCCS and confined at Great Meadow Correctional Facility ("Great Meadow C.F."). *See generally*, Dkt. No. 1.

Bowie claims that he was involved in a physical altercation with Sgt. Woodruff and C.O. Brooks on June 10, 2017. Dkt. No. 1 at 2-3. Bowie alleges that Sgt. Woodruff and C.O. Brooks used excessive force and failed to intervene to protect him from the use of force, in violation of his Eighth Amendment rights. *Id.* at 4.

On June 23, 2017, Bowie filed an Inmate Grievance Complaint (Grievance No. 62268-17) related to the June 10, 2017 incident. Dkt. No. 29-3 at 3, 6. Bowie alleged:

> I was involved in a altercation in the big yard on (6-10-17) at which time I was handcuffed and taken to the facility infirmary. While in the infirmary check up room, Sergeant John Doe asked me questions which I answered. He said I was not trueful [sic] and proceed[ed] to slap me in the back of the head. He asked me some more questions[,] again I answered. He once again told me I was a liar [and] told Officer John Doe to hold me against the wall while another officer punched me in the ribs 4 or 5 times breaking 2 of my ribs which resulted in me going to Albany Med.

**\*3** Dkt. No. 29-3 at 6.

On July 10, 2017, the Grievance Clerk received the grievance. Dkt. No. 29-3 at 3. Due to the nature of the grievance, the Inmate Grievance Resolution Committee ("IGRC") forwarded the grievance directly to the facility Superintendent for review. *Id.*

On August 9, 2017, the Superintendent issued a decision stating that the grievance was investigated and denied. Dkt. No. 29-3 at 7. On August 21, 2017, Bowie signed the Appeal Statement indicating that he wished to appeal the Superintendent's decision to the Central Office Review Committee ("CORC"). *Id.* On August 23, 2017, the Grievance Clerk received and signed the Appeal Statement. *Id.* On August 29, 2017, CORC received the appeal. *Id.* at 8.

On February 26, 2018, Bowie signed his civil rights Complaint and commenced the within action. Dkt. No. 1 at 5.

On October 17, 2018, CORC issued a decision affirming the Superintendent's determination. Dkt. No. 29-3 at 9.

### C. Procedural History

On March 3, 2018, the Court received the Complaint in the within action. Dkt. No. 1. Upon review of the Complaint, the Court directed Defendants to respond to the Eighth Amendment excessive force and failure-to-intervene claims. Dkt. No. 7. On June 25, 2018, Defendants filed an Answer to the Complaint. [5] Dkt. No. 13. On April 26, 2019, Defendants filed the within motion pursuant to Fed. R. Civ. P. 56 seeking judgment as a matter of law with respect to Bowie's claims. Dkt. No. 29.

### II. LEGAL STANDARD

A motion for summary judgment may be granted if there is no genuine issue as to any material fact, it was supported by affidavits or other suitable evidence, and the moving party is entitled to judgment as a matter of law. The moving party bears the burden of demonstrating the absence of disputed material facts by providing the court with portions of pleadings, depositions, and affidavits which support the motion. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477

U.S. 317, 323 (1986). Facts are material if they may affect the outcome of the case as determined by substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 317, 248 (1986).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. Fed. R. Civ. P. 56; *see also* *Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard ... they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

**\*4** All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. *Skubel v. Fuoroli*, 113 F.3d 330, 334 (2d Cir. 1997). Furthermore, where, as here, a party seeks judgment against a *pro se* litigant, a court must afford the non-movant special solicitude. *See* *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," ... that a pro se litigant's submissions must be construed "liberally," ... and that such submissions must be read to raise the strongest arguments that they "suggest," .... At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, ... or arguments that the submissions themselves do not "suggest," ... that we should not "excuse frivolous or vexatious filings by pro se litigants," ... and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law."

*Id.* (citations and footnote omitted); *see also* *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191–92 (2d Cir. 2008). Nonetheless, summary judgment is appropriate

"[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III. DISCUSSION [6]

Defendants move for summary judgment arguing that Bowie failed to exhaust his administrative remedies through available grievance procedures prior to the commencement of this action. *See generally*, Dkt. No. 29.

### A. Exhaustion

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust any administrative remedies available to him or her before bringing an action for claims arising out of his or her incarceration. *Porter v. Nussle*, 534 U.S. 516, 524 (2002); *see also* *Woodford v. Ngo*, 548 U.S. 81, 82 (2006). The exhaustion requirement applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532. Further, the exhaustion requirement applies even where the prisoner seeks relief not available in the administrative grievance process, such as monetary damages. *Id.* at 524. To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he or she is incarcerated. *Jones v. Bock*, 549 U.S. 199, 218 (2007) (internal citation omitted).

Here, there is no dispute that at all relevant times, DOCCS had in place a three-step inmate grievance program ("IGP"). N.Y. Comp. Codes R. & Regs. title 7, § 701.5 (2015). First, the inmate must file a complaint with IGP clerk within twenty-one days of the alleged action. *Id.* at § 701.5(a)(1). An IGP representative has sixteen calendar days to informally resolve the issue. *Id.* at § 701.5(b)(1). If no informal resolution occurs, the full IGP committee must hold a hearing within sixteen days of receipt of the grievance and must issue a written decision within two working days after the conclusion of the hearing. *Id.* §§ 701.5(b)(2)(i)-(ii). If the determination is unfavorable to the inmate, the inmate may appeal the IGRC's

determination to the facility superintendent within seven calendar days of receipt of the determination. *Id.* § 701.5(c)(1). If the superintendent's determination is unfavorable to the inmate, the inmate may appeal to CORC within seven days after receipt of the superintendent's determination. *Id.* §§ 701.5(d)(1)(i)-(ii). If a grievant does not receive a copy of the written notice of receipt within 45 days of filing an appeal, the grievant should contact the IGP supervisor in writing to confirm that the appeal was filed and transmitted to CORC. *Id.* at § 701.5(d)(3)(i). CORC must "review each appeal, render a decision on the grievance, and transmit its decision to the facility, with reasons stated, for the [inmate], the grievance clerk, the superintendent, and any direct parties within thirty (30) calendar days from the time the appeal was received." *Id.* § 701.5(d)(3)(ii). Only upon exhaustion of all three levels of review may a prisoner seek relief in federal court. *Bridgeforth v. Bartlett,* 686 F.Supp.2d 238, 239 (W.D.N.Y. 2010) (citing, *inter alia,* *Porter,* 534 U.S. at 524); *see also* *Neal v. Goord,* 267 F.3d 116, 121 (2d Cir. 2001), *overruled on other grounds by* *Porter,* 534 U.S. 516.

**\*5**  Where the grievance involves allegations of employee excessive force, as alleged by Bowie, there is an expedited administrative process. *See* N.Y.C.R.R. title 7, § 701.8; *see* *Torres v. Carry,* 691 F.Supp.2d 366, 369–70 (S.D.N.Y. 2009). Complaints and grievances of this nature are forwarded directly to the superintendent of the facility. *Bell v. Napoli,* No. 9:17-CV-850 (ATB), 2018 WL 6506072, at *2 (N.D.N.Y. Dec. 11, 2018). In such cases the superintendent is required to order an investigation and render a decision within twenty-five (25) days. *See* N.Y.C.R.R., title 7, § 701(a)-(f). If the superintendent fails to respond within the required twenty-five (25) day time limit the inmate may appeal his grievance to the CORC. Disagreement with the superintendent's decision in the expedited review process also requires an appeal to the CORC. *Id.* § 701.8-(g)-(h); *see also* *Espinal v. Goord,* 588 F.3d 119,125 (2d Cir. 2009) (explaining IGP and the expedited procedure for harassment claims and its appeal mechanism through the CORC). The Second Circuit has long recognized this procedure as an "available remedy" for purposes of the PLRA. *See* *Hall v. County of Saratoga,* No. 10–CV–1120 (NAM/CFH), 2013 WL 838284, at *1–2 (N.D.N.Y. Mar. 6, 2013).

Defendants bear the burden of establishing that a prisoner failed to satisfy the exhaustion requirement. *See* *Jones,* 549 U.S. at 216.

## 1. Did Plaintiff Exhaust his Administrative Remedies?

The record is clear that Bowie filed this action on February 26, 2018, and, at that time, CORC had yet to issue a decision on his grievance. *See* Dkt. No. 1; Dkt. No. 29-3 at 9. DOCCS IGP Assistant Director Rachael Seguin ("Seguin") declared that she is the custodian of records maintained by CORC. Dkt. No. 29-3 at 1. Based upon Seguin's review of DOCCS' records, Bowie filed a grievance on June 23, 2017 claiming he was assaulted at Great Meadow on June 10, 2017. *Id.* at 3. Bowie's grievance was received by the IGRC Clerk on July 17, 2017 and denied by the Superintendent on August 9, 2017. *Id.* at 3-4. Seguin also reviewed CORC records for appeals received from Plaintiff relating to his allegations in this action. *Id.* at 3. Based upon Sequin's review, CORC received Bowie's appeal of the Superintendent's determination on August 29, 2017 and decided the appeal on October 17, 2018 – approximately eight months <u>after</u> Bowie commenced this action. Dkt. No. 29-3 at 4. A copy of Bowie's grievance, the Superintendent's response, documentation of CORC's receipt of Bowie's appeal, and CORC's response are attached to Seguin's Declaration as Exhibit A. *Id.* at 6-9.

Thus, Bowie did not fully exhaust his administrative remedies prior to filing this lawsuit as CORC's decision was outstanding. *White v. Drake,* No. 10-CV-1034 (GTS/DRH), 2011 WL 4478988, at *3 (N.D.N.Y. Aug. 11, 2011) ("Included within the IGP's exhaustion requirement is the prerequisite that the inmate file an appeal with CORC and receive a response from CORC prior to filing a federal lawsuit.") (citation omitted). The fact that Bowie subsequently exhausted his administrative remedies is irrelevant as he was required to properly exhaust before he sued. *See* *Burgos v. Craig,* 307 Fed. App'x 469, 471 (2d Cir. 2008).

## 2. Availability of Administrative Remedies

Having determined that Bowie failed to exhaust his administrative remedies, the Court examines whether he should be excused from the exhaustion requirement because administrative remedies were unavailable.

A prisoner's failure to exhaust administrative remedies may be excused if remedies were unavailable to the inmate.

*Ross*, 136 S.Ct. at 1858 ("An inmate [...] must exhaust available remedies, but need not exhaust unavailable ones."). There are three potential circumstances where administrative remedies may be unavailable: (1) where the administrative procedure technically exists but operates as a "dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) where prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Williams v. Priatno*, 829 F.3d 118, 123-24 (2d Cir. 2016) (quoting *Ross*, 136 S.Ct. at 1858-1861).

**\*6** Courts within this Circuit are split as to whether a delay by CORC constitutes unavailability that would excuse a plaintiff's failure to exhaust his administrative remedies. *See* *Hayes v. Dahlke*, No. 9:16-CV-1368 (TJM/CFH), 2018 WL 7356343, at \*9 (N.D.N.Y. Dec. 11, 2018) (collecting cases); *but cf.* *Henderson v. Annucci*, No. 14-CV-445A, 2016 WL 3039687, at \*9 (W.D.N.Y. March 14, 2016) (excusing the prisoner's failure to exhaust because, after two years, CORC's decision was still outstanding); *see also* *High v. Switz*, No. 9:17-CV-1067 (LEK/DJS), 2018 WL 3736794, at \*5 (N.D.N.Y. July 9, 2018), *report and recommendation adopted sub nom.*, 2018 WL 3730175 (N.D.N.Y. Aug. 6, 2018) (noting that the Second Circuit has not decided the precise issue set forth herein) (citing *Gizewski v. New York State Dep't of Corr. & Cmty. Supervision*, 692 Fed. App'x 668 (2d Cir. 2017)). In some instances, Courts in this District have found that a delay by CORC does not excuse a prisoner's failure to exhaust. *See* *Feliz v. Johnson*, No. 9:17-CV-1294 (DNH/ATB), 2019 WL 3491232, at \*1 (N.D.N.Y. Aug. 1, 2019) (citing, *inter alia*, *Casey v. Brockley*, No. 9:13-CV-01271, 2015 WL 8008728, at \*6 (N.D.N.Y. Nov. 9, 2015), *report-recommendation and order adopted by*, 2015 WL 7864161 (N.D.N.Y. Dec. 3, 2015) (finding five month delay by CORC in rendering decision on appeal did not excuse the plaintiff from exhaustion requirement)); *see also* *Staples v. Patane*, No. 9:17-CV-0703 (TJM/TWD), 2018 WL 7361009, at \*9 (N.D.N.Y. Dec. 7, 2018) (concluding that more than ten month delay was insufficient for finding unavailability).

In this case, CORC's records reveal that Bowie's appeal was received on August 29, 2017. Dkt. No. 29-3 at 8. "[P]ursuant to N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5(d)(3)(i), '[i]f a grievant does not receive a copy of the written notice of receipt within 45 days of filing an appeal [to CORC], the grievant should contact the IGP supervisor in writing to confirm that the appeal was filed and transmitted to CORC.' " *Fox v. Lee*, No. 9:15-CV-0390 (TJM/CFH), 2018 WL 8576600, at \*7 (N.D.N.Y. Dec. 18, 2018) (citing N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5(d)(3)(i)). The record herein lacks evidence that Bowie received confirmation or notice of the receipt of his appeal.

In *High*, the plaintiff filed an appeal with CORC on February 6, 2017. *High*, 2018 WL 3736794, at \*3. "[A]fter not hearing from CORC, [the] [p]laintiff sent CORC a letter asserting that CORC had exceeded the timeline and that he had therefore exhausted his administrative remedies, and would be filing a claim in Court." *Id.* On September 12, 2017, the plaintiff filed his federal complaint. *Id.* In February 2018, CORC issued a decision, one year after the plaintiff filed his appeal to CORC. *High*, 2018 WL 3736794, at \*3. The Court noted that "[t]here is no instruction [in the IGP] on what a grievant is to do if he or she has appealed to CORC, the final step, and has not received a response." *High*, 2018 WL 3736794, at \*5. In that case, the Court noted that, "under the hopefully unique facts of this case," the failure to exhaust was excused. *Id.* at \*5.

Here, CORC should have responded by September 29, 2017. *See* 7 NYCRR §§ 701.5(d)(3)(ii), 701.8(i). A decision however, was not issued until October 17, 2018, more than one year beyond the thirty days required by the IGP. While the Court is troubled by the excessive delay and lack of explanation for said delay by counsel or Seguin, the facts herein are distinguishable from *High* because Bowie has not offered any evidence suggesting that he received written notice that the appeal was filed or that he attempted to contact CORC or the IGRC at Great Meadow C.F. regarding the status of his appeal before commencing this action. Indeed, the Complaint is devoid of any reference to the grievance, the IGP, or Bowie's attempts to exhaust. *See generally*, Dkt. No. 1. Because the facts of this case are similar to those presented in *Staples* and *Fox*, on the record before the Court, the undersigned concludes that CORC's delay in rendering a decision did not excuse Bowie from the exhaustion requirement. *Staples*, 2018 WL 7361009 at \*9; *see also* *Hayes*, 2018 WL 7356343, at \*10 ("[...]

there is no indication in the record that plaintiff wrote to CORC regarding the status of his appeal and CORC further neglected to respond."); *Fox*, 2018 WL 8576600, at *7 (granting summary judgment because the plaintiff did not proffer evidence that he wrote to the IGRC or CORC inquiring as to the status of his appeals and "never contacted Eastern's [IGP supervisor] in writing ... to confirm that any of his appeals were filed and transmitted to CORC."*); see also Ulmer v. Bedore*, No. 9:15-CV-00497 (DNH/TWD), 2018 WL 7291499, at *7 (N.D.N.Y. Nov. 13, 2018) (finding no excuse for failure to fully exhaust without evidence in the record that Plaintiff contacted the IGRC or CORC inquiring as to the status of his appeal before filing his lawsuit); *see also Berkley v. Ware*, No. 9:16-CV-1326 (LEK/CFH), 2018 WL 3736791, at *6 (N.D.N.Y. July 6, 2018) ("Plaintiff has not proffered evidence that he wrote to the Franklin IGRC or CORC inquiring as to the status of his appeal.").

**\*7** Accordingly, it is recommended that Defendants' motion for summary judgment be granted based on Bowie's failure to exhaust his claims. Because "[f]ailure to exhaust administrative remedies is often a temporary, curable procedural flaw," and "[i]f the time permitted for pursuing administrative remedies has not expired, a prisoner ... can cure the defect by exhausting [the available remedies] and reinstating his suit." *Berry v. Kerik*, 366 F.3d 85, 87 (2d Cir. 2003) (amended 2004) (quoting *Snider v. Melindez*, 199 F.3d 108, 111–12 (2d Cir. 1999)). In this case, the alleged incidents in the underlying action occurred in 2017 and thus, are still within the applicable statute of limitations.

## IV. CONCLUSION

**WHEREFORE**, based on the findings set forth above, it is hereby:

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 29) be **GRANTED without prejudice**; and it is further

**RECOMMENDED** that the Complaint be **DISMISSED without prejudice**; and it is further

**ORDERED** that copies of this Report-Recommendation and Order be served on the parties in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) [7] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

**All Citations**

Slip Copy, 2019 WL 7606078

## Footnotes

1    This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

2    The Complaint was properly verified by declaration under 28 U.S.C. § 1746. Compl. at 5; *LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 65-66 (2d Cir. 1999) (holding that use of the language "under penalty of perjury" substantially complies with 28 U.S.C. § 1746).

3    Local Rule 7.1(a)(3) states:
     Summary Judgment Motions
     Any motion for summary judgment shall contain a Statement of Material Facts. The Statement of Material Facts shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the

fact is established. The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits. It does not, however, include attorneys' affidavits.

The opposing party shall file a response to the Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute. Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.

Local Rule 7.1(a)(3).

4    Defendants annexed exhibits to the motion. Dkt. No. 29-3. Plaintiff does not object or challenge the authenticity of the documents. Therefore, the Court will consider the exhibits in the context of the within motion. *See* *U.S. v. Painting known as Hannibal*, No. 07-CV-1511, 2010 WL 2102484, at *1, n.2 (S.D.N.Y. May 18, 2010) (citing *Daniel v. Unum Provident Corp.*, 261 F. App'x 316, 319 (2d Cir. 2008) ("[A] party is not required to authenticate documents on a summary judgment motion where, as here, authenticity is not challenged by the other party")). In light of the procedural posture of the case, the following recitation is derived from the record now before the Court, with all inferences drawn and ambiguities resolved in non-moving party's favor. *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).

5    In the Answer, Defendants pleaded, *inter alia*, the affirmative defense that Bowie failed to exhaust his administrative remedies. Dkt. No. 13 at ¶ 15.

6    All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to Plaintiff.

7    If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(c).

---

**End of Document**                                                           © 2021 Thomson Reuters. No claim to original U.S. Government Works.

2019 WL 5197139
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

James N. SCOTT, Plaintiff,
v.
D. UHLER; et al., Defendants.

No. 9:16-CV-403 (TJM/CFH)
|
Signed 07/31/2019

**Attorneys and Law Firms**

JAMES N. SCOTT, 96-A-5363, Plaintiff Pro Se, Great
Meadow Correctional Facility, Box 51, Comstock, New York
12821.

HON. LETITIA JAMES, Attorney General for the State
of New York, OF COUNSEL: RYAN W. HICKEY, ESQ.,
Assistant Attorney General, The Capitol, Albany, New York
12224-0341, Attorney for Defendants.

**REPORT-RECOMMENDATION AND ORDER** [1]

CHRISTIAN F. HUMMEL, U.S. MAGISTRATE JUDGE

**\*1** Plaintiff James N. Scott ("Scott"), an inmate who
was at all relevant times in the custody of the New York
State Department of Correction and Community Supervisions
("DOCCS"), brings this action pursuant to the Civil Rights
Act, 42 U.S.C. § 1983. Dkt. No. 1 ("Compl."); Dkt.
No. 55 ("Am. Compl."). Scott contends that defendants
deprived him of his constitutional rights under the Fourteenth
Amendment. See Am. Compl. Defendants move, pursuant to
Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56, to
dismiss the amended complaint. Dkt. No. 72. Scott opposes
defendants' motion. Dkt. No. 74. For the following reasons,
it is recommended that defendants' motion be granted, and
plaintiff's amended complaint be dismissed it its entirety
without prejudice.

**I. BACKGROUND**

**A. Procedural History**

On April 8, 2016, Scott and eight other inmates, commenced
this action with the filing of a pro se civil rights complaint.
See generally Compl. In a Decision and Order filed on April
15, 2016, the Court reviewed the complaint in accordance
with 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A,
and directed defendants to respond to the First and Fourteenth
Amendment claims. Dkt. No. 20. On July 25, 2016, in lieu of
an answer, defendants moved, pursuant to Fed. R. Civ. P.
12(b)(6), to dismiss the complaint. Dkt. No. 35. Scott opposed
the motion. Dkt. No. 38, 40.

In a Report-Recommendation and Order filed on February
8, 2017, the undersigned recommended granting defendants'
Motion to Dismiss and affording plaintiffs the opportunity
to amend the complaint within thirty days. Dkt. No. 47.
On March 17, 2017, Judge McAvoy adopted the Report-
Recommendation and Order in its entirety. Dkt. No. 52.
On April 12, 2017, Scott filed an amended complaint. Am.
Compl. On September 26, 2017, the Court issued an Order
dismissing the claims asserted by the remaining plaintiffs with
prejudice, and terminating from the action all plaintiffs other
than Scott. [2] Dkt. No. 56. In lieu of an answer to the amended
complaint, defendants filed a Motion to Dismiss. Dkt. No. 60.
Scott opposed. Dkt. No. 62.

In a Report-Recommendation and Order filed on May 24,
2018, the undersigned recommended (1) granting defendants'
Motion to Dismiss insofar as dismissing Scott's First
Amendment and Fourteenth Amendment Due Process claims,
and (2) denying defendants' Motion to Dismiss insofar as
dismissing Scott's Fourteenth Amendment Equal Protection
claims. Dkt. No. 63. On June 25, 2018, Judge McAvoy
adopted the Report-Recommendation and Order in its
entirety. Dkt. No. 65. On March 11, 2019, defendants filed
a Motion for Summary Judgment, pursuant to Fed. R. Civ.
P. 56(a), seeking dismissal of Scott's remaining Fourteenth
Amendment Equal Protection claims Dkt. No. 72. Scott
opposed the motion. Dkt. No. 74.

**B. Facts** [3]

**\*2** The facts are related herein in the light most favorable to
Scott as the non-moving party. See subsection II(A) infra. At
the relevant time, Scott was confined at Upstate Correctional
Facility ("Upstate C.F."). See generally Am. Compl. On
December 25, 2015, Scott and other Muslim inmates were not
permitted to attend a regularly-scheduled Jumm'ah service at

Upstate C.F. Id. at 4. [4] A request from Scott, the designated "inmate facilitator of the Islamic Religion" at Upstate C.F., to speak with the sergeant in command of the block went unanswered by correction staff. Id. at 5. Scott and other Muslim inmates were told that staff needed to "check and inquire as to how the procedures were going to take place on such a specific day[,]" but no officer "returned to the plaintiffs to inform them if they would be permitted to attend these services." Id. at 4. Defendant J. Fitchette ("Fitchette") was the Deputy Superintendent for Programs and responsible for "running the programs on Christmas day." Id. at 5, 7. Fitchette made the decision to cancel "all programs" after morning recreation, including Jumm'ah services. Id. at 8. When Imam Qubaisy arrived at Upstate C.F. on December 25, 2015, to perform the Jumm'ah service, defendant Lieutenant W. Trombly ("Trombly"), the watch commander, refused him entry into the facility. Id. at 8. Trombly informed Imam Qubaisy that Fitchette cancelled services with approval from defendant Superintendent D. Uhler ("Uhler"). Id.

On December 26, 2015, Scott submitted inmate grievance UST 57414-16. Dkt. No. 68 at 5. Scott complained that Muslim inmates were prohibited from holding their weekly Jumm'ah service on December 25, 2015. Id. On January 5, 2016, Upstate's Inmate Grievance Resolution Committee ("IGRC") issued its response, finding that Scott and the other consolidated grievants "were correct in saying that they should [have been] allowed to attend Jumm'ah services on 12/25/15 regardless [if] [it] was a holiday or not." Id. at 7. The response also stated, "corrective action [was] taken and the 12 building sergeant has been notified to make sure this doesn't happen again in the future." Id. Scott received IGRC's response on January 5, 2016, and appealed the decision that day. Id. On January 21, 2016, Superintendent Uhler upheld IGRC's decision. Id. at 9. On January 22, 2016, Scott appealed Superintendent Uhler's decision to the Central Office Review Committee ("CORC"). [5] Id. The CORC received Scott's appeal on February 11, 2016. Id. at 13.

On April 1, 2016, Scott commenced this action. Compl. at 7. On April 14, 2016, Scott wrote to the IGRC, checking on his appeal. Dkt. No. 68 at 11. On April 18, 2016, Scott again wrote to CORC, checking on his appeal. Id. at 12. On April 25, 2016, CORC responded, confirming it received Scott's appeal on February 11, 2016. Id. at 13. On May 18, 2016, CORC issued its decision upholding the Superintendent's determination. Dkt. No. 72-4 at 2; Dkt. No. 74-1 at 6.

## II. LEGAL STANDARDS [6]

### A. Summary Judgment

"A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party has the burden of showing the basis for its motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party satisfies this burden by "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' " that show an absence of a genuine issue of material fact. Id. There is a genuine issue of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "In determining whether summary judgment is appropriate, [the Court will] resolve all ambiguities and draw all reasonable inferences against the moving party." Skuble v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

**\*3** A non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (internal quotation marks omitted). Instead, a non-moving party must support his or her assertions with evidence showing a genuine issue of material fact. See id. at 586, 106 S.Ct. 1348. Even where a complaint or affidavit contains specific assertions, the allegations "may still be deemed conclusory if [they are] (1) 'largely unsubstantiated by any other direct evidence' and (2) 'so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint.' " Smith v. Woods, 9:03-CV-480 (DNH), 2006 WL 1133247, at \*3 & n.11 (N.D.N.Y. Apr. 24, 2006) (quoting Jeffreys v. City of New York, 426 F.3d 549, 554-55 (2d Cir. 2005)) (additional citations omitted). "When no rational jury could find in favor of the non-moving party because the evidence to support is so slight, there is no genuine issue of material fact and a grant of summary

judgment is proper." Gallo v. Prudential Services, Ltd. P'ship, 22 F.3d 1219, 1224 (2d. Cir. 1994).

In determining a summary judgment motion, "[f]actual disputes that are irrelevant or unnecessary will not be counted." Liberty Lobby, 477 U.S. at 247, 106 S.Ct. 2505. The nonmovant "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Id. at 257, 106 S.Ct. 2505. "Mere conclusory statements or reliance on the pleadings, ... will not suffice, ...." Celotex, 477 U.S. at 324, 106 S.Ct. 2548. The court must look to the substantive law to identify which facts are material. Liberty Lobby, 477 U.S. at 248, 106 S.Ct. 2505.

When, as here, a party seeks judgment against a pro se litigant, a court must afford a non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 U.S. 471, 477 (2d Cir. 2006). The Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," ... that a pro se litigant's submissions must be construed "liberally," ... and that such submissions must be read to raise the strongest arguments that they "suggest," .... At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, ... or arguments that the submissions themselves do not "suggest," ... that we should not "excuse frivolous or vexatious filings by pro se litigants," ... and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law ...

Triestman, 470 F.3d at 477 (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008).

### B. Exhaustion

The Prison Litigation Reform Act of 1995 ("PLRA"), which governs federal civil rights litigation by inmates, states, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as

are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). The exhaustion requirement also applies where the prisoner seeks relief not available in the administrative grievance process, such as monetary damages. Id. at 524, 122 S.Ct. 983. To satisfy the exhaustion requirement the inmate must "complete the administrative review process in accordance with the applicable procedural rules." Woodford v. Ngo, 548 U.S. 81, 88, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006); see also Jones v. Bock, 549 U.S. 199, 218, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007).

Although the Supreme Court of the United States has deemed exhaustion mandatory, courts must consider the PLRA's "textual exception to mandatory exhaustion." Ross v. Blake, —— U.S. ——, 136 S.Ct. 1850, 1858, 195 L.Ed.2d 117 (2016). With this exception, courts must consider if administrative remedies were "available" to a prisoner. Id. The Supreme Court identified three circumstances where administrative remedies may be unavailable to a prisoner. Id. at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end — with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. (citing Booth v. Churner, 532 U.S. 731, 736, 738, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001)). Second, "[a]n administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Third, administrative remedies are unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

### III. DISCUSSION

*4 Scott alleges that defendants violated his Fourteenth Amendment right to equal protection of the laws. See generally Am. Compl. Defendants move for summary judgment arguing that: (1) Scott "did not exhaust available administrative remedies prior to commencing this action,

in violation of the requirements of the Prison Litigation Reform Act ('PLRA')"; and (2) "the record is devoid of any evidence that Scott was treated differently from any similarly situated individual because of intentional and purposeful discrimination." Dkt. No. 72-1 at 3.

### A. Did Scott Exhaust Administrative Remedies? [7]

The PLRA requires inmates to exhaust administrative remedies before they can sue in federal court in prison condition cases. People v. Beldock, 212 F. Supp. 2d 141, 142 (W.D.N.Y. 2002); see McMillian v. Walters, No. 9:16-CV-0277 (MAD/DJS), 2017 WL 8894737, at *2 (N.D.N.Y. Dec. 18, 2017) ("The defendant bears the burden of proving that the administrative remedies available to the plaintiff were not exhausted prior to the initiation of a civil action.") (citation omitted).

Scott commenced this action on April 1, 2016, with the filing of his complaint. [8] Compl. at 7. CORC had not issued its decision on Scott's appeal at that time. Id. at 5. In response to a question on the form complaint asking for the final determination of his grievance Scott wrote, "Central Office in Albany refused to respond." Id. It is unclear what Scott means by "refused." Id. There is no indication that Scott reached out to CORC before he commenced this action, and there is no correspondence from CORC denying or dismissing his appeal before April 1, 2016. See generally Am. Compl. Scott wrote to CORC on April 18, 2016, and received confirmation that CORC received his appeal on February 11, 2016. Dkt. No. 68 at 12-13. Scott first wrote to CORC seventeen days after commencing this lawsuit. Id.; Compl. CORC denied Scott's appeal on May 18, 2016. Dkt. No. 72-4 at 2; Dkt. No. 74-1 at 6.

**\*5** If a prisoner has failed to properly follow each of the applicable steps before commencing litigation, he has failed to exhaust his administrative remedies. Ford v. Smith, No. 9:12-CV-1109 (TJM/TWD), 2014 WL 652933, at *3, (N.D.N.Y. Jan. 16, 2014) (citing Woodford v. Ngo, 548 U.S. 81, 93, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006)). Receiving a decision from CORC after filing a federal lawsuit does not satisfy the PLRA's requirement that administrative remedies be exhausted before filing suit, and any such action must be dismissed without prejudice. Neal v. Goord, 267 F.3d 116, 122-23 (2d Cir. 2001) overruled on other grounds

by Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). Although Scott's April 12, 2017, amended complaint states that the final result of his grievance was that "Central Office in Albany affirmed the determinations," the fact that CORC rendered a decision thirty-eight days after he commenced his federal lawsuit does not excuse him from fully exhausting his administrative remedies before commencing a federal action. See Dkt. No. 72-4 at 2, Am. Compl. Scott did not fully exhaust his administrative remedies before commencing this lawsuit on April 1, 2016, as CORC's decision was outstanding at that time. Dkt. No. 72-4 at 2; Dkt. No. 74-1 at 6.

### B. Availability of Administrative Remedies

Scott argues that the grievance process was unavailable to him because of CORC's delay in rendering its final determination. See Dkt. No. 74-1 at 11; Compl. at 5. Courts within this Circuit differ in their analyses of whether CORC's delay constitutes "unavailability" excusing a plaintiff's failure to exhaust his administrative remedies before commencing suit. Compare Fox v. Lee, No. 9:15-CV-0390 (TJM/CFH), 2018 WL 8576600, at *7 (N.D.N.Y. Dec. 18, 2018) (concluding that CORC's approximate four-month delay in responding to the plaintiff's appeal did not render the grievance process unavailable) and Berkley v. Ware, No. 9:16-CV-1326 (LEK/CFH), 2018 WL 3736791, at *6 (N.D.N.Y. July 6, 2018) (concluding "that CORC's approximately five month delay in rendering a decision did not excuse plaintiff from the exhaustion requirement.") with Rodriguez v. Reppert, No. 14-CV-671 (RJA/MJR), 2016 WL 11483439, *1 (W.D.N.Y. Sept. 28, 2016) (concluding that because CORC failed to respond within the 30-day time limit set by regulation, administrative remedies were unavailable to the plaintiff and dismissal for failure to exhaust was not appropriate) and High v. Switz, No. 9:17-CV-1067 (LEK/DJS), 2018 WL 3736794, at *5 (N.D.N.Y. July 9, 2018), report-recommendation adopted by 2018 WL 3730175 (N.D.N.Y. Aug. 6, 2018) (concluding that administrative remedies were unavailable to the plaintiff after CORC's nearly yearlong delay because "there is no direction on any action a grievant may take if he does not receive a response from CORC"; thus dismissal for failure to exhaust was not appropriate).

The Second Circuit has not addressed the exact issue of "unavailability" where a plaintiff has followed the grievance process and CORC has neglected to respond within the thirty-day time limit. High, 2018 WL 3736794, at *5 (citing Gizewski v. New York State Dep't of Corr. & Cmty. Supervision, 692 F. App'x 668, 670 (2d Cir. 2017) (summary order)); see also Fox, 2018 WL 8576600, at *7. However, courts within this Circuit have relied on the circumstances of each case when making this determination. See supra at 11-12. In High, this Court excused the plaintiff's failure to exhaust his administrative remedies,

> where the plaintiff had taken all steps he could to fulfill the last step of the appeal process; where CORC had neglected to respond, not just during the thirty day time limit, but for a period of numerous months thereafter; where CORC had further neglected to respond when Plaintiff wrote to CORC regarding the status of his appeal; and where CORC had only ultimately decided the appeal a year later, after the present [motion] had been filed.

2018 WL 3736794, at *5. However, in Berkley, this Court determined that, where the plaintiff commenced his federal action before receiving a response from CORC, "CORC's approximately five-month delay in rendering a decision did not excuse plaintiff from the exhaustion requirement." 2018 WL 3736791, at *6. The Berkley decision noted that the plaintiff had not mentioned the unavailability of the grievance process in his appeal to CORC and did not write to either the IGRC or CORC to check on his appeal before filing a federal lawsuit. Id. The length of delay and the plaintiff's attempts to reach out to CORC have been considerations this and other Courts in this Circuit have considered in determining whether administrative remedies were "available" to a plaintiff. See High, 2018 WL 3736794, at *5; see also Gizewski, 692 F. App'x at 668; Berkley, 2018 WL 3736791, at *6; Hayes v. Dahkle, No. 9:16-CV-1368 (TJM/CFH), 2018 WL 7356343, at *9 (N.D.N.Y. Dec. 11, 2018); Henderson v. Annucci, No. 14-

CV-445A, 2016 WL 3039687, at *10 (W.D.N.Y. Mar. 14, 2016).

**\*6** Here, there is no dispute that Scott filed a grievance with Upstate C.F.'s IGRC on December 26, 2015; received the IGRC's determination on January 5, 2016; appealed the decision that day; received Superintendent Uhler's decision on January 21, 2016; and appealed the decision to CORC on or about January 22, 2016. See Dkt. No. 68 at 5-9. CORC received Scott's appeal on February 11, 2016, and issued its final determination on May 18, 2016. Dkt. No. 68 at 11; Dkt. No. 72-4 at 2. Scott has not proffered evidence that he wrote Upstate C.F. IGRC or CORC inquiring as to the status of his appeal before filing this lawsuit. See Compl, Am. Compl., Dkt. No. 68; Berkley, 2018 WL 3736791, Hayes, 2018 WL 7356343. Additionally, when Scott checked with CORC he did not demonstrate that the exhaustion process was confusing to him. Id.; see e.g., Giano v. Goord, 380 F.3d 670, 676, 679 (2d Cir. 2004).

Scott also does not mention or provide evidence of CORC sending him a receipt after he filed his appeal. See generally Compl.; Am. Compl. The PLRA states that, "[i]f a grievant does not receive a copy of the written notice of receipt [by CORC] within 45 days of filing an appeal, the grievant should contact the IGP supervisor in writing to confirm that the appeal was filed and transmitted to CORC." 7 N.Y.C.R.R. § 701.5(d)(3)(i). Scott offers no evidence that he followed this step of the PLRA. See generally Compl.; Am. Compl. The letters Scott provides were both written after Scott commenced this action and more than forty-five days after he filed his appeal.[9] Dkt. No. 68 at 11,12. The letters also do not characterize the grievance process as unavailable or hard to follow. Id. In fact, in his April 18, 2016, letter to CORC Scott stated he would, "await your response in an effort to resolve this matter." Id. at 12. However, Scott filed a federal lawsuit eighteen days before sending that letter to CORC. Am. Compl; Dkt. No. 68 at 12.

The length of CORC's delay is relatively brief -- approximately two months. See Dkt. No. 72-4 at 30; Am. Compl. The shorter delay Scott experienced is comparable to the delays in cases where this Court concluded that administrative remedies were available to the plaintiffs. See Berkley, 2018 WL 3736791, at *6 (explaining that the relatively short CORC delay did not excuse the plaintiff from the exhaustion requirement), Hayes, 2018 WL 7356343,

at *9 (same); cf. High, 2016 WL 3039687, at *10 (explaining that the relatively long CORC delay, in addition to other factors, did excuse the plaintiff from the exhaustion requirement), Annucci, 2018 WL 3736794, at *4 (same). Considering the totality of the circumstances, Scott's failure to check with CORC as to the status of his appeal prior to commencing this action, and the relatively short delay in receiving a response from CORC leads the undersigned to conclude that plaintiff has failed to demonstrate that administrative remedies were unavailable to him. Berkley, 2018 WL 3736791, Hayes, 2018 WL 7356343. Thus, because Scott failed to exhaust his administrative remedies prior to commencing this action, it is recommended that defendants' motion be granted. [10] It is further recommended that plaintiff's amended complaint be dismissed without prejudice. Berry v. Kerick, 366 F.3d 85, 87 (2d Cir. 2004) (holding that dismissal without prejudice is appropriate where "a prisoner who brings suit without having exhausted these remedies can cure the defect by simply exhausting them and then reinstituting his suit.").

### IV. CONCLUSION

**\*7 WHEREFORE**, for the reasons stated herein, it is hereby

**RECOMMENDED**, that defendant's Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 (Dkt. No. 72) be **GRANTED**; and it is further

**RECOMMENDED**, that plaintiff's Amended Complaint (Dkt. No. 55) be **DISMISSED** in its entirety, **without prejudice**, and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72. [11]

**All Citations**

Slip Copy, 2019 WL 5197139

### Footnotes

1   This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c)

2   Although plaintiff Scott's Amended Complaint repeatedly references "plaintiffs," plaintiff Scott is the only remaining plaintiff in this action. The September 26, 2017, Order dismissed all other plaintiffs from this action with prejudice "because none of the plaintiffs other than James N. Scott filed an amended complaint or sought an extension of time to do so[.]" Dkt. No. 56.

3   In support of this motion, defendant filed a Statement of Material Facts. Local Rule 7.1 (a)(3) states:
    Summary Judgment Motions
    Any motion for summary judgment shall contain a Statement of Material Facts. The Statement of Material Facts shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established. The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits.

The opposing party shall file a response to the Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute. Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.

N.D.N.Y. L.R. 7.1 (a)(3).

4    Throughout this Report-Recommendation and Order, references to page numbers in items that appear on the docket refer to the pagination of the header numbers generated by CM/ECF, not to the page numbers used by the parties in the individual documents.

5    Both Scott and the three defendants assert that Scott appealed the Superintendent's decision to CORC on January 22, 2016. Dkt. No. 74-1 at 6, Dkt. No. 72-2 at ¶ 7. Two separate versions of Scott's appeal were submitted to the Court. One version has Scott's signature and is dated January 22, 2016, (Dkt. No. 72-4 at 17), and the other has Scott's signature and is dated January 25, 2016. Dkt. No. 68 at 9. The CORC file states that Scott brought his appeal on January 25, 2016. Dkt. No. 72-4 at 3. Scott says he brought his appeal on January 25, 2016, in a letter he wrote to the IGRC on April 14, 2016. Dkt. No. 68 at 11. The three-day difference in dates is not dispositive in this analysis but is noted.

6    All unpublished opinions cited by the Court in this Report-Recommendation & Order, unless otherwise noted, have been provided to plaintiff.

7    To exhaust administrative remedies, a DOCCS inmate must first file a complaint with an inmate grievance program ("IGP") clerk within twenty-one days of the alleged incident. N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5(a)(1). An IGP representative has sixteen calendar days to informally resolve the issue. Id. § 701.5(b)(1). If no informal resolution occurs, the IGRC must hold a hearing within sixteen days of receipt of the grievance and must issue a written decision within two working days after the conclusion of the hearing. Id. §§ 701.5(b)(2)(i)-(ii). If the determination is unfavorable to the inmate, the inmate may appeal the IGRC's determination to the facility superintendent within seven calendar days of receipt of the determination. Id. § 701.5(c)(1). If the superintendent's determination is unfavorable, the inmate may appeal to CORC within seven days after receipt of the superintendent's determination. Id. §§ 701.5(d)(i)-(ii). CORC must "review each appeal, render a decision on the grievance, and transmit its decision to the facility, with reasons stated, for the [inmate], the grievance clerk, the superintendent, and any direct parties within thirty (30) calendar days from the time the appeal was received." Id. § 701.5(d)(3)(ii). Parties do not dispute that at all relevant times, DOCCS had a three-step inmate grievance program in place. N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5.

8    Plaintiff's complaint is considered filed as of the date it was given to the prison official for forwarding. See Johnson v. Coombe, 156 F. Supp. 2d 273, 277 (S.D.N.Y. 2001); Noble v. Kelly, 246 F.3d 93, 97-98 (2d Cir. 2001).

9    As discussed, Scott appealed to CORC on or about January 22, 2016. See supra at note 5. CORC received his appeal on February 11, 2016. Dkt. No. 68 at 13. A grievant must contact the IGP supervisor within forty-five days of filing an appeal if they have not received a receipt from CORC. 7 N.Y.C.R.R § 701.5(d)(3)(i). March 8, 2016 is forty-five days after Scott filed his appeal. Scott's letter to Upstate IGRC is dated April 14, 2016, id. at 11, and his letter to CORC is dated April 18, 2016. Id. at 12. Both letters were written over a month past the forty-five-day period outlined in 7 N.Y.C.R.R § 701.5(d)(3)(i) and over two weeks after Scott filed this lawsuit.

10   As the undersigned concludes that plaintiff has failed to exhaust his administrative remedies prior to commencing suit or that administrative remedies were unavailable to him, the undersigned declines to reach the merits of the plaintiff's claims.

11   If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. Fed. R. Civ. P.

6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(C).

**End of Document**                                         © 2021 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:19-cv-01314-BKS-TWD   Document 44   Filed 04/22/21   Page 77 of 93

Livingston v. Hoffnagle, Not Reported in Fed. Supp. (2019)

2019 WL 409366
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Richard H. LIVINGSTON, Plaintiff,

v.

William HOFFNAGLE, Dustin
Hollenbeck, and Chris King, Defendants.

9:17-CV-1158 (MAD/DEP)
|
Signed 02/01/2019

**Attorneys and Law Firms**

RICHARD H. LIVINGSTON, 14-B-3634, Great Meadow
Correctional Facility, Box 51, Comstock, New York 12821,
Plaintiff pro se.

HON. BARBARA UNDERWOOD, OF COUNSEL: ERIK
BOULE PINSONNAULT, A.A.G., New York State Attorney
General, The Capitol, Albany, New York 12224, Attorney for
Defendants.

**MEMORANDUM-DECISION AND ORDER**

Mae A. D'Agostino, U.S. District Judge:

## I. INTRODUCTION

**\*1** Plaintiff, an inmate currently in the custody of the
New York State Department of Corrections and Community
Supervision ("DOCCS"), commenced this civil rights action
*pro se* on October 18, 2017. *See* Dkt. No. 1. Plaintiff's claims
arose on August 1, 2017, shortly after he was transferred
to Upstate Correctional Facility ("Upstate") in Malone, New
York, where he was to be housed in disciplinary confinement
for six months. *See* Dkt. No. 28 at 3. Plaintiff alleges that
on that day, Defendants ignored his requests to be placed in
protective custody and punished him for those requests by
"locking him in a holding cell, handcuffed and chained tight,"
depriving him of food, water, and the use of a bathroom from
1:00pm to 6:00pm, ignoring his pleas to loosen the handcuffs
and chains, threatening to issue a false misbehavior report,
and placing him in a cell with "a violent gang banger." *See
id.* at 3-4. According to Plaintiff, this caused him "misery,
anguish, psychological pain," and loss of sleep for several
days. *See* Dkt. No. 1 at 20-21.

Plaintiff filed two grievances with Upstate about the events
from August 1, 2017. *See* Dkt. No. 16 at 3. On September
26, 2017, the superintendent denied Plaintiff's grievances and
Plaintiff appealed to the Central Office Review Committee
("CORC"). *See id.* Before the CORC had a chance to issue an
opinion, on October 18, 2017, Plaintiff filed a Complaint with
this Court. *See* Dkt. No. 1. In his Complaint, Plaintiff alleges
Eighth Amendment claims of excessive force, failure-to-
protect, and conditions-of-confinement, a First Amendment
retaliation claim, a Section 1983 conspiracy claim, and
pendent state law claims of gross negligence, negligent
infliction of emotional distress, and intentional infliction of
emotional distress. *See* Dkt. No. 28 at 6.

On March 16, 2018, Defendants filed a Motion to Dismiss on
the grounds that Plaintiff failed to exhaust the administrative
remedies available to him before commencing this lawsuit.
*See* Dkt. No. 14-1 at 4. Plaintiff filed his Opposition on April
2, 2018. *See* Dkt. No. 16. On November 2, 2018, Magistrate
Judge David E. Peebles issued a Report and Recommendation
recommending that the case be dismissed because Plaintiff
did not exhaust all administrative remedies before filing the
Complaint. *See* Dkt. No. 28 at 22-23. Additionally, Magistrate
Judge Peebles found that the state law claims are barred by

🚩 Section 24 of the New York Correction Law. *See id.*

Plaintiff filed three objection letters to the Report and
Recommendation (together, the "Objections"). [1] In the first
Objection, filed on November 21, 2018, Plaintiff argues that
special circumstances excuse his failure to wait for a CORC
decision before commencing this action. *See* Dkt. No. 31 at
1-2. Plaintiff claims that although he repeatedly requested
video evidence of the incident on August 1, 2017, he "was
met with an outrageous charge of over three hundred dollars,
which is contrary to the DOCC[S] directive," and he was
"bound by time constraints" because the video evidence is
preserved for only one year. *See id.* Plaintiff argues that he
was "forced to immediately file suit in good faith in order to
get the courts [sic] intervention in securing the evidence." *See
id.* Additionally, Plaintiff states that the CORC has still not
rendered a decision, and this "stalling" was "done to impede
the prosecution of plaintiff's claims." *See id.* at 3.

**\*2** In a Supplemental Objection, filed on December 7,
2018, Plaintiff alleges that Defendants obstructed justice
by preventing him from obtaining the video evidence from
the incident, thereby causing the electronic spoliation of
evidence. *See* Dkt. No. 32 at 1-2. Now that the video evidence

Case 9:19-cv-01314-BKS-TWD   Document 44   Filed 04/22/21   Page 78 of 93

Livingston v. Hoffnagle, Not Reported in Fed. Supp. (2019)

is lost, Plaintiff asks the Court to find that his administrative remedies have been exhausted since he "will not have a fair and impartial appeal determination." *See id.* Plaintiff also requests that the Court impose sanctions on Defendants. *See id.*

Finally, on December 13, 2018, Plaintiff filed a Second Supplemental Objection, which largely repeated his earlier objections. *See* Dkt. No. 33 at 1-2. Plaintiff again claims that he was "forced to file a complaint immediately" because he was charged a fee of $311.35 for the video, and that the CORC's "delay in rendering a decision was used as a ploy" to prevent him from obtaining the video before it was destroyed. *See id.* Additionally, Plaintiff calls the fee "arbitrary and capricious." *See id.*

After carefully reviewing Plaintiff's Objections, the Court finds that Magistrate Judge Peebles did not err in his determination that the Complaint should be dismissed. Accordingly, the Court adopts the Report and Recommendation in its entirety.

## II. DISCUSSION

### A. Standard of Review

When a party files specific objections to a magistrate judge's report and recommendation, the district court makes a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, when a party files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

Plaintiff's Objections to the Report and Recommendation merely recite the same arguments that he presented to Magistrate Judge Peebles. First, Plaintiff claims that his failure to wait for a CORC decision was excused by the need to acquire video evidence of the incident before it was erased. *See* Dkt. No. 31 at 1-2; Dkt. No. 32 at 1-2; Dkt. No. 33 at 1-2. Plaintiff made this same argument in his Opposition to the Motion to Dismiss, *see* Dkt. No. 16 at 4, which Magistrate Judge Peebles addressed in the Report and Recommendation, *see* Dkt. No. 28 at 5 n.3. Similarly, Plaintiff's argument that the fee charged for the video was arbitrary and capricious is a mere recitation of his earlier argument that a FOIL officer overcharged him for the video, which he believes should have been free. *See* Dkt. No. 16 at 5. Finally, Plaintiff's argument that Defendants have obstructed justice by allowing for the electronic spoliation of evidence is an argument that he has raised numerous times, and Magistrate Judge Peebles addressed each time. *See* Dkt. No. 20 (denying Plaintiff's request for an order to preserve the video since the footage was no longer available, but specifically noting that the decision did not prejudice "plaintiff's right to argue entitlement to a spoliation jury instruction at the time of trial"); Dkt. No. 23 (denying Plaintiff's request for sanctions for spoliation of evidence). [2] Although these Objections "merely recite the same arguments" that Plaintiff presented to Magistrate Judge Peebles, in light of Plaintiff's *pro se* status, the Court will review the Report and Recommendation de novo.

### B. Analysis of Report and Recommendation

**\*3** A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor.

*See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]' " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility

Case 9:19-cv-01314-BKS-TWD   Document 44   Filed 04/22/21   Page 79 of 93

**Livingston v. Hoffnagle, Not Reported in Fed. Supp. (2019)**

standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief." ' " *Id.* (quoting *Twombly,* 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly,* 550 U.S. at 558, or where a plaintiff has "not nudged [his] claims across the line from conceivable to plausible," the complaint must be dismissed, *id.* at 570.

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell,* 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner,* 404 U.S. 519, 520 (1972) ) (other citations omitted). The Second Circuit has opined that the court is obligated to " 'make reasonable allowances to protect *pro se* litigants' " from inadvertently forfeiting legal rights merely because they lack a legal education. *Id.* (quoting *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir. 1983) ).

### 1. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") states that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement applies to all suits brought by inmates about prison life. *See Porter v. Nussle,* 534 U.S. 516, 532 (2002). Inmates must exhaust all available administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Giano v. Goord,* 380 F.3d 670, 675 (2d Cir. 2004), *abrogated on other grounds by Ross v. Blake,* 136 S. Ct. 1850 (2016). The failure to exhaust is an affirmative defense and, as such, it is the defendants' burden to establish that the plaintiff failed to meet the exhaustion requirements. *See Jones v. Bock,* 549 U.S. 199, 216 (2007); *Johnson v. Testman,* 380 F.3d 691,

695 (2d Cir. 2004); *Key v. Toussaint,* 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

**\*4** The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *See Jones,* 549 U.S. at 218-19 (citing *Woodford v. Ngo,* 548 U.S. 81, 88-94 (2006) ). New York State has a three-step administrative review process. First, a grievance is submitted to the Inmate Grievance Resolution Committee ("IGRC") which reviews and investigates the formal complaint before issuing a written determination. *See* N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(b). Second, if the IGRC decision is appealed, the superintendent of the facility issues a decision after reviewing the IGRC's determination. *See id.* at § 701.5(c). Third, if the superintendent's decision is appealed, the final administrative decision is made by the CORC. *See id.* at § 701.5(d). After all three of these levels of review are exhausted, the prisoner may seek relief in federal court pursuant to Section 1983. *See Bridgeforth v. Bartlett,* 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing *Porter v. Nussle,* 534 U.S. 516, 524 (2002) ) (other citation omitted).

To the extent a civil rights claim must be exhausted by the grievance process, completion of the three-tiered process, through and including a final decision by CORC, must be completed before a civil action asserting that claim may be filed. *See, e.g., Casey v. Brockley,* No. 9:13-CV-1271, 2015 WL 8008728, *5 (N.D.N.Y. Nov. 9, 2015) ("Receiving a decision from CORC *after* commencing litigation does not satisfy PLRA's requirement that administrative remedies is exhausted *before* filing suit, and any claim not exhausted prior to commencement of the suit must be dismissed") (citing *Neal v. Goord,* 267 F.3d 116, 122-23 (2d Cir. 2001), *overruled on other grounds, Porter v. Nussle,* 534 U.S. 516 (2002) ). "[A] post-exhaustion amendment of the complaint cannot cure an exhaustion defect existing at the time the action was commenced." *Guillory v. Haywood,* No. 9:13-CV-1564, 2015 WL 268933, *11 (N.D.N.Y. Jan. 21, 2015) (citing *Neal,* 267 F.3d at 122) (other citation omitted).

Although administrative remedies generally must be exhausted, a prisoner need not exhaust remedies if they are not "available." *Ross,* 136 S. Ct. at 1854-55. As the Second

Case 9:19-cv-01314-BKS-TWD   Document 44   Filed 04/22/21   Page 80 of 93

Livingston v. Hoffnagle, Not Reported in Fed. Supp. (2019)

Circuit held in *Williams v. Priatno*, there are several ways in which administrative remedies may be unavailable:

> First, an administrative remedy may be unavailable when "it operates as a simple dead end - with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." In other words, "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it. Third, an administrative remedy may be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

829 F.3d 118, 123-24 (2d Cir. 2016) (quoting *Ross,* 136 S. Ct. at 1859-60).

In *Ross*, the Supreme Court rejected the Second Circuit's "extra-textual" exception to the PLRA's exhaustion requirement which allowed the taking into account of "special circumstances" to justify a prisoner's failure to comply with administrative procedural requirements. 136 S. Ct. at 1856-57. Rather, it held that the only limit to the PLRA's exhaustion requirement "is the one baked into its text: [a]n inmate need exhaust only such administrative remedies as are 'available.' " *Id.* at 1862; *see also Williams,* 829 F.3d at 123 (recognizing that *Giano* and *Hemphill v. New York,* 380 F.3d 680 (2d Cir. 2004), which provided a "special circumstances" exception to the PLRA's exhaustion requirement, were abrogated in part by *Ross* ). As such, the Supreme Court found that an inmate's mistaken belief that he has exhausted his administrative remedies, even where that belief seems reasonable, does not make the administrative remedies unavailable. *Ross,* 136 S. Ct. at 1858.

**\*5** In the present matter, the Court finds that Magistrate Judge Peebles correctly determined that Plaintiff did not exhaust the administrative remedies before filing his Complaint. As Magistrate Judge Peebles properly noted, the Court may consider the exhaustion issue on a Rule 12(b)(6) motion when it is clear from the face of the complaint that the plaintiff has failed to exhaust. *See* Dkt. No. 28 at 15; *see also Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 74-75 (2d Cir. 1998); *Lewis v. Havernack,* No. 12-CV-0031, 2013 WL 1294606, \*4 (N.D.N.Y. Mar. 28, 2013). Plaintiff mailed the Complaint in this action only five days after his

appeal was acknowledged by the CORC. *See* Dkt. No. 28 at 9-10. Plaintiff "seemingly acknowledges that he rushed to file this action, apparently in an attempt to ensure that the relevant audio and video recordings were preserved by the DOCCS." *See id.* at 16. However, as Magistrate Judge Peebles concluded, by prematurely filing the Complaint, Plaintiff "effectively truncated the [Inmate Grievance Program] and deprived the CORC of its opportunity to review the matter." *See id.* The Court agrees with Magistrate Judge Peebles and finds that the Complaint must be dismissed for failure to exhaust.

Plaintiff argues that special circumstances excuse his failure to exhaust because he needed to acquire the video evidence before it was erased. *See* Dkt. No. 16 at 5; Dkt. No. 31 at 1-2; Dkt. No. 32 at 1-2; Dkt. No. 33 at 1-2. Plaintiff made this argument in his Opposition to the Motion to Dismiss, and Magistrate Judge Peebles considered it in the Report and Recommendation. *See* Dkt. No. 16 at 4-5 (claiming that he was forced to commence this litigation to preserve the video after he was "stonewalled" in his attempts to obtain the video footage); Dkt. No. 28 at 5 n.3 (acknowledging that Plaintiff "repeatedly" requested the video recording). The Supreme Court has rejected the notion that "special circumstances" may justify a prisoner's failure to comply with administrative procedural requirements. *See Ross,* 136 S. Ct. at 1856-57. Therefore, Magistrate Judge Peebles did not err in finding that no special circumstances excused the exhaustion requirement here. *See* Dkt. No. 28 at 10-18.

Likewise, Magistrate Judge Peebles properly rejected Plaintiff's claim that his failure to exhaust was excused by the CORC's "stalling." *See id.* at 17 n.10 (stating that "Plaintiff's frustration with the CORC's failure to comply with its thirty-day obligation under the regulatory scheme, while understandable, does not compel a different result given the chronology of the relevant events"). This Court agrees that the CORC's delay does not excuse Plaintiff's failure to exhaust the administrative remedies. *See Cohen v. Welch,* No. 16-CV-593, 2017 WL 3311244, \*6 (N.D.N.Y. July 11, 2017), report and recommendation adopted, 2017 WL 3309713 (N.D.N.Y. Aug. 2, 2017) (holding that the fact that "grievances were never answered does not excuse [a plaintiff's] failure to exhaust").

Finally, Magistrate Judge Peebles concluded that since Plaintiff "did not allow the time period prescribed by the regulatory scheme to elapse prior to commencement, I am unable to conclude that administrative remedies were

unavailable to him." *See* Dkt. No. 28 at 18. Although, as Magistrate Judge Peebles noted, "the outcome could very well have been different if plaintiff had, in fact, permitted the thirty-day period to elapse prior to commencing this suit," *see id.* at 18 n.1, we have routinely dismissed cases where the plaintiff prematurely files suit and attempts to correct that error later. *See Scott v. Miller*, No. 17-CV-520, 2018 WL 3951339, \*4 (N.D.N.Y. Aug. 13, 2018) (dismissing a case where an inmate failed to complete the appeals review process prior to filing the complaint); Neal, 267 F.3d at 122 (finding that "[s]ubsequent exhaustion after suit is filed ... is insufficient"). Thus, the Court agrees that Plaintiff has not shown that administrative remedies were unavailable to him. *See* Dkt. No. 28 at 18-19.

In light of the foregoing, the Court adopts Magistrate Judge Peebles's recommendation that Plaintiff's civil rights claims should be dismissed.

### *2. State Law Claims*

**\*6** In addition to the civil rights claims, Plaintiff brings state law claims of gross negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress. *See id.* at 6. Defendants argue that (1) the Court should not exercise supplemental jurisdiction over the state law claims and (2) those claims should be dismissed based upon New York Correction Law § 24. *See* Dkt. No. 14-1 at 9-12. Magistrate Judge Peebles found that Section 24 precludes Plaintiff from bringing common law causes of action against Defendants and recommended that Plaintiff's state law claims be dismissed with prejudice. *See* Dkt. No. 28 at 19-20.

District courts have supplemental jurisdiction over all state-law claims that are so related to federal claims over which they exercise original jurisdiction that they form part of the same case or controversy under Article III of the Constitution. 28 U.S.C. § 1367(a). Application of supplemental jurisdiction is discretionary, and "it requires a balancing of the considerations of comity, fairness to the litigants, judicial economy, and the avoidance of needless decisions of state law." *Federman v. Empire Fire & Marine Ins. Co.*, 597 F.2d 798, 809 (2d Cir. 1979) (citation omitted). When a court lacks subject matter jurisdiction, dismissal is mandatory. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). Therefore, although courts "construe a *pro se*

plaintiff's complaint liberally, a plaintiff attempting to bring a case in federal court must still comply with the relevant rules of procedural and substantive law, including establishing that the court has subject matter jurisdiction over the action." *Ally v. Sukkar*, 128 Fed. Appx. 194, 195 (2d Cir. 2005) (internal citation omitted).

It is well settled that when this Court exercises pendent jurisdiction over a state cause of action, it must apply the substantive law. *See Baker v. Coughlin*, 77 F.3d 12, 15 (2d Cir. 1996) (citations omitted) (explaining that the plaintiff's state law claims must be dismissed because "a federal court acts essentially as a state court in addressing pendent state law claims"); *Parris v. New York State Dep't of Corr. Servs.*, 947 F. Supp. 2d 354, 365 (S.D.N.Y. 2013); *Joy v. New York*, No. 5:09-CV-841, 2010 WL 3909694, \*4 (N.D.N.Y. Sept. 30, 2010). In pertinent part, Section 24 of New York Correction Law provides that:

> 1. No civil action shall be brought in any court of the state ... against any officer or employee of the department ... in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.

> 2. Any claim for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties of any officer or employee of the department shall be brought and maintained in the court of claims as a claim against the state.

N.Y. Correction Law § 24. Section 24 governs substantive rights; it is not procedural. *See Baker*, 77 F.3d at 15 (holding that "by its plain terms, § 24 governs the substantive rights of corrections officers by conferring upon them an immunity from liability for activities that fall within the scope of the statute").

Magistrate Judge Peebles correctly found that Section 24 applies because Defendants are employed by DOCCS and the alleged conduct fell within the scope of their employment. *See* Dkt. No. 28 at 20. For purposes of Section 24, courts have looked to the following factors to determine whether actions fall within the actor's scope of employment:

*7 the connection between the time, place and occasion for the act; the history of the relationship between employer and employee as spelled out in actual practice; whether the act is one commonly done by any employee; the extent of departure from normal methods of performance; and whether the specific act was one that the employer could reasonably have anticipated.

*Ierardi v. Sisco*, 119 F.3d 183, 187 (2d Cir. 1997) (quoting *Riviello v. Waldron*, 47 N.Y.2d 297, 303 (1979) ). Here, the alleged conduct occurred while Defendants were at work performing their job duties. *See* Dkt. No. 1 at 10-13; Dkt. No. 16 at 6. Since Defendants were clearly acting within the scope of their employment, Magistrate Judge Peebles was correct to conclude that Section 24 applies. Therefore, the Court adopts Magistrate Judge Peebles's recommendation that the state law claims are barred by New York Correction Law § 24.

### 3. No Opportunity to Amend

When a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citations omitted). Of course, an opportunity to amend is not required where "[t]he problem with [the plaintiff's] cause of action is substantive" such that "better pleading will not cure it." *Id.* (citation omitted). Thus, "[w]here granting leave to amend is unlikely to be

productive ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (collecting cases).

Here, Magistrate Judge Peebles found that the exhaustion error would not be cured by permitting Plaintiff leave to amend. *See* Dkt. No. 28 at 21-22. The Court agrees that amendment will not cure this deficiency. *See e.g., Gayot v. Perez*, No. 16-CV-8871, 2018 WL 6725331, *7 (S.D.N.Y. Dec. 21, 2018) (finding that filing an amended complaint four months after an appeal to the CORC did not cure the fact that the initial complaint was filed before the plaintiff had exhausted all administrative remedies). Therefore, the Court agrees with Magistrate Judge Peebles's recommendation to deny leave to amend.

### III. CONCLUSION

Having carefully reviewed the Report and Recommendation, Plaintiff's Objections and the applicable law, the Court finds that Magistrate Judge Peebles employed the proper legal standards, accurately recited the facts, and correctly applied the law to those facts. As such, the Court hereby

**ORDERS** that the November 2, 2018 Report and Recommendation (Dkt. No. 28) is **ADOPTED in its entirety**; and the Court further

**ORDERS** that Plaintiff's Complaint is **DISMISSED WITHOUT LEAVE TO AMEND**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2019 WL 409366

### Footnotes

1    Contrary to Plaintiff's assertion that he was "well within [his] rights to file" the supplemental objections, *see* Dkt. No. 33 at 1, in this District, a party must get the court's permission before filing supplemental papers. *See Pro Se/Self Representation: Before Submitting Papers to the Court*, https://www.nynd.uscourts.gov/submitting-

**Livingston v. Hoffnagle, Not Reported in Fed. Supp. (2019)**

Case 9:19-cv-01314-BKS-TWD   Document 44   Filed 04/22/21   Page 83 of 93

papers-court ("Supplemental papers, even if they relate to your complaint, petition, or motion, may NOT be filed without prior Court approval"). Nevertheless, in light of Plaintiff's *pro se* status, this Court will exercise its discretion to consider the arguments raised in all three objections. *See Snyder v. Graham*, No. 09-CV-10307, 2012 WL 983536, *4 (S.D.N.Y. Mar. 22, 2012) (citing *Ruggiero v. WarnerLambert Co.*, 424 F.3d 249, 252 (2d Cir. 2005) ) (other citation omitted) (finding that courts have discretion to consider documents filed in violation of procedural rules).

2    Plaintiff cites to *Treppel v. Biovail Corp.*, 249 F.R.D. 111, 121 (S.D.N.Y. 2008) to support his request for sanctions against Defendants. *See* Dkt. No. 32 at 2. However, as the court held in *Treppel*, sanctions require that the party be at least negligently culpable in the destruction of the evidence. *See id.* Nothing in the record suggests the Defendants destroyed the videotapes. *See* Dkt. No. 28 at 5 n.3 (discussing how the company that operates the video cameras at Upstate lost this video "due to equipment failure and loss of data in the hard drive"). As such, the Court will not issue sanctions against Defendants due to spoliation of evidence. *See Livingston v. Kelly*, 423 Fed. Appx. 37, 42 n.5 (2d Cir. 2011) (finding no error in a district court's failure to factor a spoliation sanction into its consideration of a summary judgment motion, particularly because "there is no evidence that he is the party responsible for the destruction").

---

**End of Document**                                   © 2021 Thomson Reuters. No claim to original U.S. Government Works.

2009 WL 2033085
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Christopher CHISHOLM, Plaintiff,

v.

NEW YORK CITY DEPARTMENT
OF CORRECTION, et al., Defendants.

No. 08 Civ. 8795(SAS).
|
July 13, 2009.

West KeySummary

**1**  **Civil Rights** 🗝 Criminal law enforcement;
prisons

A prisoner failed to exhaust administrative
remedies prior to bringing a § 1983 action
alleging that his finger was injured by the closing
of a slot on his cell, and, thus, his action was
barred by the Prison Litigation Reform Act
(PLRA). He filed a grievance alleging "injuries,
lack of professionalism and poor work ethics."
After receiving a response that it was a "non-
grievable issue" he appealed to the warden,
commissioner, and the New York City Board
of Corrections. However, the prisoner failed to
request a hearing on his grievance or appeal
as required by the Inmate Grievance Resolution
Program. 42 U.S.C.A. § 1983; Civil Rights
of Institutionalized Persons Act, § 7(a), 🚩 42
U.S.C.A. § 1997e(a).

23 Cases that cite this headnote

**Attorneys and Law Firms**

Derrick James, Comstock, NY, pro se.

David A. Rosinus, Jr., Assistant Corporation Counsel, New
York, NY, for Defendants.

*MEMORANDUM OPINION AND ORDER*

SHIRA A. SCHEINDLIN, District Judge.

**I. INTRODUCTION**

 **\*1**  Christopher Chisholm, presently incarcerated and
proceeding pro se, brings this action against the New
York City Department of Correction ("DOC") pursuant to
section 1983 of Title 42 of the United States Code. [1]

Defendants now move to dismiss pursuant to Federal Rule
of Civil Procedure 12(c). For the reasons stated below, the
motion to dismiss is granted.

**II. BACKGROUND** [2]

On February 2, 2008, Chisholm was escorted to his cell
where the back food slot was left open. The back slot then
"slammed shut" on his finger and released after fifteen to
twenty seconds. [3] At the time of the incident, CO Lebron
was stationed at the top tier. [4] Chisholm received medical
attention an hour later, when a doctor cleaned, sutured and
dressed the wound, and then placed his finger into a splint.

Chisholm filed a grievance report at the Otis Bantum
Correctional Center ("OBCC"), which has adopted the Inmate
Grievance Resolution Program ("IGRP") of the DOC. [5] His
grievance alleged "injuries, lack of professionalism and poor
work ethics." [6] After receiving a response that this was a
"non-grievable issue," [7] Chisholm appealed to the Warden,
Commissioner, and the New York City Board of Correction. [8]
Chisholm received no response regarding his appeal. He did
not request a hearing on his grievance or appeal to the Central
Office Review Committee ("CORC"). [9] On September 5,
2008, he filed a complaint with this Court.

On April 20, 2009, defendants filed and served a motion to
dismiss the Complaint in its entirety. On May 19, 2009, this
Court sent Chisholm an Order directing him to file opposition
papers to defendants' motion by July 3, 2009. [10] Despite
defendants' notice and this Court's Order, Chisholm failed to
submit any opposition papers.

**III. LEGAL STANDARD**

**A. Exhaustion of Administrative Remedies** [11]

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust all administrative remedies before bringing an action regarding prison conditions. [12] Failure to exhaust is an absolute bar to an inmate's action in federal court: "[section] 1997e(a) requires exhaustion of available administrative remedies *before* inmate-plaintiffs may bring their federal claims to court at all." [13] Furthermore, the United States Supreme Court has held that "the PLRA's exhaustion requirements applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." [14]

The IGRP is a "well-established" five-step administrative grievance process in New York state prisons. [15] Under the IGRP,

> [i]nmates must file their complaints with the Inmate Grievance Resolution Committee ("IGRC") which attempts to informally resolve the grievance within 5 working days. If there is no resolution, the inmate may request a formal hearing before the IGRC, which will issue a recommendation within three working days. The inmate may appeal the IGRC's decision to the Warden, who has five working days to render a decision. The inmate may then appeal the Warden's decision to the [CORC] which has fifteen working days to render a decision. The inmate may then appeal the CORC decision to the Board of Correction. Only after these steps are followed can an inmate file suit in the district court. [16]

**\*2** Courts have repeatedly emphasized that a prisoner must pursue all levels of the administrative procedure, even when he does not receive a response to his initial grievance, in order to properly exhaust, and "[s]trict compliance" with the procedure is required. [17]

While the Second Circuit has recognized that the PLRA's exhaustion requirement is mandatory, it has also recognized three exceptions to the exhaustion requirement:

> when (1) administrative remedies are not available to the prisoner; (2) defendants have either waived

> the defense of failure to exhaust or acted in such a way as to estop them from raising the defense; or (3) special circumstances, such as reasonable misunderstanding of the grievance procedure, justify the prisoner's failure to comply with the exhaustion requirement. [18]

The Second Circuit has held that " '[a]lert[ing] the prison officials as to the nature of the wrong for which redress is sought,' ... does not constitute proper exhaustion." [19] "[N]otice alone is insufficient because '[t]he benefits of exhaustion can be realized only if the prison grievance system is given fair opportunity to consider the grievance' and '[t]he ... system will not have such an opportunity unless the grievance complies with the system's critical procedural rules.' " [20]

## IV. DISCUSSION

The pleadings before the Court reveal no material dispute of fact. Chisholm has been given a full and fair opportunity to respond to the motion for judgment on the pleadings. Accordingly, a *sua sponte* grant of the motion based on his failure to exhaust administrative remedies may be appropriate.

The instant motion presents three issues: (1) whether administrative remedies were available to Chisholm; (2) whether defendants are estopped from asserting exhaustion as a defense; and (3) whether special circumstances excuse Chisholm' failure to exhaust administrative remedies.

To be available, an administrative remedy must "afford the possibility of some relief for the action complained of." [21] In some circumstances, the behavior of the defendant may render administrative remedies unavailable. [22] To the extent that a plaintiff lacks available administrative remedies, the PLRA's exhaustion requirement does not apply. [23]

It is undisputed that Chisholm did not request a hearing on his grievance or appeal, as required by the IGRP. [24] By failing to file any opposition papers, Chisholm has not contested defendants' argument that he failed to exhaust all administrative remedies available to him.

Chisholm has also not alleged any facts to support an exemption from the exhaustion requirement. In his Complaint, he does not allege that all available administrative remedies were procedurally unavailable at OBCC or were rendered unavailable by any action of any defendant. Chisholm also does not allege that any defendant ever acted in any way to estop defendants from asserting non-exhaustion as a defense, or that any special circumstances may exist to justify his failure to exhaust all possible remedies.

**\*3** Because Chisholm did not satisfy the exhaustion requirement and has not presented any facts on which this Court could base an exception, his Complaint is dismissed without prejudice to give Chisholm the opportunity to re-file

once he has exhausted all remedies, as required by PLRA section 1997e(a).

## V. CONCLUSION

Accordingly, defendants' motion to dismiss is granted. The Clerk of the Court is directed to close this motion [Docket No. 14] and this case.

SO ORDERED.

## All Citations

Not Reported in F.Supp.2d, 2009 WL 2033085

---

## Footnotes

1    Although Correction Officer ("CO") Ricardo Lebron was originally named a defendant, the Court dismissed him as a party to this action on April 6, 2009 at a pre-trial conference.

2    *See* Complaint ("Compl.") II(D).

3    *See id.*

4    Although neither party identifies who shut the door, Chisholm alleges CO Lebron was responsible because "he was the only officer that was working the toptier ... [and] paid no attention ... [to his] cries for help." *See id.*

5    *See id.* ¶ IV(E).

6    *Id.* ¶ F(1).

7    *Id.* ¶ F(2).

8    *See id.* Neither party has disclosed the identities of the Warden or Commissioner, neither of whom have been named as parties in this action.

9    *See id.* ¶ F(2).

10   *See* 5/19/09 Order at 2.

11   Although defendants raise this affirmative defense in their Answer, they did not raise it in their 4/21/09 Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint Pursuant to Fed.R.Civ.P. 12(c) ("Def.Mem."); *see also* Answer ¶ 13. Defendants instead moved for judgment on the pleadings based on Chisholm's failure to state a claim. *See* Def. Mem. at 1–2. District courts are widely acknowledged to possess the power to dismiss a Complaint *sua sponte. See Celotex Corp. v. Catrett,* 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When it appears clearly upon the record that all of the evidentiary materials that a party might submit are before the court, a *sua sponte* grant of a motion to dismiss may be appropriate. *See Ramsey v. Coughlin,* 94 F.3d 71, 73–74 (2d Cir.1996) (citing *Coach Leatherware Co. v. AnnTaylor, Inc.,* 933 F.2d 162, 167 (2d Cir.1991)).

12   *See* 42 U.S.C. § 1997e(a) (providing that: "[N]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." ("section 1997"). *See also Porter v. Nussle,* 534 U.S. 516, 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002).

13   *Neal v. Goord,* 267 F.3d 116, 122 (2d Cir.2001) (quotation marks and citation omitted, emphasis in original).

14   *Porter,* 543 U.S. at 532 (2002).

15   *See, e.g., Williams v. City of New York,* No. 03 Civ. 5342, 2005 WL 2862007, at *27 (S.D.N.Y. Nov.4, 2005).

16   *Bligen v. Griffen,* No. 06 Civ. 4400, 2007 WL 430427, at *6 (S.D.N.Y. Feb. 8, 2007).

17   *See, e.g., George v. Morrison,* No. 06 Civ. 3188, 2007 WL 1686321, at *14–15 (S.D.N.Y. June 11, 2007) (citing cases); *McCoy v. Goord,* 255 F.Supp.2d 233, 246 (S.D.N.Y.2003) (internal quotations omitted).

18   *Ruggiero v. County of Orange,* 467 F.3d 170, 175 (2d Cir.2006).

19   *Marias v. Zenk,* 495 F.3d 37, 44 (2d Cir.2007) (quoting *Braham v. Clancy,* 425 F.3d 177, 184 (2d Cir.2005) and citing *Woodford v. Ngo,* 548 U.S. 81, 94–95, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006) (finding plaintiff "cannot satisfy the PLRA's exhaustion requirement solely by filing two administrative tort claims, or by making informal complaints to [prison] staff")).

20   *Id.* (quoting *Woodford,* 549 U.S. at 95).

21   *Booth v. Churner,* 532 U.S. 732, 738 (2001).

22   *See Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004) (remanding case to the district court to determine whether some seemingly available remedies were rendered unavailable by threats made by correction officers).

23   *See id.*

24   *See* Compl. ¶ IV(3); *see also* Answer ¶ 13.

---

**End of Document**                                   © 2021 Thomson Reuters. No claim to original U.S. Government Works.

2005 WL 1668627
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Eduardo ACOSTA, Plaintiff,
v.
CORRECTIONS OFFICER DAWKINS,
Corrections Officer Camacho, Defendants.

No. 04 Civ. 6678(RMB).
|
July 14, 2005.

*DECISION AND ORDER*

BERMAN, J.

I. Background

**\*1** On or about August 18, 2004, *pro se* plaintiff Eduardo Acosta ("Acosta" or "Plaintiff"), an inmate at Sing Sing Correctional Facility ("Sing Sing"), filed this action against defendants Corrections Officers Paul Dawkins ("Dawkins" or "Defendant") and Ferdinand Camacho ("Camacho"), pursuant to 42 U .S.C. § 1983. [1] Plaintiff contends that on the morning of January 25, 2004, Dawkins and Camacho used excessive and unjustified force against him, causing physical injuries for which he required treatment at the Sing Sing facility hospital.

Defendant moved to dismiss Plaintiff's complaint ("Complaint") on February 25, 2005, ("Motion to Dismiss" or "MTD"), because it "fails to allege that plaintiff has exhausted his administrative remedies as required by the Prisoners' Litigation Reform Act of 1995 ." (MTD at 1.) Plaintiff opposed the motion in a response dated May 3, 2005 (but filed on June 10, 2005) ("Plaintiff's Opposition" or "Pl. Opp."), arguing that he "attempted to get a response from the Inmate Grievance Coordinator at the Sing Sing facility." (Pl. Opp. at 3.) On May 27, 2005, Defendant submitted a reply ("Defendant's Reply" or "Def. Rep."), contending that "there is nothing in plaintiff's response or otherwise to suggest that the IGP [Inmate Grievance Procedure] was not fully available" to Plaintiff. (Def. Rep. at 9.) On June 10, 2005, Plaintiff filed an affidavit in opposition to Defendant's reply ("Plaintiff's Affidavit" or "Pl. Aff."), arguing that "he has

no control over the Grievance Office once he mails them a grievance." (Pl. Aff. at 2.)

For the reasons set forth below, Defendant's motion to dismiss is granted and the case is dismissed without prejudice.

II. Legal Standard

In reviewing a motion to dismiss, the court "must accept as true the factual allegations in the complaint and draw all inferences in favor of the plaintiff." *Perkins v. Obey,* No. 00 Civ. 1691, 2005 U.S. Dist. LEXIS 2774, at \*7 (S.D.N.Y. Feb. 23, 2005); *see also Martinez v. Williams,* 349 F.Supp.2d 677, 680 (S.D.N.Y.2004). Dismissal of the claim is proper when "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Morales v. Mackalm,* 278 F.3d 126, 131 (2d Cir.2001). "The issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims." *Madison v. Mazzuca,* No. 02 Civ. 10299, 2004 U.S. Dist. LEXIS 26137, at \*18 (S .D.N.Y. Dec. 30, 2004). "Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Gatlin v. Med. Staff,* No. 02 Civ. 3732, 2003 U.S. Dist. LEXIS 14986, at \* \*7-8 (S.D.N.Y. Aug. 22, 2003).

"When considering the claims of a *pro se* plaintiff, the court is obligated to construe the pleadings liberally in plaintiff's favor, and interpret them to raise the strongest arguments they suggest." *Rivera v. Pataki,* No. 04 Civ. 1286, 2005 U.S. Dist. LEXIS 2747, at \*26 (S.D.N.Y. Feb. 14, 2005). Yet, *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Scott v. Gardner,* 287 F.Supp.2d 477, 483 (S.D.N.Y.2003).

**\*2** In deciding a motion to dismiss, a court may consider the pleadings and exhibits attached thereto, statements or documents incorporated by reference in the pleadings, and matters of which judicial notice may be taken. *Hattley v. Goord,* No. 02 Civ. 2339, 2003 U.S. Dist. LEXIS 4856, at \*29 (S.D.N.Y. Mar. 27, 2003). "[C]ourts routinely consider extrinsic material on a motion to dismiss for nonexhaustion, without first requiring conversion [to summary judgment] pursuant to Rule 12(b) or (c)." *McCoy v. Goord,* 255 F.Supp.2d 233, 250 (S.D.N.Y.2003).

III. Analysis

Defendant argues that Plaintiff failed to exhaust his administrative remedies because (i) there is no record that Plaintiff ever filed an initial grievance with the Sing Sing Inmate Grievance Resolution Committee ("IGRC") on or about January 26, 2004 (or within fourteen days thereafter), or any grievance "updates" which Plaintiff claims he sent to the Sing Sing Inmate Grievance Coordinator on or about July 6, 2004, September 2004, and March 18, 2005 (Def. Rep. at 4), [2] and (ii) Plaintiff's March 21, 2005 letter to the Sing Sing Superintendent was both insufficient under Directive 4040 and insufficient to constitute exhaustion of Plaintiff's available administrative remedies under the Prisoner Reform Litigation Act of 1995 ("PLRA"), 🚩 42 U.S.C. § 1997e (2005). [3] (Def. Rep. at 8) Plaintiff alleges in the Complaint that he filed a "grievance, then wrote to the Superintendent." (Complaint at II.C.1) He argues that he (i) made "an attempt to exhaust his administrative remedies" by filing an initial grievance with the IGRC on January 26, 2004, and sending several "update" letters to the IGRC on July 6, 2004, September 2004, and March 18, 2005, acknowledging that he received no response from the IGRC, (Pl. Opp. at 2-3), and (ii) wrote directly to the Sing Sing superintendent on March 21, 2005 ("March 21 Letter") "asking that [the superintendent] please take whatever action [he] can ... so that [Plaintiff] may exhaust [his] administrative remedies." (*Id.;* Letter from Acosta to Superintendent Fischer dated March 21, 2005, attached to Pl. Opp.) Plaintiff received a response to his March 21 Letter on March 28, 2005 ("March 28 Letter") from Robert Ercole, Sing Sing's First Deputy Superintendent, stating that "[i]t seems odd that [Plaintiff is] addressing this issue as late as 14 months. Based on Directive 4040 time limits [his] grievance can not [sic] be processed at this time." (Letter from Superintendent Ercole to Acosta dated March 28, 2005, attached to Pl. Opp.)

Both Plaintiff and Defendant have attached materials to their moving papers. Defendant attaches (i) the affidavit, dated May 26, 2005, of Richard Colon, Inmate Grievance Procedure Supervisor at Sing Sing (Tab 1 to the Declaration of Jennifer L. Johnson, dated May 26, 2005) explaining, among other things, that "there is no record, or any other information or knowledge providing reason to believe that inmate Acosta filed the grievance he claims to have submitted on January 26, 2004", (ii) a computer printout detailing Plaintiff's Sing Sing grievance history, and (iii) a copy of the grievance Acosta filed on February 11, 2004 alleging that a "tier 3 [disciplinary hearing against him] must be dismissed" as untimely (Ex. B to MTD). [4] Plaintiff attaches copies of the purported "update

letters" and the March 21 and March 28 Letters. With the exception of the Colon affidavit, the Court has considered the materials provided by both Plaintiff and Defendant. *See Gomez v. Warden of Otisville Corr. Facility,* No. 99 Civ. 9954, 2000 U.S. Dist. LEXIS 14508, at *2 n. 1 (S.D.N.Y. Sept. 29, 2000) (declining to consider affidavits submitted in support of a motion to dismiss and "choos[ing] not to convert the motion to dismiss into one for summary judgment"); *Rivera v. Pataki,* No. 01 Civ. 5179, 2003 U.S. Dist. LEXIS 11266, *9 (S.D.N.Y. Sept. 29, 2000) (considering "an attached computer printout list[ing] all of the appeals filed by [plaintiff]" on a motion to dismiss); *see also Orta v. City of N.Y. Dep't of Corr.,* No. 01 Civ. 10997, 2003 U.S. Dist. LEXIS 2682, * *1-3 (S.D.N.Y. Feb. 25, 2003) (on a motion to dismiss, "evidence shows that [plaintiff] did not comply with the grievance procedure"); 🔶 *Gregory v. Daly,* 243 F.3d 687, 691 (2d Cir.2001) ("we include in this analysis [of a 12(b)(6) motion to dismiss] not only the assertions made within the four corners of the [*pro se* ] complaint itself, but also those contained in documents attached to pleadings or in documents incorporated by reference.").

### A. Exhaustion

**\*3** Under the PLRA, "[n]o action shall be brought with respect to prison conditions under [ Section 1983] or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 🚩 42 U.S.C. § 1997e(a) (2005). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002).

While Defendant argues that there is no record of an initial grievance having been filed by Plaintiff, (*see* Ex. A to MTD (Sing Sing computer printout detailing Acosta's grievance history), Plaintiff alleges in the Complaint that he did file an initial grievance on January 26, 2004 against Dawkins and Camacho. (Complaint at II.C.1) The Court accepts the factual allegations of Plaintiff's complaint as true, *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996), and concludes there is a factual issue as to whether Plaintiff ever filed an initial grievance. *Burns v. Zwilliger,* No. 02 Civ. 5802, 2005 U.S. Dist. LEXIS 1912, at *6 (S.D.N.Y. Feb. 9, 2005). That is,

there is (some) doubt as to whether Plaintiff complied with the first step of the IGP.

There is no doubt that Plaintiff failed to pursue the second and third steps of the Sing Sing IGP with respect to his January 26, 2004 grievance. That is, if in fact Plaintiff did file a grievance on January 26, 2004 and did not receive a response from the IGRC within seven days as provided by Directive 4040 V.A.3, he was, nevertheless, required to "appeal any unsatisfactory response (including lack of response)" within four days. (MTD at 4 (emphasis added)); *See Taylor,* 2004 U.S. Dist. LEXIS at *18 ("failure to receive a response from the IGRC does not relieve an inmate of his obligation to pursue an appeal or otherwise exhaust his administrative remedies."); *Walters v. Carpenter,* No. 02 Civ. 0664, 2004 U.S. Dist. LEXIS 11471, at *10 (S.D.N.Y. June 22, 2004) ("Even if a prisoner receives no reply to a grievance or appeal, he is not excused from completing the appeals process."); *Petty v. Goord,* No. 00 Civ. 803, 2002 U.S. Dist. LEXIS 21197, at *12-14 (S.D.N.Y. Nov. 4, 2002) (same). Plaintiff does not allege in the Complaint that he complied with the appeal procedure. (*See* Complaint at II.C.1)

Plaintiff's "update letters", assuming *arguendo* they were sent, do not change the result because they were also untimely. *See* Directive 4040 V.A.1 (initial grievances must be filed "within fourteen (14) calendar days of an alleged occurrence"). Pursuant to Directive 4040, a plaintiff must file an appeal with the (next) appellate level within four days (i.e., "plaintiff's right to appeal following a failure to respond to the [initial] grievance began, at the latest, nine working days after the grievance was filed.... Plaintiff would then have had up to four working days ... to file an appeal."). *Taylor,* 2004 U.S. Dist. LEXIS at *34; *see* Directive 4040 at V.A.1; V.B.1 & 5; *Mills v. Garvin,* No. 99 Civ. 6032, 2001 U.S. Dist. LEXIS 3333, at *8 (S.D.N.Y. Mar. 2, 2001) ("letter writing is not the equivalent of an exhaustion of administrative remedies under the PLRA.").

**\*4** In *Burns v. Zwilliger,* No. 02 Civ. 5802, 2005 U.S. Dist. LEXIS 1912 (S.D.N.Y. Feb. 9, 2005), defendants sought to dismiss plaintiff's complaint based on non-exhaustion and there was a dispute over whether plaintiff had filed an initial grievance. The *Burns* Court dismissed plaintiff's complaint because he "failed to timely appeal his grievance when no action was taken on it within seven days of its filing." *Id.* at *7. The Court explained that, "[a]ssuming that [plaintiff] filed a timely grievance ... and did not receive a response within seven days, he should have appealed to the IGP

Superintendent ... or present[ed] mitigating circumstances to explain his delay." *Id.* at * *7-8; *see also Mendoza v. Goord,* No. 00 Civ. 0146, 2002 U.S. Dist. LEXIS 22573, at *6 (S.D.N.Y. Nov. 21, 2002) ("[E]ven accepting [Plaintiff]'s claim that he was never notified of the rejection of his grievance (or even had that rejection never occurred), the regulations clearly permit an appeal, and filing such an appeal is accordingly required by § 1997e(a) before a suit can be brought in federal court.").

Plaintiff failed timely to appeal his grievance to the Sing Sing Superintendent when he did not receive a response from the IGRC. When Plaintiff did seek the Superintendent's assistance on March 21, 2005, it was well over a year after he (allegedly) filed (or should have filed) his initial grievance, and more than six months after filing the instant complaint. [5]

*See Neal v. Goord,* 267 F.3d 116, 122 (2d Cir.2001) (overruled on other grounds) ("subsequent exhaustion after suit is filed ... is insufficient" to satisfy the PLRA); *Giano v. Goord,* 380 F.3d 670, 677 (2d Cir.2004) ("prisoners may not circumvent the exhaustion requirement simply by waiting to bring a Section 1983 action until their administrative complaints are time-barred."). [6]

### B. *Excuse*

In some circumstances, a prisoner's failure to exhaust available administrative remedies may be excused. *Giano,* 380 F.3d at 675; *Berry v. Kerik,* 366 F.3d 85, 87-88 (2d Cir.2004). A three-part inquiry is made where a prisoner contends that his failure to exhaust should be excused, *Hemphill v. N.Y.,* 380 F.3d 680, 686 (2d Cir.2004), and, in such cases, the court should consider whether (1) administrative remedies were "available" to the plaintiff, *Abney v. McGinnis,* 380 F.3d 663, 668-69 (2d Cir.2004), (2) defendant has waived the non-exhaustion defense by failing to raise or preserve it, *Johnson v. Testman,* 380 F.3d 691, 696 (2d Cir.2004), or (3) defendants' own actions estop them from raising non-exhaustion, *Ziemba v. Wezner,* 366 F.3d 161, 163 (2d Cir.2004). In addition, "there are certain 'special circumstances' in which, though administrative remedies may have been available and though the government may not have been estopped from asserting the affirmative defense of non-exhaustion, the prisoner's failure to comply with

administrative procedural requirements may nevertheless have been justified." *Abney,* 380 F.3d at 667 (citing *Giano,* 380 F.3d at 676).

**\*5** Plaintiff does not point to any persuasive reason or special circumstance to justify his failure to exhaust the administrative remedies available to him. While Plaintiff generally accuses "these two Corrections Officers, and others" of "making sure that grievance [sic] filed with the administration continue [sic] to disappear and not be logged in," (Pl. Aff. at 2), he does not allege that the IGP was "unavailable" to him. In fact, when he filed a grievance on February 11, 2004, it was recorded on the Sing Sing computer printout of Plaintiff's grievance history (*see* Ex. A to MTD), and when he wrote to the Superintendent on March 21, 2005, he received a prompt reply. *See Mendoza,* 2002 U.S. Dist. LEXIS at \*5 ("If, as a result of a negligent error by prison officials-or even their deliberate attempt to sabotage a prisoner's grievance-the prisoner [does not receive a response] on his complaint, he is not thereby forestalled from appealing"). Administrative remedies were "available" to Plaintiff because could (should) have (1) appealed to the Sing Sing Superintendent within four days after failing to receive a response from the IGRC by on or about February 6, 2004 (*Id.* at V.B.1; VI.G), and (2) ultimately, appealed to the CORC within four days of receiving a response from the Superintendent on or about March 28, 2005. (*Id.* at V.B.5; VI.G). *See Taylor,* 2004 U.S. Dist. LEXIS at \*17-22 (explaining that, "even if the IGRC did not respond within the allotted time, ... [Directive 4040] provided plaintiff with a clear course of action under the circumstances"). Defendant timely raised non-exhaustion in his Motion to Dismiss. *See Samules v. Erns,* No. 99 Civ. 10426, 2004 U.S. Dist. LEXIS 25796, at \*8 (S.D.N.Y. Dec. 20, 2004) (granting motion to dismiss where defendants did not "forfeit[ ] the affirmative defense of non-exhaustion by failing to raise it or preserve it").

Nor should Defendant be estopped from raising non-exhaustion as an affirmative defense. *See Taylor,* 2004 U.S. Dist. LEXIS at \* \*22-24. In *Taylor,* as in the case at bar, plaintiff argued that his complaint should not be dismissed because the Sing Sing IGRC failed to respond to his initial grievance. The Court dismissed plaintiff's complaint and found that defendants were not estopped because "[a]lthough it may be that prison officials failed to timely advance the inmate's grievance at the initial level, ... any such failure did not prevent him from seeking his administrative remedies." *Id.* In the instant case, Plaintiff's "failure to receive a response from the IGRC does not relieve [him] of his obligation to pursue an appeal or otherwise exhaust his administrative remedies." *Id.* at \*18.

Plaintiff also does not allege any "special circumstances" that might justify his failure to exhaust his administrative remedies. [7] "An examination of the record reveals that administrative remedies were available to plaintiff, that neither waiver nor estoppel preclude defendants from raising this defense. There are no special circumstances excusing plaintiff's failure to exhaust." *Samules,* 2004 U.S. Dist. LEXIS at \*8 (internal citations omitted) (granting motion to dismiss); *see also Freeman v. Goord,* No. 02 Civ. 9033, 2004 U.S. Dist. LEXIS 23873, at \* \*9-10 (S.D.N.Y.2004) (granting motion to dismiss where "there is no evidence in the record ... of any 'special circumstances' in this action. Nor is there any indication that the defendants failed to implement any prior, favorable ruling in [Plaintiff]'s favor, therein rendering a grievance meaningless and triggering 'some never-ending cycle of grievances.' ") (citing *Abney,* 380 F.3d at 669). "If [Plaintiff] has now succeeded in exhausting all of his administrative remedies, then, provided his claims are not time-barred, he should be allowed to refile his case." *Baez v. Bureau of Prisons,* No. 02 Civ. 9216, 2004 U.S. Dist. LEXIS 8183, at \*19 (S.D.N.Y. May 11, 2004).

IV. Order

**\*6** For the reasons stated herein, the Court grants Defendant's motion to dismiss. Plaintiff is directed to exhaust Sing Sing administrative remedies, including application(s) for time extension(s) if he can show good cause.

**All Citations**

Not Reported in F.Supp.2d, 2005 WL 1668627

**Footnotes**

1  Camacho was never served and the complaint against him may be dismissed for that reason alone. (*See* Marshal's Process Receipt and Return of Service Unexecuted, Docket No. 7, 04 Civ. 6678(RMB)); *see e.g., Moultry v. City of Poughkeepsie,* 154 F.Supp.2d 809, 813 (S.D.N.Y.2001) (dismissing without prejudice for lack of personal jurisdiction where plaintiff "failed to demonstrate ... good cause for its failure to properly serve (or attempt to correct service to) the individual defendants"). Defendant's motion to dismiss was brought only on Dawkins' behalf.

2  Sing Sing records submitted by Defendant do show that Plaintiff filed a grievance on or about February 11, 2004 in which he complained that a disciplinary hearing brought against him resulting from the events of January 25, 2004 should be dismissed as untimely. (*See* Ex. B to MTD) This grievance was denied by the IGRC on February 19, 2004 because Plaintiff was "seeking a decision or an appeal of a decision otherwise attainable through established ... Disciplinary Proceeding[ ] ... mechanisms." (*Id.* (citing to N.Y. Dep't Corr.

Servs. Directive 4040 (August 22, 2003) (as authorized by [📄] N.Y. Corr. Law § 139 (2005)) ("Directive 4040") at V.A.5)) This denial does not appear to have been appealed by Plaintiff to the Sing Sing Superintendent within four days of receiving it, or ever. (*Id.*); Directive 4040 at V.B.1. Nor did Plaintiff appeal this grievance to the Central Office Review Committee ("CORC"). *See* Directive 4040 at V.B.5.

3  Sing Sing administers a three-step IGP instituted by the New York State Department of Correctional Services ("DOCS"). *See* Directive 4040; *see also* 7 N.Y.C.R.R. § 701 *et seq.* The first step is the filing of a written grievance with the IGRC within fourteen calendar days of the incident complained of. Directive 4040 at V.A.1. The IGRC must conduct a hearing or resolve the grievance informally within seven working days of receiving the grievance, and if a hearing has been held, the IGRC must communicate its decision to the inmate within two working days of the hearing. *Id.* at V.A .2-4. Second, "[w]ithin four (4) working days after receipt of the committee's written response to the grievance, the inmate ... may appeal the IGRC action to the superintendent by filing an appeal with the grievance clerk." *Id.* at V.B.1; *see also Id.* at VI.G; *Taylor v. N.Y. State Dep't of Corr.,* No. 03 Civ.1929, 2004 U.S. Dist. LEXIS 25795, at *12 (S.D.N.Y. Dec. 22, 2004) ("If the IGRC does not respond to an inmate's initial grievance, the inmate may still appeal to the superintendent of his facility.") (emphasis added). "In all institutional matters, the superintendent shall render a decision on the grievance and transmit said decision, with reasons stated, to the grievant ... within ten (10) working days from the time the appeal was received." *Id.* at V.B.3. The Superintendent's response "contains simple directions on how this decision may be appealed to the next level." *Id.* at V.B.4. Third, "[w]ithin four (4) working days after receipt of the superintendent's written response to the grievance, the inmate ... may appeal the superintendent's action to the CORC." *Id.* at V.B .5. "The CORC shall review each appeal received at its level, render a decision on the grievance and transmit its decision to the facility, with reasons stated, for the grievant ... within twenty (20) working days from the time the appeal was receiced." *Id.* at V.C.2. Directive 4040 explicitly states that "[t]ime limit extensions may be requested at any level of review.... Absent such extension, matters not decided within the time limits may be appealed to the next step." *Id.* at VI.G; *see also* 7 N.Y.C.R .R. § 701.8.

4  *See* note 2 above.

5  Nor did Plaintiff appeal to the CORC from the Superintendent's March 28, 2005 decision denying as untimely Plaintiff's petition. Indeed, Plaintiff has acknowledged that he still has not yet exhausted his administrative remedies. "[Plaintiff indicates he has] been trying [his] best to exhaust [his] administrative remedies with Mr. Colon, the Inmate Grievance Coordinator here at the Sing Sing facility by consistently writing up-dating letters to him." (Letter from Acosta to U.S. Magistrate Judge Kevin Nathaniel Fox dated March 21, 2005, attached to Pl. Opp.); *see also Barney v.. Bureau of Prisons,* No. 02 Civ. 5284, 2004 U.S. Dist. LEXIS 24691, at *3 (S.D.N.Y. Dec. 8, 2004).

6  "Failure to exhaust administrative remedies is often a temporary, curable procedural flaw." [📄] *Berry v. Kerik,* 366 F.3d 85, 87 (2d Cir.2003).* "If the time permitted for pursuing administrative remedies has not expired, a prisoner who brings suit without having exhausted these remedies can cure the defect simply by exhausting them and then reinstituting his suit.... In such circumstances ... dismissal without prejudice is appropriate." *Id .*

(citation omitted); 🚩 *Neal v. Goord,* 267 F.3d 116, 123 (2d Cir.2001) (overruled on other grounds); 🚩 *Giano v. Goord,* 250 F.3d 146, 151 (2d Cir.2001).

7   "If the court finds that administrative remedies were available to the plaintiff, and that the defendants are not estopped and have not forfeited their non-exhaustion defense, but that plaintiff nevertheless did not exhaust available remedies, the court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements." 🚩 *Hemphill,* 380 F.3d at 686.

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.